# Exhibit A

1
2
3
4
5
6

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469

FILED
12/28/2016 10:00:20 AM
Alex Calvo, Clerk
By: Amanda Lucas
Deputy, Santa Cruz County

7

Attorneys for Plaintiff

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

COUNTY OF SANTA CRUZ

10
11

JACKIE FITZHENRY-RUSSELL, an
individual, on behalf of herself, the general
public and those similarly situated,

12
13

    Plaintiff,

14

        v.

15
16

THE COCA COLA COMPANY, and DOES 1-
50,

17

    Defendants.

CASE NO. 16CV03346

UNLIMITED CIVIL CASE

COMPLAINT FOR VIOLATION OF THE
CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT; FALSE
ADVERTISING; FRAUD, DECEIT,
AND/OR MISREPRESENTATION; AND
UNFAIR BUSINESS PRACTICES

JURY TRIAL DEMANDED

18
19
20
21
22
23
24
25
26
27
28

-1-

Class Action Complaint

**INTRODUCTION**

1. Plaintiff Jackie Fitzhenry-Russell, by and through her counsel, brings this class action against Defendants The Coca Cola Company and Does 1-50, inclusive, on behalf of herself, the general public, and those similarly situated, for violations of the Consumer Legal Remedies Act and Unfair Competition Law and false advertising, fraud, deceit and/or misrepresentation. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

2. This case concerns Defendants' false and deceptive labeling, advertising, marketing, and sale of the soft drink, Seagram's Ginger Ale, as "MADE FROM REAL GINGER." This representation leads consumers to reasonably believe that Defendants' soft drink is made from, and contains, real ginger root, and that consumers who drink the soft drink will receive the health benefits associated with consuming real ginger root.

3. In truth, Defendants' soft drink is not made from real ginger root. Instead, Seagram's Ginger Ale is made from carbonated water, high fructose corn syrup, citric acid, preservatives, and a chemical flavor compound that is manufactured to mimic the taste of ginger, but provides none of the health benefits of real ginger root.

4. Throughout the Class Period, Defendants prominently made the claim "MADE FROM REAL GINGER" on the front label panel of all of its Seagram's Ginger Ale cans and bottles, cultivating a wholesome and healthful image in an effort to promote the sale of its soft drink and to compete with small batch ginger ales that do use real ginger root. Consumers value the representation "MADE FROM REAL GINGER" because studies have found that real ginger root has health benefits when consumed. Defendants' Seagram's Ginger Ale product labels did not disclose that the soft drink contains no real ginger and that the ginger flavor in the soft drink was manufactured through an artificial process to create a chemical substance that tastes like ginger root. The result is a labeling scheme that is designed to mislead consumers, and which does so effectively.

**PARTIES**

5. Jackie Fitzhenry-Russell ("Plaintiff") is, and at all times alleged in this Class

1    Action Complaint was, an individual and a resident of Santa Cruz, California.

2        6.      Defendant The Coca Cola Company is a corporation existing under the laws of the

3    State of Delaware, having its principal place of business in Atlanta, Georgia.

4        7.      The true names and capacities of Defendants sued as Does 1 through 50, inclusive,

5    are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to

6    section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave of Court to amend

7    this Class Action Complaint when said true names and capacities have been ascertained.

8        8.      The Parties identified in paragraphs 6 - 8 of this Class Action Complaint are

9    collectively referred to hereafter as "Defendants."

10       9.      At all times herein mentioned, each of the Defendants was the agent, servant,

11   representative, officer, director, partner or employee of the other Defendants and, in doing the

12   things herein alleged, was acting within the scope and course of his/her/its authority as such

13   agent, servant, representative, officer, director, partner or employee, and with the permission and

14   consent of each Defendant.

15       10.     At all times herein mentioned, each of the Defendants was a member of, and

16   engaged in, a joint venture, partnership and common enterprise, and acted within the course and

17   scope of, and in pursuance of, said joint venture, partnership and common enterprise.

18       11.     At all times herein mentioned, the acts and omissions of each of the Defendants

19   concurred and contributed to the various acts and omissions of each and all of the other

20   Defendants in proximately causing the injuries and damages as herein alleged.

21       12.     At all times herein mentioned, each of the Defendants ratified each and every act

22   or omission complained of herein.

23       13.     At all times herein mentioned, each of the Defendants aided and abetted the acts

24   and omissions of each and all of the other Defendants in proximately causing the damages, and

25   other injuries, as herein alleged.

26                              **JURISDICTION AND VENUE**

27       14.     This action is brought by Plaintiff pursuant, *inter alia*, to the California Business

28   and Professions Code, section 17200, *et seq.*  Plaintiff and Defendants are "persons" within the

1   meaning of the California Business and Professions Code, section 17201.

2       15.   The injuries, damages and/or harm upon which this action is based, occurred or

3   arose out of activities engaged in by Defendants within, affecting, and emanating from, the State

4   of California.  Defendants regularly conduct and/or solicit business in, engage in other persistent

5   courses of conduct in, and/or derive substantial revenue from products provided to persons in the

6   State of California.

7       16.   Defendants have engaged, and continue to engage, in substantial and continuous

8   business practices in the State of California, including in the County of Santa Cruz.

