PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice*)
Michelle W. Cohen (*pro hac vice*)
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  (212) 336-2000
Facsimile:    (212) 336-2222

SHOOK HARDY & BACON LLP
Tammy B. Webb
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone: 415-544-1904
Facsimile: 415-391-0281
tbwebb@shb.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br>vs.<br>THE COCA-COLA COMPANY<br><br>Defendant. | Case No. 5:17-cv-00603-EJD<br><br>**NOTICE OF MOTION AND MOTION; MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Case Removed:  February 6, 2017<br>Hearing Date:  May 25, 2017<br>Time:  9:00 a.m.<br>Courtroom:  4<br>Judge:  Honorable Edward J. Davila |

**TO THE PLAINTIFFS AND THEIR ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED MATTER:**

**PLEASE TAKE NOTICE** that on Thursday, May 25, 2017, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 4 before the Honorable Edward J. Davila of the Northern District of California, Defendant The Coca-Cola Company will and hereby does move the Court to dismiss Plaintiff Jackie Fitzhenry-Russell's Class Action Complaint against it, in which Plaintiff alleges violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and the Unfair Competition Law, *Id.* § 17200, *et seq.*, as well as common law claims for fraud, deceit and misrepresentation.

Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6) as to each cause of action on the grounds set forth in the accompanying Memorandum of Law in Support of Defendant's Motion to Dismiss.

Dated: March 13, 2017

Respectfully submitted,

  /s/ Steven A. Zalesin
Steven A. Zalesin (*pro hac vice*)
Michelle W. Cohen (*pro hac vice)*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222
sazalesin@pbwt.com
mcohen@pbwt.com

Tammy B. Webb
SHOOK HARDY & BACON LLP
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone:  415-544-1904
Facsimile:  415-391-0281
tbwebb@shb.com

*Attorneys for Defendant The Coca-Cola Company*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... iv

STATEMENT OF ISSUES .................................................................................................... vii

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .........................................................................................................1

ARGUMENT ..............................................................................................................................3

I.    PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE SHE HAS NOT ALLEGED ANY FALSE OR MISLEADING STATEMENT ..................................4

    A.    Plaintiff Cannot State A Claim Under California's Consumer-Protection Statutes Because She Has Not Alleged Any Statement That Is Misleading To Reasonable Consumers .............................................................................4

    B.    Plaintiff's Failure to Allege A False Statement Is Also Fatal To Her Fraud Claim ...................................................................................................................9

    C.    Plaintiff Cannot Salvage Her Claim By Citing Irrelevant Regulations .......................10

II.    PLAINTIFF FAILS TO PLEAD RELIANCE ON ANY REPRESENTATIONS OTHER THAN THOSE ON THE PRODUCT LABELING ...................................11

III.    PLAINTIFF'S CLASS CLAIMS SHOULD BE DISMISSED .............................12

CONCLUSION.........................................................................................................................13

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................... 3, 10

*Bronson v. Johnson & Johnson, Inc.*,
    No. 12-04184 CRB, 2013 U.S. Dist. LEXIS 54029 (N.D. Cal. Apr. 16, 2013) ............. 11

*Carrea v. Dreyer's Ice Cream*,
    475 F. App'x 113 (9th Cir. 2012) ....................................................................... 5, 7, 8, 9

*Churchill Village, LLC v. General Electric Co.*,
    169 F. Supp. 2d 1119 (N.D. Cal. 2000) ......................................................................... 12

*Dvora v. General Mills, Inc.*,
    No. 11-1074-GW, 2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) ............... 11

*Figy v. Frito-Lay N. Am.*,
    67 F. Supp. 3d 1075, 1087 (N.D. Cal. 2014) ........................................................... 12, 13

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,
    5:17-cv-00564-NC (N.D. Cal.) ......................................................................................... 3

*Gershman v. Bayer HealthCare LLC*,
    No. 14-05332-HSG, 2015 U.S. Dist. LEXIS 60835 (N.D. Cal. May 8, 2015) .............. 12

*Henderson v. Gruma Corp.*
    No. 10-04173 AHM, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ............. 8

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................................... 11

*Leonhart v. Nature's Path Foods Inc.*,
    No. 13-0492 EJD, 2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) ............... 10

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235 (Cal. App. 2009) ........................................................................ 9