9       17.   In accordance with California Civil Code Section 1780(d), Plaintiff concurrently

10  files herewith a declaration establishing that, at various times throughout the class period, she

11  purchased Seagram's Ginger Ale in Santa Cruz, California and Capitola, California.  (Plaintiff's

12  declaration is attached hereto as Exhibit A.)

13      18.   Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

14                          **SUBSTANTIVE ALLEGATIONS**

15  **Defendants' Ginger Ales.**

16      19.   Defendants manufacture, distribute, market, advertise, and sell soft drinks in the

17  United States under several brand names, including "Seagram's." Defendants' packaging for the

18  its Seagram's Ginger Ale predominately, uniformly, and consistently state on the principal

19  display panel of the product labels that it is "MADE FROM REAL GINGER" (referred to herein

20  as the "Product").

21      20.   The representation that the Product is "MADE FROM REAL GINGER" was

22  uniformly communicated to Plaintiff and every other person who purchased any of the Products

23  in California. An exemplar the Product's product label is attached hereto as Exhibit B.  The same

24  or substantially similar product label has appeared on each bottle or can sold (as those shown in

25  Exhibit B) during the entirety of the Class Period.

26      21.   As described in detail below, Defendants' advertising and labeling of the Product,

27  as made from "REAL GINGER" is false, misleading, and intended to induce consumers to

28  purchase the ginger ales, at a premium price, while ultimately failing to meet consumer

expectations. These representations deceive and mislead reasonable consumers into believing that the Product is made from, and contain, real ginger root.

22.     In fact, the Product is not made from real ginger. The Product is made from carbonated water, high fructose corn syrup, citric acid, preservatives, and "natural flavor," which is a chemical flavoring compound that is manufactured to mimic the taste of ginger, but does not contain ginger as a reasonable consumer understands it to mean and contains none of the health benefits of real ginger root.

**Consumer Demand for Real Ginger**

23.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely take nutrition information into consideration in selecting and purchasing food items. Product package labels convey nutrition information to consumers that they use to make purchasing decisions. As noted by FDA commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." Consumers attribute a myriad of benefits to ginger and foods made from real ginger root.

24.     Ginger root has been used for thousands of years for the treatment of numerous ailments, such as colds, nausea, arthritis, migraines, and hypertension. Scientific studies have confirmed that ginger has anti-inflammatory effects and aids in relaxing muscles, is effective in alleviating symptoms of nausea and vomiting, has anti-carcinogenic qualities, and appears to reduce cholesterol and improve lipid metabolism, thereby helping to decrease the risk of cardiovascular disease and diabetes. The benefits of consuming ginger have been widely publicized to consumers in the United States in recent years.

**Federal and State Regulations Governing Food Labeling**

25.     The Food and Drug Administration has defined "natural flavor" to mean "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar

1  plant material, meat, seafood, poultry, eggs, dairy Product, or fermentation products thereof,

2  whose significant function in food is flavoring rather than nutritional." 21 C.F.R. 501.22(a)(3). In

3  other words, a "natural flavor" is one that contains some oil, protein, or essence from a plant or

4  animal. But it bears little resemblance to the actual plant or animal from which it is derived.

5  Rather, natural flavors are made in a laboratory by scientists who make determinations on how to

6  replicate a flavor using chemicals found in nature.

7       26.     While it may be that ginger root is used in the creation of the natural flavor, it is

8  not ginger as a reasonable consumer would understand it. Rather, the scientists that created the

9  "natural flavor" added to the Product would have isolated proteins from the cells and tissue of the

10  ginger root or extracted oils or essences from the ginger root. But because those isolated

11  compounds may not actually taste like ginger, the scientist would have then combined those

12  extractions with any number of other extractions from other plants and animals to create a

13  flavoring substance that tastes like ginger. *See* https://www.scientificamerican.com/article/what-

14  is-the-difference-be-2002-07-29/ (describing the process for creating natural flavors) (last

15  accessed October 21, 2016).

16       27.     Identical federal and California laws regulate the content of labels on packaged

17  food and require truthful, accurate information on the labels of packaged foods. The requirements

18  of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including

19  those set forth in 21 C.F.R. §§ 101 and 102, were adopted by the California legislature in the

20  Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code §

21  110100 ("All food labeling regulations and any amendments to those regulations adopted

22  pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be

23  the food labeling regulations of this state."). The federal laws and regulations discussed below are

24  applicable nationwide to all sales of packaged food Product. Additionally, no state imposes

25  different requirements on the labeling of packaged food for sale in the United States.

26       28.     Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if

27  "its labeling is false or misleading in any particular," or if it does not contain certain information

28  on its label or in its labeling. California Health & Safety Code § 110660; 21 U.S.C. § 343(a).

29.     Under the FDCA, the term *false* has its usual meaning of "untruthful," while the term *misleading* is a term of art that covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is false or misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

30.     Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is false and misleading); California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous); and California Health & Safety Code § 110740 (misbranded if contains artificial flavoring, artificial coloring and chemical preservatives but fails to adequately disclose that fact on label).