*People for the Ethical Treatment of Animals v. Whole Food Market, Inc.*,
    No. 15-04301 NC, 2016 U.S. Dist. LEXIS 55601 (N.D. Cal. Apr. 26, 2016) ................. 5

*Rahman v. Mott's, LLP*,
    No. 13-3482 SI, 2014 U.S. Dist. LEXIS 11767 (N.D. Cal. Jan. 29, 2014) ...................... 8

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW(AGR), 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25,
  2012) ............................................................................................................................5, 7, 8, 9

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ...................................................................................................4, 12

*Sugawara v. Pepsico, Inc.*,
  No. 08-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127 (E.D. Cal. May 21,
  2009) ................................................................................................................................................8

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ..................................................................................................................12

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .....................................................................................................4, 12

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .................................................................................................................9, 11

*Vess v. Ciba-Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................................................3

*Von Koenig v. Snapple Bev. Corp.*,
  713 F. Supp. 2d 1066 (E.D. Cal. 2010)............................................................................................6

*Werbel v. Pepsico, Inc.*,
  2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010)..............................................................4, 8

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .............................................................................................................4

*Wilson v. Frito-Lay North America, Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) .....................................................................................10, 12

*Workman v. Plum, Inc.*,
  141 F. Supp. 3d 1032, 1035–36 (N.D. Cal. 2015) ..........................................................................8

**Statutes**

21 U.S.C. § 343-1 ....................................................................................................................................9

Cal. Health & Safety Code § 110665.................................................................................................10

Cal. Health & Safety Code § 110740.................................................................................................10

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*..............................3, 4, 12

False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*...............................................3, 4, 12

**Other Authorities**

21 C.F.R. § 101.3(a)-(b)..................................................................................................................9

21 C.F.R. §§ 101.13-101.14..........................................................................................................10

21 C.F.R. § 101.22(h)(1).................................................................................................................6

Fed. R. Civ. P. 8(a)(2).....................................................................................................................3

Fed. R. Civ. P. 9(b) ...............................................................................................................3, 4, 12

Fed. R. Civ. P. 12(b)(6)............................................................................................................3, 12

Fed. R. Evid. 201 ............................................................................................................................6

# STATEMENT OF ISSUES

1. Has Plaintiff stated a claim under the California consumer-protection statutes, or for common-law fraud, where she has challenged the use of the statement "Made With Real Ginger" on the label of Seagram's® Ginger Ale, but has not plausibly alleged that that statement is false or misleading to a reasonable consumer?

2. Has Plaintiff stated a consumer-protection or fraud claim arising out of the statement's appearance on advertising materials other than the product label, where she has not alleged that she read or relied on any such materials?

3. Can Plaintiff bring consumer-protection claims under California state law on behalf of non-California residents who never purchased the product at issue in California?

**PRELIMINARY STATEMENT**

Plaintiff's claims in this putative class action arise entirely from the statement, on the label of Seagram's Ginger Ale, that the product is "Made With Real Ginger." Like most food-labeling complaints, Plaintiff's complaint includes allegations that she was "attracted to" the product in part because of that representation, that she paid a price premium as a result of it, and that she is entitled to damages. Also like many food-labeling cases, it is not the only one of its kind: the same day that Plaintiff filed this complaint, she filed a virtually identical one against another soft-drink company.

Less typical, however, is Plaintiff's utter failure to allege that the statement at issue is false. The complaint acknowledges that the flavoring for Seagram's Ginger Ale is formulated with real ginger, *i.e.*, that the product is, in fact, "Made With Real Ginger." That acknowledgment is fatal to her claims: the *sine qua non* of any consumer-protection or fraud claim is an allegation of a false or misleading statement. Because the complaint makes no such allegation, it must be dismissed.

Plaintiff attempts to compensate for this deficiency by asserting, implausibly, that a reasonable consumer would interpret the phrase "Made With Real Ginger" to mean something other than what it says. She claims that the statement would lead a reasonable consumer to expect a wide array of "health benefits" from the product, and/ or a quantity of ginger that, Plaintiff speculates, Seagram's Ginger Ale may not contain. But these dubious conjectures, which have no basis in fact, cannot salvage Plaintiff's claim. Courts in this Circuit have routinely dismissed consumer-protection complaints based on facially incredible interpretations of advertising claims, and this Court should do the same here.