31.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded Product has no economic value and are legally worthless.

32.     Representing that a soft drink is made from "real ginger" is a statement of fact, and use of this phrase on the labels of packaged food is limited by the aforementioned misbranding laws and regulations.

**Defendants' Marketing and Labeling of its Ginger Ales Violates State and Federal Food Labeling Laws**

33.     The Product is unlawful, misbranded and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Product's labels include the phrase "MADE WITH REAL GINGER," even though they are not made using real ginger. Instead, the Product is flavored with a complex chemical flavoring that is manufactured to mimic the taste of ginger, and was created not by using actual ginger root, but in a laboratory through the isolation of proteins, essences, and oils from the cells and tissues of plants and animals and combining them in such a way as to mimic the taste of ginger as a consumer would recognize it. The Product is not made

from, and do not contain, real ginger as a reasonable consumer would understand it to mean, nor do the products contain any of the health benefits that would be obtained if real ginger root were used or present.

34.     Defendants' marketing, advertising, and sale of the Product violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

a.  Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.  Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.  Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

35.     Defendants' marketing, advertising, and sale of the Product violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

d.  Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

e.  Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

f.  Section 110740 (a food is misbranded if it contains artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling);

g.  Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

h.  Section 110765, which makes it unlawful for any person to misbrand any food; and

i.  Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

36.  Defendants have violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. §§ 101.3, 101.13, 101.14, 101.22, and 101.65 which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

**Defendants' Marketing and Labeling of its Ginger Ales is False, Deceptive and Misleading**

37.  A reasonable consumer would expect that the Product contains what Defendants identifies them to contain on the product labels. A reasonable consumer would expect that when Defendants label the Product as being "MADE WITH REAL GINGER," the soft drinks are made with, and contain, real ginger as commonly understood and would not be contrary to the policies or regulations of the State of California and/or the FDA.

38.  Moreover, Defendants do not disclose on the product labels that the Product is flavored with a chemical compound that was manufactured to mimic the flavor of ginger. Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendants' food labeling claims, especially at the point of sale. Consumers would not know the true nature of the ginger flavoring merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that the ginger flavor in the soft drink is not from the presence of real ginger in the soft drink but instead comes from the chemical compounded added to the drink to make it taste like ginger.  That, combined with Defendants' active concealment in representing the Product as being "MADE FROM REAL GINGER," and not disclosing otherwise, gave the average reasonable consumer no reason to suspect that Defendants' representations on the packages were not true, and therefore consumers had no reason to investigate the soft drinks contained real ginger.  Thus, reasonable consumers relied on Defendants' representations regarding the nature of the Product.

Such reliance by consumers is also eminently reasonable, since food companies are prohibited from making false or misleading statements on their products under federal law.

39.    Defendants intend and know that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done with the "MADE WITH REAL GINGER" claim.

**Defendants' Website and Other Marketing Confirms That Defendants Intends to Deceive Consumers**

40.    Defendants' own long standing advertising and marketing materials show that Defendants intended to deceive consumers into believing the false and deceptive packaging of the Product.

41.    Defendants' advertising campaign typically shows a picture of the bottle or can of the Product, where the words "MADE WITH REAL GINGER" Are prominently featured. The can with those words appears both on Defendants' websites and in a variety of print advertisements .

42.    Defendants also permit and encourage their marketing partners, including grocery stores, to advertise, market, advertise and sell the Product as a soft drink "MADE FROM REAL GINGER." Defendants provide their marketing partners information, including posters, signs, end cap displays, etc., that specifically represent that the Product is "MADE FROM REAL GINGER." Further, in sales sheets, sales presentations, and other marketing materials, Defendants state that the Product is "MADE FROM REAL GINGER."

43.    In short, Defendants' advertising and marketing campaign confirms that Defendants intend that consumers be effectively deceived by Defendants' misrepresentations on the Product's product labels.  More specifically, Defendants intend that consumers who read the Product's labels believe that the Product is made from, and contain, real ginger.

**Defendants' Employ Misleading Marketing Their Ginger Ales To Increase Profits and Gain a Competitive Edge**

44.    Defendants do not use real ginger in their Product as doing so is more expensive than using flavoring compound. In recent years, numerous studies have found the presence of

1   lead in ginger, and manufacturers and retailers of other products containing ginger root, such as

2   cookies and candies, have been sued by the California Attorney General. Thus, the diligent

3   sourcing and testing procedures that would be required when using real ginger to ensure the

4   product they are selling is safe are more expensive to adopt than simply using "natural flavor." In

5   addition, the cost of real ginger has increased in recent years, due to changes in weather in China,

6   which produces 75% of the world's ginger. *See* http://www.producenews.com/news-dep-

7   menu/test-featured/9579-ginger-prices-skyrocket-on-shrinking-supply (last accessed October 21,

8   2016).