Plaintiff's complaint also suffers from other defects: she alludes to the use of the same phrase in "advertising materials," but does not allege reliance on any such materials; and she purports to assert claims on behalf of ginger-ale purchasers nationwide, in contravention of California's presumption against extraterritorial application of its laws.

For all of these reasons, the complaint should be dismissed.

**STATEMENT OF FACTS**

The Coca-Cola Company is a global beverage producer whose portfolio of soft drinks includes Seagram's Ginger Ale. (Compl. ¶ 19) Seagram's Ginger Ale specifies on its packaging

that it is "Made With Real Ginger."  (*See* Compl. ¶ 41 & Exh. B)  That statement is true:  Coca-Cola uses ginger root, the edible portion of the ginger plant, to give the beverage its distinctive ginger flavor.  (Compl. ¶ 26)

Plaintiff, a California resident, alleges that she has purchased several cases of Seagram's Ginger Ale over the past few years.  She claims that she was "attracted to" the product partly because of the statement "Made With Real Ginger"[1] —which, she alleges, appears both on product labels and on "advertising materials," though she claims to have read only the former.  (Compl. ¶¶ 5, 56)  Crucially, Plaintiff concedes that the flavor for Seagram's Ginger Ale is, in fact, formulated with real ginger root.  (Compl. ¶ 26)  She claims, however, that the statement "Made With Real Ginger" is misleading because (1) it implies that Seagram's Ginger Ale offers certain "health benefits" associated with ginger—including anti-carcinogenic and anti-inflammatory effects—when in fact it does not; and (2) it suggests that ginger root is a predominant ingredient in the product, when in fact, she speculates, it is merely distilled to its "essentials oils or essences" and "combined . . . with any number of other extractions from other plants and animals to create a flavoring substance that tastes like ginger."  (Compl. ¶ 26)

Based on these allegations, Plaintiff seeks damages and injunctive relief on behalf of a putative nationwide class of consumers who purportedly purchased Seagram's Ginger Ale believing that it contains "ginger root" and would confer wide-ranging "health benefits" as a result.  (Compl. ¶ 21, 33)

Plaintiff pleads no facts to support her conclusion that the phrase "Made With Real Ginger" would cause a reasonable consumer to associate a carbonated soft drink with "health benefits." Moreover, although she does not challenge Coca-Cola's decision to designate the product as a "ginger ale," she does not account for the fact that any consumer who has those expectations based on the phrase "Made With Real Ginger" would likely have similar expectations based on the word "ginger" in the name of the product.  Nor does she specify what quantity or form of ginger *would* satisfy a reasonable consumer's expectations based on the challenged phrase.  Nevertheless, she

---

[1] Though Plaintiff's complaint makes several references to the phrase "Made *From* Real Ginger" (emphasis added), that appears to be an error.  *See* Compl. ¶¶ 2-4, 19-20.

1  claims that if she had known that the product did not meet these amorphous expectations, she would
2  not have purchased the product, or would have refused to pay the same price for it.  (Compl. ¶¶ 26,
3  56–58)  She also references a laundry list of regulatory provisions that, she claims, Seagram's
4  Ginger Ale has violated, though she provides no facts to support that legal conclusion.  (Compl. ¶¶
5  34-36)

Plaintiff filed her complaint on December 28, 2016, in Santa Cruz Superior Court, asserting claims under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, and the Unfair Competition Law, *Id.* § 17200, *et seq.* ("UCL"), as well as a claim for common-law fraud.  (Compl. ¶¶ 71–78, 79–89, 98–110)  The same day, Plaintiff, represented by the same counsel, filed a nearly-identical complaint against Dr. Pepper Snapple Group for its use of the phrase "Made From Real Ginger" on Canada Dry Ginger Ale.  *See Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*, 5:17-cv-00564-NC (N.D. Cal.) (Dkt. No. 1, Ex. A).  Coca-Cola timely removed this action on February 6, 2017.  (Dkt. No. 1)

**ARGUMENT**

The Federal Rules of Civil Procedure require dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the court must accept all well-pleaded factual allegations in the complaint, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Consumer-protection claims that sound in fraud, as Plaintiff's do, are also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (Where a claim is . . . "grounded in fraud or to sound in fraud, the pleading

of that claim as a whole must satisfy the particularity requirements of Rule 9(b).").  Those requirements provide that "a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Therefore, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Plaintiff's complaint is deficient, first and foremost, because it fails to allege any false or misleading statement, which is essential to a claim for violation of any of the California consumer-protection statutes or for common-law fraud.  Plaintiff's attempts to compensate for this deficiency by attributing implausible meanings to the statement, and by invoking a laundry list of irrelevant regulations, are unavailing.  In addition, Plaintiff fails to plead reliance on any materials other than the product label, and improperly purports to bring claims on behalf of a nationwide class.  The complaint should be dismissed.