9        45.    In the last decade, in response to news reports about the dangers of high fructose

10  corn syrup and soda's role in contributing to the increased rates of obesity and diabetes in this

11  country, many consumers are drinking less soda, and are seeking out instead, healthier beverages,

12  like iced teas and flavored waters. *See* http://www.nytimes.com/2015/10/04/upshot/soda-industry-

13  struggles-as-consumer-tastes-change.html?_r=0 (last accessed October 21, 2016). And while soda

14  sales are declining, one segment of the category is on the rise – small companies and brands that

15  emphasize their use of natural ingredients, such as Reed's, Bruce Cost, Maine Root, and Grown

16  Up Soda have entered the market. In 2014, the Specialty Food Association noted that healthy

17  beverages were growing in popularity, as was the market for more sophisticated, specialty sodas

18  containing all natural ingredients. *See* https://www.specialtyfood.com/news/article/rise-healthy-

19  beverages/ (last accessed October 21, 2016). Thus, many small craft soda companies are

20  flourishing in response to increased consumer demand for alternatives to sodas made with high

21  fructose corn syrup, artificial ingredients, and preservatives. Facing a public hostile to "Big Soda"

22  and finding its sales dwindling due to the newer, healthier brands, Defendants have an incentive

23  to emphasize the presence of ginger in the Product to appeal to consumers seeking real

24  ingredients instead of a traditional soda.

25       46.    In making the false, misleading, and deceptive representations, Defendants

26  distinguish their ginger ales from their competitors' Product. Defendants knew and intended that

27  consumers would purchase, and pay a premium for, ginger ales labeled as being made from

28  "REAL GINGER," over comparable ginger ales that do not contain these representations on the

product labels. By using this branding strategy, Defendants are stating that their ginger ales are superior to, better than, and more nutritious and healthful than other brands of ginger ales that do not proclaim to be made from "REAL GINGER." For example, other brands of ginger ales that do not contain the false, misleading, and deceptive representation that they are made from "REAL GINGER," include brands such as Dr. Brown's and Vernors.

47. Further, Defendants knew and intended their representations to help them compete with small batch bottling companies that do make ginger ales using real ginger root. Defendants added the "MADE WITH REAL GINGER" representation to their product labels to compete with such small batch bottling companies that have increased in popularity in recent years. For example, Bruce Cost Ginger Ale is made with fresh whole ginger root and represents this fact to consumers in its advertising and on its product packaging.

48. Because consumers pay a price premium for products made with real ginger, by labeling their products as containing real ginger without actually using the expensive ingredient, Defendants are able to both increase their sales and retain more in profits.

49. Defendants engaged in the practices complained of herein to further their private interests of: (i) increasing sales their ginger ales, while decreasing the sales of ginger ales that do not claim to be made from real ginger and those ginger ales that are truthfully offered as made with real ginger by Defendants' competitors, and/or (ii) commanding a higher price for their ginger ales because consumers will pay more for these soft drinks due to the consumers' demand for products containing real ginger because of the perceived benefits.

**Defendants Intend to Continue To Market Beverages as Being Made with "Real Ginger" that Do Not Contain Ginger.**

50. Because of the growing market described in paragraph 45 and because Defendants know consumers rely on representations about the presence of real ginger in beverages, Defendants have an incentive to continue to make such false representations. In addition, other trends suggest that Defendants have no incentive to change their labeling practices.

51. For example, ginger ale is a particularly strong growing flavor in the healthy soda category. In December 2015, a brand manager for a competing brand, Schweppes, described

1   ginger as a "growing flavor trend." *See* http://www.prnewswire.com/news-releases/schweppes-

2   introduces-new-dark-ginger-ale-packed-with-a-refreshing-bolder-taste-300188635.html.

3      52.    To capitalize on the market, Defendants may not only continue to misleading

4   advertise the Product, but they could seek to replicate the misrepresentation in other ways. For

5   example, Defendant currently markets a Diet Ginger Ale, but does not advertise it as being made

6   with real ginger. Given the trends in the market, Defendant could decide it to be more profitable

7   to start doing so. Defendants also recently purchased the small soda brands of Blue Sky and

8   Hansen's, which both make ginger ales, and Defendants could decide to start falsely advertising

9   those Product. Finally, Defendants own other brands of soda, such as Coca Cola, Barq's, Fanta,

10  and for which there are a variety of flavors. While Defendant does not currently sell any ginger

11  ale under these brand names, the booming market for ginger ales creates an incentive to do so.

12     53.    Defendants are also likely seeking to diversity their beverage portfolio in response

13  to the changing market, the booming craft soda market, and the decreased demand for traditional

14  sodas from big manufacturers. Defendants, who have in the past acquired smaller companies that

15  compete with their bigger brands (e.g. acquiring Blue Sky despite selling sodas under the Coca

16  Cola and Sprite brand names), will likely desire to do the same to maintain their competitive edge

17  and ensure they are offering ginger ales at all segments of the market.

18  **PLAINTIFF'S EXPERIENCES**

19     54.    Plaintiff has purchased several cases of the Product from Safeway, located in Santa

20  Cruz, CA, and a Lucky, located in Capitola, CA. Over the last two years, Plaintiff purchased

21  approximately one case each year. For the two years prior to that, she purchased approximately

22  two cases of the Product every month.