I.  **PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE SHE HAS NOT ALLEGED ANY FALSE OR MISLEADING STATEMENT**

   A.  **Plaintiff Cannot State A Claim Under California's Consumer-Protection Statutes Because She Has Not Alleged Any Statement That Is Misleading To Reasonable Consumers**

To state a claim under the UCL, FAL, or CLRA, a plaintiff must plausibly identify a marketing or advertising statement that is "either actually misleading or . . . has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).  Claims under these statutes are "governed by the 'reasonable consumer' test," and a plaintiff's allegations must be sufficient to "show that members of the public are likely to be deceived." *Id.*  When the court "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging," a complaint under these statutes must be dismissed.  *Werbel v. Pepsico*, *Inc.*, No. 09-04456 SBA, 2010 U.S. Dist. LEXIS 76289 at *8-9 (N.D. Cal. July 2, 2010).

1    In accordance with these principles, a consumer-protection claim cannot stand on the premise
2 that consumers "will read a true statement in a package . . . and assume things about the products
3 other than what the statement actually says." *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGR),
4 2012 U.S. Dist. LEXIS 164461, at *9 (C.D. Cal. Oct. 25, 2012); *see also Carrea v. Dreyer's Ice
5 Cream*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal of consumer-protection
6 complaint where the plaintiff's claimed interpretation of a marketing statement "strain[ed]
7 credulity."). Rather, such a claim must be rooted in plausible allegations that the defendant
8 advertised a product as having "characteristics, benefits, uses, qualities, sponsorships, approvals or
9 certifications that [it did] not have." *People for the Ethical Treatment of Animals v. Whole Food
10 Market, Inc.*, No. 15-04301 NC, 2016 U.S. Dist. LEXIS 55601, at *6 (N.D. Cal. Apr. 26, 2016).

11    Plaintiff's claims arise entirely out of Coca-Cola's description of the product as "Made With
12 Real Ginger." But she ***fails to allege that the product is not so made***. On the contrary, she allows
13 that "[it] may be that ginger root is used in the creation" of the product, in order to give the soft drink
14 its distinctive ginger flavor. (Compl. ¶ 26) In other words, Plaintiff acknowledges the reality that
15 the product is, in fact, "made with real ginger," and has been throughout the putative class period.
16 That is the end of her case.

17    In an effort to get around this fatal flaw in her pleading, Plaintiff makes two assertions as to
18 why the representation is, nonetheless, misleading to reasonable consumers. *First*, she claims that
19 the statement leads consumers to believe that they will "receive the health benefits associated with
20 consuming real ginger root"—an expectation that, under Plaintiff's theory, is triggered by the use of
21 the phrase "Made With Real Ginger" but *not* by the use of the word "ginger" in the name of the
22 product. (Compl. ¶¶ 2, 49) Referring to unidentified "scientific studies," Plaintiff sets forth a litany
23 of these purported health benefits: that ginger has "anti-inflammatory effects and aids in relaxing
24 muscles, is effective in alleviating symptoms of nausea and vomiting, has anti-carcinogenic
25 qualities, and appears to . . . decrease the risk of cardiovascular disease and diabetes." (Compl. ¶ 24)
26 According to Plaintiff, the inclusion of the phrase "Made With Real Ginger" on the product's label
27 thus leads reasonable consumers to believe that the beverage, a carbonated soft drink, confers this
28 array of health benefits. (Compl. ¶¶ 2, 24, 49)