23     55.    Plaintiff made each of her purchases of the Product after reading and relying on

24  the truthfulness of Defendants' product labels that promised that the Product were "MADE WITH

25  REAL GINGER."

26     56.    At the time of each purchase, Plaintiff saw, read and relied on the "MADE WITH

27  REAL GINGER" statement on the front of the package of the ginger ale. She was attracted to the

28  Product because, when given a choice, she prefers to consume soft drinks made with real ginger

for health benefits, namely stomach calming or relaxation. But on each of the Product purchased by Fitzhenry-Russell, Defendants misrepresented the contents of the product as being "MADE WITH REAL GINGER" when they were not. Plaintiff believed that the statement meant that each of the Product that she purchased was made with, and contained, real ginger. She reasonably relied on the labels and advertising Defendants placed on the primary display panel of the product.

57.     At the time of each purchase of the Product, Plaintiff did not know that the Product that she purchased were not made with real ginger, but instead were made with a chemical flavoring compound derived from ginger and manufactured to mimic the flavor of ginger and which does not contain any of the health benefits of real ginger. As a result of Defendants' misrepresentations and omissions, the Product has no, or, at, a minimum, a much lower, value to Plaintiff.

58.     Plaintiff not only purchased the Product because their label said that they were "MADE WITH REAL GINGER," but she also paid more money for the ginger ales than she would have paid for other a similar soft drink that was not labeled as containing real ginger.

59.     Had Defendants not misrepresented (by omission and commission) the true nature of the Product, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the soft drink.

60.     Plaintiff and members of the Class have been economically damaged by their purchase of the Product because the advertising for the Product was and is untrue and/or misleading under California law; therefore, the Product is worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

61.     As a direct and proximate result of Defendants' unfair and wrongful conduct, as set forth herein, Plaintiffs and the class members: (1) were misled into purchasing the Product; (2) received a product that failed to meet their reasonable expectations and Defendants' promises; (3) paid a premium sum of money for a product that was not as represented and, thus, were deprived of the benefit of the bargain because the purchased ginger ale had less value than what was

1  represented by Defendants; and (4) ingested a substance that was other than what was represented

2  by Defendants and that Plaintiffs and class members did not expect.

3      62.     Plaintiff continues to desire to purchase ginger ale made with real ginger root,

4  including brands marketed and sold by Defendants. Plaintiff regularly visits stores such as

5  Safeway where Defendants' Product and other ginger ale beverages are sold. Because of changes

6  in the market, Plaintiff does not know at any given time, which brands are owned by Defendants

7  and whether their representations as to the presence of ginger are truthful. Thus, Plaintiff is likely

8  to be repeatedly presented with false or misleading information when shopping for ginger ale,

9  making it difficult to make informed purchasing decisions. Should Defendants begin to market

10  and sell a new brand of ginger ale, Plaintiff could be at risk for buying another one of Defendants'

11  Product in reliance on the same or similar misrepresentation.

12                          **CLASS ALLEGATIONS**

13      63.     Plaintiff brings this action against Defendants, on behalf of herself and all others

14  similarly situated, as a class action pursuant to section 1781 of the California Civil Code.

15  Plaintiff seek to represent the following groups of similarly situated persons, defined as follows:

16          All persons who, between December 23, 2012 and the present, purchased any
            of Defendants' the Product.

17      64.     This action has been brought and may properly be maintained as a class action

18  against Defendants because there is a well-defined community of interest in the litigation and the

19  proposed class is easily ascertainable.

20      65.     Numerosity:  Plaintiff does not know the exact size the Class, but they are

21  estimated that it is composed of more than 100 persons. The persons in the Class are so numerous

22  that the joinder of all such persons is impracticable and the disposition of their claims in a class

23  action rather than in individual actions will benefit the parties and the courts.

24      66.     Common Questions Predominate:  This action involves common questions of law

25  and fact to the potential classes because each class member's claim derives from the deceptive,

26  unlawful and/or unfair statements and omissions that led consumers to believe that the Product

27  was made with, and contained, real ginger. The common questions of law and fact predominate

28  over individual questions, as proof of a common or single set of facts will establish the right of

-14-

1    each member of the Class to recover.  The questions of law and fact common to the Class are:

2         a)    whether the Product is "MADE WITH REAL GINGER;"

3         b)    whether Defendants unfairly, unlawfully and/or deceptively misrepresented

4               that the Product is "MADE WITH REAL GINGER;"

5         c)    whether the use of the phrase "MADE WITH REAL GINGER" on the

6               primary display panel of the Product violated Federal and/or California state

7               law;

8         d)    whether the advertising of the product as Made with Real Ginger causes it

9               to command a premium in the market as compared with similar products

10              that do not make such a claim;

11        e)    whether Defendants' advertising and marketing regarding the Product sold

12              to the class members was likely to deceive the class members and/or was

13              unfair;

14        f)    Whether a "MADE WITH REAL GINGER" claim on product packaging

15              and advertising is material to a reasonable consumer;

16        g)    whether Defendants engaged in the alleged conduct knowingly, recklessly,

17              or negligently;

18        h)    the amount of profits and revenues earned by Defendants as a result of the

19              conduct;

20        i)    whether class members are entitled to restitution, injunctive and other

21              equitable relief and, if so, what is the nature (and amount) of such relief;

22              and

23        j)    whether class members are entitled to payment of actual, incidental,

24              consequential, exemplary and/or statutory damages plus interest thereon,

25              and if so, what is the nature of such relief.