1    *Second*, Plaintiff asserts that the statement communicates to consumers that ginger is present
2    in a certain quantity or form, which, she speculates, it may not be in Seagram's Ginger Ale.  Though
3    she acknowledges that ginger root is used "in the creation of the natural flavor" for Seagram's
4    Ginger Ale, she hypothesizes that the flavor may have been formulated from "isolated proteins" or
5    "extracted oils and essences" from the ginger root.  (Compl. ¶ 26)  She then theorizes that these
6    isolated compounds "***may not*** actually taste like ginger," and accordingly ***may have*** been "combined
7    . . . with any number of other extractions from other plants and animals to create a flavoring
8    substance that tastes like ginger."  (Compl. ¶ 26 (emphasis added))  Plaintiff finally asserts, in
9    conclusory fashion, that a ginger flavor formulated in this manner "is not ginger as a reasonable
10   consumer would understand it."  (Compl. ¶ 26)  Nowhere does Plaintiff explain what method of
11   incorporating ginger *would*, in her view, satisfy a reasonable consumer's expectations—particularly
12   given the reality, obvious to any consumer, that a piece of ginger root must be distilled or processed
13   in some way in order to be incorporated into a soft drink.

14   Notably, Plaintiff's theories about how ginger is incorporated into the product are entirely
15   speculative.  They appear to be based on the fact that, on an outdated version of the product label,
16   "ginger" was declared under the heading "natural flavors," rather than called out specifically as an
17   ingredient.  But the Food, Drug and Cosmetic Act ("FDCA") and its implementing regulations
18   expressly authorize that approach to the labeling of natural flavors such as ginger—irrespective of
19   the amount of flavor present in the product.  *See* 21 C.F.R. § 101.22(h)(1).  That Coca-Cola formerly
20   took this approach to the labeling of ginger provides no basis for Plaintiff's suppositions about how,
21   or in what quantity, ginger is incorporated into the product.  The current version of the product
22   packaging—which has been in the marketplace since mid-2016—declares ginger as an individual
23   ingredient.[2]

24   In any event, Plaintiff's assertion that reasonable consumers interpret the phrase "Made With
25   Real Ginger" to mean something other than what it says are insufficient to save her complaint from

---

[2] The Court may take judicial notice of the current Seagram's Ginger Ale label pursuant to Fed. R. Evid. 201, because it is referenced throughout Plaintiff's complaint.  *See Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1073 (E.D. Cal. 2010) (taking judicial notice of labels affixed to the defendant's drink products "because these labels form the basis of the relevant causes of action").

1  dismissal.  Coca-Cola has never made *any* representation about the quantity of ginger in the product,
2  the manner in which it is processed, or the extent to which it is or is not "combined . . . with other
3  extractions from other plants and animals."  (Compl. ¶ 26)  It has also never touted *any* health
4  benefits—let alone such dramatic ones as the prevention of cancer or heart disease—in connection
5  with Seagram's Ginger Ale.  Plaintiff's rank speculation that consumers will nonetheless interpret
6  the "Made With Real Ginger" statement to communicate some or all of these messages is facially
7  implausible.

8  Courts in this Circuit routinely dismiss consumer-protection complaints based on similarly
9  farfetched interpretations of product packaging claims.  In *Carrea v. Dreyer's Grand Ice Cream,*
10 *Inc.*, 475 F. App'x 113, 115 (9th Cir. Apr. 5, 2012), for example, the Ninth Circuit affirmed the
11 district court's dismissal of a consumer-protection complaint based on a claim that "a reasonable
12 consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that
13 [the advertised ice cream product] is more wholesome or nutritious than competing products."  The
14 court noted that the mere words "'original' or 'classic' . . . d[id] not plausibly imply that a product
15 [was] more nutritious than other desserts," and held that a reasonable consumer was particularly
16 unlikely to take that message away given the nature of the product:  "[I]t strains credulity to claim
17 that a reasonable consumer would be misled to think that an ice cream dessert, with 'chocolate
18 coating topped with nuts,' is healthier than its competitors simply by virtue of these 'Original' and
19 'Classic' descriptors."  *Id.* at 115.

20 Similarly, in *Red v. Kraft Foods*, the court dismissed a plaintiff's consumer-protection claims
21 after rejecting her assertion that the statement "Made With Real Vegetables," when affixed to a box
22 of crackers, would lead a reasonable consumer to believe that "the product is *healthy* and contains a
23 *significant amount* of vegetables."  2012 U.S. Dist. LEXIS 164461, at *5, 10 (emphasis in original).
24 The court noted that "a reasonable consumer will be familiar with the fact of life that a cracker is not
25 composed of primarily fresh vegetables," and that "it strains credulity to imagine that a reasonable
26 consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of
27 vegetables simply because there are pictures of vegetables and the true phrase 'Made with Real
28 Vegetables' on the box."  *Id.* at *11-12.