26        67.    Typicality: Plaintiff's claims are typical of the Class because she purchased at least

27    eight cases of the Product – in reliance on Defendants' misrepresentations and omissions that they

28    were "MADE WITH REAL GINGER." Thus, Plaintiff and the class members sustained the same

1   injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and

2   damages of each class member were caused directly by Defendants' wrongful conduct in

3   violation of law as alleged.

4        68.    Adequacy:  Plaintiff will fairly and adequately protect the interests of all class

5   members because it is in her best interests to prosecute the claims alleged herein to obtain full

6   compensation due to her for the unfair and illegal conduct of which she complains.  Plaintiff also

7   has no interests that are in conflict with, or antagonistic to, the interests of class members.

8   Plaintiff has retained highly competent and experienced class action attorneys to represent her

9   interests and that of the classes.  By prevailing on her own claims, Plaintiff will establish

10  Defendants' liability to all class members.  Plaintiff and her counsel have the necessary financial

11  resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are

12  aware of their fiduciary responsibilities to the class members and are determined to diligently

13  discharge those duties by vigorously seeking the maximum possible recovery for class members.

14       69.    Superiority:  There is no plain, speedy, or adequate remedy other than by

15  maintenance of this class action. The prosecution of individual remedies by members of the

16  classes will tend to establish inconsistent standards of conduct for Defendants and result in the

17  impairment of class members' rights and the disposition of their interests through actions to

18  which they were not parties. Class action treatment will permit a large number of similarly

19  situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

20  and without the unnecessary duplication of effort and expense that numerous individual actions

21  would engender. Furthermore, as the damages suffered by each individual member of the classes

22  may be relatively small, the expenses and burden of individual litigation would make it difficult

23  or impossible for individual members of the class to redress the wrongs done to them, while an

24  important public interest will be served by addressing the matter as a class action.

25       70.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the

26  management of this action that would preclude its maintenance as a class action.

27                     **CAUSES OF ACTION**

28       Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and

-16-

1   regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA

2   regulations only to the extent such laws and regulations have been separately enacted as state law

3   or regulation or provide a predicate basis of liability under the state and common laws cited in the

4   following causes of action.

**PLAINTIFF'S FIRST CAUSE OF ACTION**

5

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §**

6   **1750, *et seq.*)**

**On Behalf of Plaintiff and the Class**

7

8       71.     Plaintiff realleges and incorporate the paragraphs of this Class Action Complaint

9   as if set forth herein.

10      72.     Defendants' actions, representations and conduct have violated, and continue to

11  violate the CLRA, because they extend to transactions that are intended to result, or which have

12  resulted, in the sale or lease of goods or services to consumers.

13      73.     Plaintiff and other class members are "consumers" as that term is defined by the

14  CLRA in California Civil Code § 1761(d).

15      74.     The Product that Plaintiff (and other similarly situated class members) purchased

16  from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

17      75.     Defendants' acts and practices, set forth in this Class Action Complain, led

18  customers to falsely believe that the Product were made with, and contained, real ginger.  By

19  engaging in the actions, representations and conduct set forth in this Class Action Complaint,

20  Defendants have violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7),

21  § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2),

22  Defendants' acts and practices constitute improper representations regarding the source,

23  sponsorship, approval, or certification of the goods they sold. In violation of California Civil

24  Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the

25  goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or

26  quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendants'

27  acts and practices constitute improper representations that the goods they sell are of a particular

28  standard, quality, or grade, when they are of another. In violation of California Civil Code

1  §1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or

2  misleading representation of fact.  In violation of California Civil Code §1770(a)(9), Defendants

3  have advertised goods or services with intent not to sell them as advertised. Finally, regarding

4  California Civil Code §1770(a)(8), Defendants falsely or deceptively market and advertise that,

5  unlike other soft drink manufacturers, it sells ginger ales that are made from "REAL GINGER."

6      76.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the

7  unlawful methods, acts and practices alleged herein pursuant to California Civil Code

8  § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the

9  future, Plaintiffs and the other members of the Class will continue to suffer harm.

10     77.    CLRA § 1782 NOTICE. **Irrespective of any representations to the contrary in**

11 **this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for**

12 **damages under any provision of the CLRA**. Plaintiff, however, hereby provides Defendants

13 with notice and demand that within thirty (30) days from that date, Defendants correct, repair,

14 replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of

15 herein. Defendants' failure to do so will result in Plaintiff amending this Class Action Complaint

16 to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly

17 situated Class Members, compensatory damages, punitive damages and restitution of any ill-

18 gotten gains due to Defendants' acts and practices.

19     78.    Plaintiff also requests that this Court award her costs and reasonable attorneys'

20 fees pursuant to California Civil Code § 1780(d).