1     Many other courts have likewise declined to attribute implausible meanings to challenged claims on product packaging. *See Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1035–36 (N.D. Cal. 2015) (dismissing consumer-protection challenge to the use of images of certain ingredients on the product panel, where the product "contain[ed] no affirmative misrepresentations," the pictured ingredients were "actually present in the product," and "a reasonable consumer would simply not view pictures on the packaging . . . and assume that the size of the items pictured directly correlated with their predominance in the blend"); *Henderson v. Gruma Corp.* No. 10-04173 AHM, 2011 U.S. Dist. LEXIS 41077, at *33 (C.D. Cal. Apr. 11, 2011) (concluding that the label "With Garden Vegetables" on a package of dip was not actionable where the product was made with "avocado powder, dehydrated onion, garlic powder, and bell pepper," and thus "in fact contain[ed] vegetables that can be grown in a garden"); *Sugawara v. Pepsico, Inc.*, No. 08-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127, at *8–9 (E.D. Cal. May 21, 2009) (dismissing consumer-protection claim based on assertion that the use of the word "berries" on a cereal package would lead a reasonable consumer to conclude that the product was "particularly nutritious or . . . designed specifically to meet the nutritional needs of toddlers or children"); *Werbel v. Pepsico, Inc.*, 2010 U.S. Dist. LEXIS 76289, at *9-10 (dismissing as "[n]onsense" a similar consumer-protection claim based on the same cereal's product packaging, and noting that "no reasonable consumer would believe that [the cereal] derives any nutritional value from berries"); *Rahman v. Mott's, LLP*, No. 13-3482 SI, 2014 U.S. Dist. LEXIS 11767, at *27-28 (N.D. Cal. Jan. 29, 2014) (dismissing consumer-protection claim based on a theory that the claim "No Sugar Added" on a package of applesauce was "likely to mislead the consuming public into believing that the [products were] healthier and contain[ed] less sugar than comparable products.").

    Plaintiff's complaint must be dismissed for the same reasons.  The challenged claim communicates only that the product "in fact contains" real ginger, as indeed it does.  Plaintiff's suggestion that a reasonable consumer will interpret this straightforward factual statement to mean that Seagram's Ginger Ale is "*healthy*" or contains a "*significant amount*" of ginger is contrary to fact and reason.  *Red*, 2012 U.S. Dist. LEXIS 164461, at *9.  And as in *Carrea*, this assertion is especially implausible in view of the nature of the product:  it "strains credulity" to posit that a

1  reasonable consumer would assume that a sugared soft drink has large quantities of unprocessed,
2  fresh ginger, or has medicinal properties, based solely on the statement that it is "made with" an
3  unspecified amount of real ginger.  *Id.* at *11; *see also Carrea*, 475 F. App'x at 115.  Indeed,
4  Plaintiff does not even allege that *she personally* had these idiosyncratic expectations, other than a
5  vague belief that the product would have a "stomach calming" effect.  (Compl. ¶ 56-58)

6        Plaintiff's attempts to attribute these interpretations to Coca-Cola's reference to "real ginger"
7  are particularly unavailing given that, absent the challenged claim, the word "ginger" ***would still***
8  ***appear prominently on the product label***.  The FDCA and its implementing regulations require that
9  the "principal display panel" of any food contain a "statement of identity," consisting of either "[t]he
10 common or usual name of the food" or "[a]n appropriately descriptive term."  21 C.F.R. § 101.3(a)-
11 (b).  In accordance with these regulations, Coca-Cola identifies the product as "ginger ale"—the
12 name that is commonly understood by consumers to describe a ginger-flavored, carbonated soft
13 drink.  Plaintiff does not allege that the name of the product is deceptive, and the preemptive force of
14 the FDCA and its regulations preclude her from doing so.  *See* 21 U.S.C. § 343-1.  But the absence
15 of any challenge to the name of the product belies her allegations that the phrase "Made With Real
16 Ginger" would cause reasonable consumers to impute any special characteristics to Seagram's
17 Ginger Ale.  A consumer who labors under the impression that a soft drink "Made With Real
18 Ginger" is formulated exclusively or primarily with that ingredient—or has cancer-curing
19 properties—is likely to attribute the same benefits to any product identified as a "ginger ale."
20       Because Plaintiff has failed to allege a statement likely to mislead reasonable consumers—a
21 critical element of all her statutory claims—her complaint must be dismissed.