21             **PLAINTIFF'S SECOND CAUSE OF ACTION**
       **(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
22                **On Behalf Plaintiff and the Class**

23     79.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

24 Complaint as if set forth herein.

25     80.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years

26 preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive

27. and/or misleading statements in connection with the advertising and marketing of the Product.

28     81.    Defendants made representations and statements (by omission and commission)

1    that led reasonable customers to believe that the Product that they were purchasing were made

2    from, and contained, real ginger root.

3         82.    Plaintiff and those similarly situated relied to their detriment on Defendants' false,

4    misleading and deceptive advertising and marketing practices, including each of the

5    misrepresentations and omissions set forth in paragraphs 19-22, 29-39, and 50-55 above.  Had

6    Plaintiff and those similarly situated been adequately informed and not intentionally deceived by

7    Defendants, they would have acted differently by, without limitation, refraining from purchasing

8    Defendants' ginger ales or paying less for them.

9         83.    Defendants' acts and omissions are likely to deceive the general public.

10        84.    Defendants engaged in these false, misleading and deceptive advertising and

11   marketing practices to increase its profits.  Accordingly, Defendants have engaged in false

12   advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

13   Professions Code.

14        85.    The aforementioned practices, which Defendants used, and continue to use, to

15   their significant financial gain, also constitutes unlawful competition and provides an unlawful

16   advantage over Defendants' competitors as well as injury to the general public.

17        86.    As a direct and proximate result of such actions, Plaintiffs and the other class

18   members have suffered, and continue to suffer, injury in fact and have lost money and/or property

19   as a result of such false, deceptive and misleading advertising in an amount which will be proven

20   at trial, but which is in excess of the jurisdictional minimum of this Court.

21        87.    Plaintiff seek, on behalf of herself and those similarly situated, full restitution of

22   monies, as necessary and according to proof, to restore any and all monies acquired by

23   Defendants from Plaintiff, the general public, or those similarly situated by means of the false,

24   misleading and deceptive advertising and marketing practices complained of herein, plus interest

25   thereon.

26        88.    Plaintiff seek, on behalf of herself and those similarly situated, a declaration that

27   the above-described practices constitute false, misleading and deceptive advertising.

28        89.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to

-19-

1  prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising

2  and marketing practices complained of herein. Such misconduct by Defendants, unless and until

3  enjoined and restrained by order of this Court, will continue to cause injury in fact to the general

4  public and the loss of money and property in that Defendants will continue to violate the laws of

5  California, unless specifically ordered to comply with the same. This expectation of future

6  violations will require current and future consumers to repeatedly and continuously seek legal

7  redress in order to recover monies paid to Defendants to which they are not entitled.  Plaintiff,

8  those similarly situated and/or other consumers nationwide have no other adequate remedy at law

9  to ensure future compliance with the California Business and Professions Code alleged to have

10  been violated herein.

11  **PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Fraud, Deceit and/or Misrepresentation)**
12  **On Behalf of Plaintiff and the Class**

13      90.     Plaintiff realleges and incorporate by reference the paragraphs of this Class Action

14  Complaint as if set forth herein.

15      91.     Throughout the last four years, at weekly and monthly intervals, Defendants

16  fraudulently and deceptively informed Plaintiff that the Product was "MADE WITH REAL

17  GINGER." Further, at weekly and monthly intervals over the last four years, Defendants failed to

18  inform Plaintiff that the Product was not made with real ginger but instead were made from a

19  chemical compound manufactured to mimic the flavor of ginger.

20      92.     These misrepresentations and omissions were known exclusively to, and actively

21  concealed by, Defendants, not reasonably known to Plaintiff, and material at the time they were

22  made. Defendants knew the composition of the Product, and they knew that the soft drinks were

23  flavored with a chemical compound intended to mimic the taste of ginger. Defendants'

24  misrepresentations and omissions concerned material facts that were essential to the analysis

25  undertaken by Plaintiff as to whether to purchase Defendants' ginger ales.  In misleading

26  Plaintiffs and not so informing Plaintiff, Defendants breached their duty to her. Defendants also

27  gained financially from, and as a result of, their breach.

28      93.     Plaintiff and those similarly situated relied to their detriment on Defendants'

misrepresentations and fraudulent omissions.  Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Product, (ii) purchasing less of them, or (iii) paying less for the Product.

94.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to purchase the Product.

95.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

96.     As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Product.

97.     Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the Class**

98.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

99.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

100.    In particular, Defendants have engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman

1   Law (Article 3), including without limitation, California Health & Safety Code §§ 110390,

2   110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article

3   6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705,

4   110740, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and

5   branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to

6   21 C.F.R. 101.3, 101.4, 101.13, 101.14, and 101.22, which are incorporated into the Sherman

7   Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

8           101.    In particular, Defendants have engaged, and continues to engage, in unfair and

9   fraudulent practices by, without limitation, the following: (i) misrepresenting that the Product is

10  made from, and contain, real ginger;" and (ii) failing to inform Plaintiff, and those similarly

11  situated, that the Products that they purchased are made with a compound manufactured to mimic

12  the flavor of ginger.