22     **B.**    **Plaintiff's Failure to Allege A False Statement Is Also Fatal To Her Fraud**
23            **Claim**

24       Plaintiff's failure to allege that Coca-Cola made any false statement is also fatal to her claim
25 for common-law fraud.  Unlike the California consumer-protection statutes, which prohibit
26 "misleading" statements likely to deceive a reasonable consumer, "[a] [common law] fraudulent
27 deception must be ***actually false*** [and] known to be false by the perpetrator."  *In re Tobacco II*
28 *Cases*, 46 Cal. 4th 298, 312 (2009) (emphasis added); *see also Morgan v. AT&T Wireless Servs.*,

1   *Inc.*, 177 Cal. App. 4th 1235, 1256 (Cal. App. 2009) (noting that common-law fraud claim, unlike

2   UCL claim, requires allegations of "actual falsity."). Because Plaintiff has not alleged (and cannot

3   allege) that the product she purchased was not, in fact, "made with real ginger," her claim for fraud

4   must also be dismissed.

5           **C.**        **Plaintiff Cannot Salvage Her Claim By Citing Irrelevant Regulations**

6           Lacking any plausible allegation that the "Made With Real Ginger" statement is false or

7   misleading, Plaintiff attempts to shore up her claim with a laundry list of technical food-labeling

8   requirements, originating in the FDCA and thereafter incorporated into California law, that the

9   packaging for Seagram's Ginger Ale has purportedly violated. (Compl. ¶¶ 35-36) But these

10  regulations have nothing to do with Plaintiff's factual allegations regarding the "Made With Real

11  Ginger" claim, and Plaintiff alleges no additional facts to support the conclusion that the labeling for

12  Seagram's Ginger Ale has ever violated any of them.

13          For example, Plaintiff invokes the provisions that require food labels to bear certain

14  information on the "Nutrition Facts" panel, Cal. Health & Safety Code § 110665; to disclose the

15  presence of any artificial flavoring, artificial colors, or chemical preservatives, Cal. Health & Safety

16  Code § 110740; and to have adequate substantiation for certain express claims regarding nutrient

17  content or health benefits, 21 C.F.R. §§ 101.13-101.14. (Compl. ¶¶ 35-36) But her citation to these

18  provisions is a *non sequitur*: nowhere does she allege that Seagram's Ginger Ale omitted required

19  information from its nutrition facts panel, failed to disclose the presence of artificial flavors, colors,

20  or preservatives, or made any of the nutrient or health claims addressed by the regulations. The

21  Court is not required to accept her threadbare "legal conclusion" that these provisions were violated

22  in the absence of any supporting facts. *Twombly*, 550 U.S. at 555.

23          In any event, even if Plaintiff could allege that the Seagram's Ginger Ale packaging ran afoul

24  of a regulatory requirement, courts have consistently rejected consumer-protection claims based on

25  "alleged violation of labeling laws alone, separate from any alleged fraud or deception connected

26  with Plaintiffs' reliance or injury." *Wilson v. Frito-Lay North America, Inc.*, 961 F. Supp. 2d 1134,

27  1145 (N.D. Cal. 2013); *Leonhart v. Nature's Path Foods Inc.*, No. 13-0492 EJD, 2014 U.S. Dist.

28  LEXIS 46413, at *26 (N.D. Cal. Mar. 31, 2014) (plaintiff cannot make out a consumer-protection

1  claim "by simply pointing to a regulation or code provision that was violated" on the challenged
2  label). Accordingly, even if the labeling for Seagram's Ginger Ale violated a regulation—a
3  conclusion that Plaintiff has proffered no facts to support—that would not be sufficient to save her
4  consumer-protection claims in the absence of an actionably misleading statement.

5  **II. PLAINTIFF FAILS TO PLEAD RELIANCE ON ANY REPRESENTATIONS
6  OTHER THAN THOSE ON THE PRODUCT LABELING**

7  Plaintiff purports to base her claim on the "Made With Real Ginger" statement not only on
8  the product label, but also on unspecified "advertising and marketing materials" that, she claims,
9  also contained the challenged statement. But she does not allege that she ever relied on, or even
10 saw, any of these materials. (Compl. ¶ 40) As a result, even laying aside her failure to allege a
11 misleading statement, her consumer-protection and fraud claims arising out of any statement other
12 than those on the product packaging must be dismissed.