13          102.    Plaintiff and those similarly situated relied to their detriment on Defendants'

14  unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been

15  adequately informed and not deceived by Defendants, they would have acted differently by,

16  without limitation: (i) declining to purchase the Product, (ii) purchasing less of the Product, or

17  (iii) paying less for the Product.

18          103.    Defendants' acts and omissions are likely to deceive the general public.

19          104.    Defendants engaged in these deceptive and unlawful practices to increase their

20  profits.  Accordingly, Defendants have engaged in unlawful trade practices, as defined and

21  prohibited by section 17200, *et seq.* of the California Business and Professions Code.

22          105.    The aforementioned practices, which Defendants have used to its significant

23  financial gain, also constitute unlawful competition and provide an unlawful advantage over

24  Defendants' competitors as well as injury to the general public.

25          106.    As a direct and proximate result of such actions, Plaintiff and the other class

26  members, have suffered and continue to suffer injury in fact and have lost money and/or property

27  as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount

28  which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

1   Among other things, Plaintiffs and the class members lost the amount they paid for the Product.

2   107.   As a direct and proximate result of such actions, Defendants have enjoyed, and

3   continues to enjoy, significant financial gain in an amount which will be proven at trial, but which

4   is in excess of the jurisdictional minimum of this Court.

5   108.   Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of

6   monies, as necessary and according to proof, to restore any and all monies acquired by

7   Defendants from Plaintiffs, the general public, or those similarly situated by means of the

8   deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

9   109.   Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-

10   described trade practices are fraudulent, unfair, and/or unlawful.

11   110.   Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

12   Defendants from continuing to engage in the deceptive and/or unlawful trade practices

13   complained of herein.  Such misconduct by Defendants, unless and until enjoined and restrained

14   by order of this Court, will continue to cause injury in fact to the general public and the loss of

15   money and property in that Defendants will continue to violate the laws of California, unless

16   specifically ordered to comply with the same.  This expectation of future violations will require

17   current and future consumers to repeatedly and continuously seek legal redress in order to recover

18   monies paid to Defendants to which they were not entitled.  Plaintiff, those similarly situated

19   and/or other consumers nationwide have no other adequate remedy at law to ensure future

20   compliance with the California Business and Professions Code alleged to have been violated

21   herein.

22   **PRAYER FOR RELIEF**

23   WHEREFORE, Plaintiff prays for judgment as follows:

24   A.   On Cause of Action Number 1 (for violation of the Consumers Legal Remedies

25   Act), 2 (for violation of the False Advertising Law) and 4 (for violation of the

26   Unfair Competition Law) against Defendants and in favor of Plaintiff and the other

27   members of the Class as follows:

28   1.   Declaring that Defendants' use of the phrase "Made with Real Ginger" on

-23-

the Product is unlawful and likely to deceive reasonable consumers;

2.     Enjoining Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any ginger beverage from making a "Made with Real Ginger" claim unless the product contains real ginger;

3.     Enjoining Defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any ginger beverage from making other claims about the inclusion of real ginger in the product (such as "contains real ginger") unless the representation is non-misleading; and

4.     Enjoining Defendants, directly or through any corporation, partnership, subsidiary, division, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any soda to not provide to others the means and instrumentalities with which to make any representation prohibited by the above. For the purposes of this paragraph, "means and instrumentalities" means any information, including, but not necessarily limited to, any advertising, labeling, or promotional, sales training, or purported substantiation materials, for use by trade customers in their marketing of such product or service.

B.     On Causes of Action Numbers 2 (for violation of the False Advertising Law) and 4 (for violation of the Unfair Competition Law) against Defendants and in favor of Plaintiff and the other members of the Class:

1.     For restitution pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

2.     For injunctive relief pursuant to, without limitation, the California Business

& Professions Code §§ 17200, *et seq.* and 17500, *et seq.*; and

    3.    For a declaration that Defendants' above-described trade practices are fraudulent and/or unlawful.

C.    On Cause of Action Number 3 (for fraud, deceit and/or misrepresentation) against Defendants and in favor of Plaintiff and the other members of the Class:

    1.    An award of compensatory damages, the amount of which is to be determined at trial; and

    2.    An award of punitive damages, the amount of which is to be determined at trial.

D.    On all Causes of Action against Defendants and in favor of Plaintiff and the other members of the Class:

    1.    For reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

    2.    For costs of suit incurred; and

    3.    For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 23, 2016        **GUTRIDE SAFIER LLP**

_____

Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Marie A. McCrary, Esq.
Kristen G. Simplicio, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiff

# EXHIBIT A

## EXHIBIT A

I, Jackie Fitzhenry-Russell, declare:

1. I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2. I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3. As set forth in my complaint, over the last four years, I purchased a number of cases of Seagram's Ginger Ale from Safeway store in Santa Cruz, California and a Lucky store in Capitola, California.

4. I later learned that the Seagram's Ginger Ale I purchased was not made with real ginger.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this _____ day of December 2016, in Santa Cruz, California.

Jackie Fitzhenry-Russell

# EXHIBIT B