13 "[A] plaintiff proceeding on a claim of misrepresentation as the basis of his or her UCL
14 action must demonstrate actual reliance on the allegedly deceptive or misleading statements."
15 *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). Thus, "[a] plaintiff is not permitted to
16 support a claim alleging misleading product packaging with statements that he never read or relied
17 upon when making his purchase," or to plead a claim of reliance with "vague reference[s]" to a
18 general marketing campaign. *Bronson v. Johnson & Johnson, Inc*., No. 12-04184 CRB, 2013 U.S.
19 Dist. LEXIS 54029, at *8 (N.D. Cal. Apr. 16, 2013); *see also Dvora v. General Mills, Inc.*, No. 11-
20 1074-GW, 2011 U.S. Dist. LEXIS 55513, at *21–22 (C.D. Cal. May 16, 2011) (plaintiff must
21 specifically allege that he read and relied on all challenged statements). The same reliance
22 requirement applies to claims of common-law fraud. *Kwikset*, 51 Cal. 4th at 325-26; *see also In re
23 Tobacco II Cases*, 46 Cal. 4th 298, 312-13 (2009) (to support claim of fraud, the fraudulent
24 representation must be "reasonably relied upon by a victim who incurs damages.").

25 Here, Plaintiff claims that the "Made With Real Ginger" statement appeared not only on
26 product packaging, but also in unidentified "advertising and marketing materials," "advertising
27 campaign[s]," and "posters, signs, end cap displays etc." distributed to Coca-Cola's "marketing
28 partners." (Compl. ¶¶ 40-42) But she does not allege that she read or relied on any such materials;

1  to the contrary, she claims only that she read the statement on the "product labels."  (Compl. ¶¶ 55-
2  56)[3]  Accordingly, she has not pleaded reliance on any "marketing materials" other than the labels
3  themselves.

### III.  PLAINTIFF'S CLASS CLAIMS SHOULD BE DISMISSED

Plaintiff's state-law claims on behalf of "all persons" who purchased Seagram's Ginger Ale in the putative class period must be dismissed for the additional reason that they encompass sales outside of California to non-California consumers.  "California law embodies a presumption against the extraterritorial application of its statutes," *Churchill Village, LLC v. General Electric Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000), and the California Supreme Court has held that this "presumption against extraterritoriality applies to the UCL in full force."  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

Courts in this Circuit have therefore dismissed, under Rule 12(b)(6), putative class claims that arise under California law but are "based on activity occurring in other states."  *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013); *Figy v. Frito-Lay N. Am.*, 67 F. Supp. 3d 1075, 1087 (N.D. Cal. 2014) (dismissing class claims "under the UCL, CLRA, and FAL by non-California residents for purchases made outside California"); *Gershman v. Bayer HealthCare LLC*, No. 14-05332-HSG, 2015 U.S. Dist. LEXIS 60835, at *19 (N.D. Cal. May 8, 2015) ("The Court finds that Plaintiffs' UCL claim on behalf of a putative multi-state class cannot proceed based on the allegations in the FAC.").

Here, Plaintiff has pleaded her claims on behalf of a putative class of consumers consisting of "[a]ll persons"—without geographic limitation—who purchased the Product between December 23, 2012 and the present.  (Compl. ¶ 63.)  Because her putative class would plainly encompass claims "under the UCL, CLRA, and FAL by non-California residents for purchases made outside

---

[3] Plaintiff's vague references to "advertising and marketing materials" also fail to satisfy the heightened standards of Rule 9(b), which require allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (pleadings governed by Rule 9(b) must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.").

California," *Figy*, 67 F. Supp. 3d 1075, her class claims are facially defective, and must be dismissed.

## CONCLUSION

For the foregoing reasons, The Coca-Cola Company respectfully requests that this Court dismiss Plaintiff's complaint.

Dated: March 13, 2017

Respectfully submitted,

  /s/ Steven A. Zalesin  _____

Steven A. Zalesin (admitted *pro hac vice*)
Michelle W. Cohen (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222
sazalesin@pbwt.com
mcohen@pbwt.com

Tammy B. Webb
SHOOK HARDY & BACON LLP
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone:  415-544-1904
Facsimile:  415-391-0281
tbwebb@shb.com

*Attorneys for Defendant*