1   **GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
2   SETH A. SAFIER (State Bar No. 197427)
MARIE MCCRARY (State Bar No. 262670)
3   KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
4   San Francisco, California 94114
Telephone: (415) 639-9090
5   Facsimile: (415) 449-6469
6
7   Attorneys for Plaintiff, JACKIE FITZHENRY-RUSSELL

8                   UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  JACKIE FITZHENRY-RUSSELL on
    behalf of herself and all others similarly
11  situated,                                       Case No. 5:17-CV-00603-EJD

12      Plaintiff,                                  **PLAINTIFF'S OPPOSITION TO**
                                                    **DEFENDANT'S MOTION TO DISMISS**
13
                v.                                  Date: May 25, 2017
14                                                  Ctrm: 4,
    THE COCA-COLA COMPANY, and                      Time: 9:00 AM
15  DOES 1-50,                                      Judge: Hon. Edward J. Davila

16      Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................................... 3

III.   ARGUMENT .......................................................................................................... 5

    A.   Plaintiff Adequately Pleads an Actionable Misrepresentation ................................. 5

        1.   Plaintiff Plausibly Pleads that a Reasonable Consumer Would Likely Be Deceived By Defendant's "MADE WITH REAL GINGER" Misrepresentation ...................................................................... 5

        2.   Plaintiff Properly Pleads that Defendant's Label Violates FDA Regulations and States a Claim Under the "Unlawful" Prong of the UCL .................................................................................................................. 11

    B.   Plaintiff's Claims Are Not Based on Defendant's Website or Advertising ............ 13

    C.   Defendant's Request to Dismiss Plaintiff's Class Claims is Premature and Improper .............................................................................................................. 13

    D.   If The Court Is Inclined to Grant Defendant's Motion to Dismiss in Any Respect, Plaintiff Respectfully Requests Leave to Amend. ............................... 16

IV.    CONCLUSION .................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 5

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 5

*Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ............................. 15

*Bruton v. Gerber Products Co.*, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) .............................. 14

*Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. Apr. 5, 2012) ................. 8

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013) .............................................. 15

*Colgan v. Leatherman Tool Group, Inc.* 135 Cal.App.4th 663 (2006) ........................................... 5

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003) ....................... 5

*Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1666427
(S.D. Cal. Apr. 17, 2014) ........................................................................................................ 15

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) ....................................................... 16

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) .................................................... 13

*Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ............................. 14

*Figy v. Lifeway Foods, Inc.*, No. 13-CV-04828-TEH, 2016 WL 4364225
(N.D. Cal. Aug. 16, 2016) ................................................................................................ 14, 15

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012) .......................................... 15

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ....................................................................... 5

*Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114 (N.D. Cal. 2014) ............................................. 16

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................. 5, 6

*Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188
(C.D. Cal. Apr. 11, 2011) ......................................................................................................... 9

*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................... 15

*In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521 (N.D. Cal. 2010)
........................................................................................................................................... 13

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334
(N.D. Cal. July 15, 2016) ........................................................................................................ 15

*Massachusetts Mut. Life Ins. Co. v. Superior Court* 97 Cal. App. 4th 1282 (2002) ...................... 7

*Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ..................................... 14, 16

*Mohamed v. Kellogg Co.*, No. 14-CV-2449 L (MDD), 2015 WL 12469107
(S.D. Cal. Aug. 19, 2015) ......................................................................................................... 6

*Morgan v. AT & T Wireless Svcs., Inc.*, 177 Cal.App.4th 1235 (2009) (same) ............................. 7

*Rahman v. Mott's, LLP*, No. 13-3482 SI, 2014 U.S. Dist. LEXIS 11767 (N.D. Cal. Jan. 29, 2014)
........................................................................................................................................... 8

*Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGR), 2012 U.S. Dist. LEXIS 164461
(C.D. Cal. Oct. 25, 2012) .......................................................................................................... 8

*Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986 (S.D. Cal. 2015) .............................. 8, 12

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)..................... 16

*Sugawara v. Pepsico, Inc.*, No. 08-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127
(E.D. Cal. May 21, 2009)................................................................................................. 8

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012)............................ 5

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ............................................ 5

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir.1987)........................................................... 5

*Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4760707
(N.D. Cal. Aug. 11, 2015)............................................................................................... 15

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir.1973) ............................................................. 5

*Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906 (2001)........................................................ 15

*Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010)
................................................................................................................................ 8

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ......................................... 5, 6, 7

*Won Kyung Hwang v. Ohso Clean, Inc.*, C-12-06355 JCS, 2013 WL 1632697
(N.D. Cal. Apr. 16, 2013)................................................................................................ 15

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.), *opinion amended on denial of
reh'g*, 273 F.3d 1266 (9th Cir. 2001)............................................................................ 14

**Statutes**

California Health & Safety Code § 110390 *et seq.* ...................................................................... 11

California Health & Safety Code § 110660 *et seq.* ...................................................................... 11

**Regulations**

21 C.F.R § 102.5.......................................................................................................................... 12

21 C.F.R. § 101.100(a)(3)(i) ....................................................................................................... 10

21 C.F.R. § 101.13....................................................................................................................... 11

21 C.F.R. § 101.14....................................................................................................................... 11

21 C.F.R. § 101.22(a) ............................................................................................................. 3, 10

21 C.F.R. § 101.22(h)................................................................................................................... 10

21 C.F.R. § 101.22(i)(1)(i)........................................................................................................... 12

21 C.F.R. § 101.3.......................................................................................................................... 11

21 C.F.R. § 101.33....................................................................................................................... 11

21 C.F.R. § 101.4(a)(1)................................................................................................................ 10

21 C.F.R. § 101.65....................................................................................................................... 11

I.     INTRODUCTION

Defendant, The Coca-Cola Company, prominently declares on its labels that its Seagram's ginger ale (the "Product") is "MADE WITH REAL GINGER." The statement is false. There is no real ginger in the product, nor is real ginger used as the flavoring agent. Rather, the product is made from water, corn syrup, and "natural flavors," i.e., chemical compounds designed to mimic the flavor of ginger (and, presumably, of other foods). Defendant intentionally uses the tag line "MADE WITH REAL GINGER" to lead reasonable consumers to believe that its beverages are flavored with and contain real ginger and therefore provide a health benefit that justifies the empty calories and inflated price. For thousands of years, human beings have sought out and consumed real ginger for its anti-inflammatory and digestive benefits. Defendant knows that by making the false and misleading statement "MADE WITH REAL GINGER," it can compete with other higher-priced natural beverages that are made with real ginger, and that consumers will and do pay a premium for the Product. Plaintiff Jackie Fitzhenry-Russell sued to enjoin Defendant's unlawful and unfair business practices and to restore to herself, and those similarly situated, the money she spent as a result of Defendant's false and deceptive marketing.

Defendant moves to dismiss all of Plaintiff's claims, but in doing so, it contorts the allegations of the Complaint and ignores well-established law precluding dismissal. Defendant's main argument in support of dismissal is its assertion that the label is not misleading. This is so, according to Defendant, because Plaintiff acknowledges that Defendant's third-party flavor supplier "may" have used real ginger—or more likely an extract of an essential oil or protein of real ginger—at some point in the process of synthesizing the chemical flavoring agent that Defendant actually uses to flavor its beverage. As far as Defendant is concerned, so long as some extract of ginger was used in making its chemical flavoring compound, the "MADE WITH REAL GINGER" claim is true and "that is the end" of Plaintiff's case. But Defendant misunderstands both the allegations of the Complaint and California law. Plaintiff merely alleged that she does not currently know exactly what steps Defendant's third-party laboratory follows to synthesize the chemical flavoring compounds used in the Product. But she does know, and repeatedly alleges, that the Product is not actually flavored with, nor does it contain, real ginger; thus, the

OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS

package label is deceptive. Under California law, even statements that are literally true can be deceptive if they mislead reasonable consumers. Accordingly, even if some small amount of ginger is used, at some point, in the lab to synthesize Defendant's "natural flavor," it is impermissible to claim that the Product is "MADE WITH REAL GINGER," because that phrase signifies to reasonable consumers that the Product is actually flavored with and contains real ginger.

Defendant also wastes much space in its brief on irrelevant straw-man arguments about purported "far-fetched" interpretations of the phrase "MADE WITH REAL GINGER" that Plaintiff never alleges reasonable consumers attribute to the label—such as that it "has cancer-curing properties," is "healthy" or contains a "significant amount of ginger." Plaintiff's allegations regarding how reasonable consumers interpret the phrase "MADE WITH REAL GINGER" are simple, straightforward, and easily satisfy the plausibility standard. Plaintiff alleges that reasonable consumers expect the label to mean what it says, i.e. that Defendant's ginger ale is actually made or flavored with real ginger, not some lab-manufactured chemical compound that maybe somehow derived from ginger.  (Compl. ¶¶ 2, 21, 33, 37, 38, 43). Plaintiff's allegations regarding the health benefits associated with real ginger relate to the materiality of Defendant's misrepresentation and the reason why consumers will pay a price premium for a product; they do not relate to how Defendant's label is false.

Defendant's other challenges to Plaintiff's claims are equally unavailing. Plaintiff pleaded all the facts necessary to show that Defendant has violated various FDA regulations, and by extension, California law. Defendant's request to dismiss Plaintiff's class claims on the ground that California's consumer protection statutes will not apply outside California is premature and improper. In particular, Defendant ignores the fact that common law claims, such as Plaintiff's fraud claim, are sufficiently identical across states to allow for nationwide certification. And Defendant fails to even mention, let alone meet, its burden to prove that California's consumer protection laws could not apply to a nationwide class through California's choice-of-law rules. In accordance with the majority approach in this Circuit, determining what claims can be brought on a nationwide basis or need to be separated into subclasses is more appropriately addressed at the

OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS

class certification stage, not the motion to dismiss stage.

For these reasons, and those discussed more fully below, the Court should deny in full Defendant's motion to dismiss.

## II.    STATEMENT OF FACTS

Defendant manufactures, distributes, markets, advertises, and sells in the United States ginger ale soft drinks under the brand name "Seagram's." (Compl. ¶ 19.) Defendant's packaging of the Product predominately, uniformly, and consistently states on the principal display panel of the label that it is "MADE WITH REAL GINGER." (*Id.*) This representation leads reasonable consumers to believe that the Product is flavored with and contains real ginger. (*Id.* ¶¶ 2, 21, 33, 37, 38, 43.) However, the Product is not MADE WITH REAL GINGER but is instead flavored with a chemical compound designed to mimic the taste of real ginger, i.e. "natural flavors."[1] (*Id.* ¶¶ 3, 22, 26, 33, 38, 44.) Defendant does not disclose on its labels that the Product is flavored with a chemical compound rather than real ginger. (*Id.* ¶ 38.)

Defendant intends to mislead consumers into believing that the Product contains real ginger so Defendant can charge a premium for the Product. (*Id.* ¶ 46.) Over the past decade, in response to news reports about the dangers of high fructose corn syrup and soda's role in contributing to the increased rates of obesity and diabetes in this country, many consumers are drinking smaller quantities of traditional soda, and are seeking out instead, healthier alternative beverages made from real ingredients. (*Id.* ¶ 45.) Ginger ale is a particularly strong growing flavor in the healthy soda category. (*Id.* ¶ 51.) Defendant has an incentive to emphasize the presence of real ginger to realize the premium these consumers are willing to pay. (*Id.* ¶ 45)

Defendant is likewise aware that consumers are willing to pay a premium for products

---

[1] The term "natural flavors" is a term of art in FDA regulations. *See* 21 C.F.R. § 101.22(a)(1)-(3) Compl. ¶ 25. A "natural flavor" is a flavoring compound that contains some oil, protein, or essence from a plant or animal, but it bears little resemblance to the actual plant or animal from which it is derived. *Id.* Natural flavors are made in a laboratory by scientists who make determinations on how to replicate a flavor using chemicals found in nature and are combinations of different oils and essences from multiple different plant and animal sources. *See id.*; Compl. ¶ 26. This is as opposed to a "spice" flavoring agent, which would simply be something like real ginger, see 21 C.F.R. § 101.22(a)(2) (listing ginger as a "spice"), or an "artificial flavor" which is a flavoring compound similarly made in a lab but not derived from any natural source, 21 C.F.R. § 101.22(a)(1).

3

they believe contain real ginger, due to the well-known health benefits consumers attribute to ginger and foods containing real ginger. (*Id.* ¶ 23). For example, consumers understand, and scientific studies have confirmed, that ginger has anti-inflammatory effects and aids in relaxing muscles, is effective in alleviating symptoms of nausea and vomiting, is anti-carcinogenic, and appears to reduce cholesterol and improve lipid metabolism thereby reducing the risk of cardiovascular disease and diabetes. (*Id.* ¶ 24).

Further, real ginger is more expensive to use than Defendant's chemical flavoring agent. (*Id.* ¶ 44.) By labeling their Product as containing real ginger without actually using the expensive ingredient, Defendant obtains not only the price premium consumers pay for products made with real ginger, but retains more in profits. (*Id.* ¶ 48.)

Defendant's advertising and marketing materials confirm that Defendant intended to deceive consumers into believing that the Product contains real ginger root. (*Id.* ¶ 40.) Defendant's website and other marketing materials all emphasizes that the Product is "MADE WITH REAL GINGER." (*Id.* ¶¶ 41–42.)

Plaintiff Fitzhenry-Russell has purchased several cases of the Product from Safeway located in Santa Cruz, CA, and a Lucky, located in Capitola, CA during the past few years. (*Id.* ¶ 54.) Fitzhenry-Russell made each of her purchases of the Product after reading and relying on the truthfulness of Defendant's product labels that promised that the Product was "MADE WITH REAL GINGER." (*Id.* ¶ 55.) Fitzhenry-Russell believed the statement "MADE WITH REAL GINGER" meant that each of the Products that she purchased was made with, and contained, real ginger. (*Id.* ¶ 56.) She did not know that the Products she purchased were not made with real ginger but were instead made with a chemical flavoring compound designed to mimic the flavor of ginger. (*Id.* ¶ 57.) Had Defendant not misrepresented the true nature of the Product, Fitzhenry-Russell would not have purchased, or at least would have paid less for, the Product. (*Id.* ¶ 9.)

Plaintiff sued to stop Defendant's deceptive practices. She alleges four causes of action for violations of the Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and for common law fraud, deceit and/or misrepresentation.

4

## III.    ARGUMENT

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). "In determining whether sufficient facts are stated such that the claim is plausible, the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (*citing Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987)). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir.1973).

### A.    Plaintiff Adequately Pleads an Actionable Misrepresentation

#### 1.    Plaintiff Plausibly Pleads that a Reasonable Consumer Would Likely Be Deceived By Defendant's "MADE WITH REAL GINGER" Misrepresentation

To state a claim under California's UCL, FAL, and CLRA, a plaintiff need only plead that the defendant's actions, statements, and omissions were likely to deceive a reasonable consumer. *See, e.g.*, *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that plaintiff need only "show that members of the public are likely to be deceived"); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2006); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA). "This standard also applies to common law fraud and negligent misrepresentation claims." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (*citing Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss," although "in rare situations a court may

5

determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Id.* This is not one of those "rare circumstances."

Despite Defendant's assertion that the Complaint should be dismissed "because it fails to allege any false or misleading statement" (ECF No. 25 at 4), Plaintiff's allegations regarding Defendant's false and misleading labels are simple and straightforward allegations of fact that this Court must accept as true. They are as follows: (1) Reasonable consumers interpret the statement "MADE WITH REAL GINGER" to mean that the product is flavored with and actually contains real ginger root (Compl. ¶¶ 2, 21, 33, 37, 38, 43); (2) Defendant's Product is not flavored with and does not contain any real ginger, but is instead flavored using a chemical compound developed in a laboratory that mimics the flavor of real ginger (*Id.* ¶¶ 3, 22, 26, 33, 38, 44); (3) therefore, Defendant's representation that its Product is "MADE WITH REAL GINGER" is false and deceptive because it misleads reasonable consumers into believing the Product is flavored with and contains real ginger when it does not. (*Id.* ¶¶ 4, 21, 33, 61, 75, 81.) Courts have routinely found similar allegations sufficient to plead an actionable misrepresentation. *See, e.g.*, *Williams*, 552 F.3d at 939 ("The product is called 'fruit juice snacks' and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product."); *Ham*, 70 F. Supp. 3d at 1194 ("Ham's argument is simple: a reasonable consumer would not expect to find SAPP in the 'All Natural' Waffles because SAPP is not a natural ingredient. This argument is plausible."); *Mohamed v. Kellogg Co.*, No. 14-CV-2449 L (MDD), 2015 WL 12469107, at *3 (S.D. Cal. Aug. 19, 2015) ("The allegations here do not present the rare situation in which granting a motion to dismiss or motion for judgment on the pleadings is appropriate. Here, Kellogg's claims that Gardenburgers are 'Made With Natural Ingredients' could be interpreted by consumers as a claim that all the ingredients in the product were natural, which is allegedly false."); *Wilson v. Frito–Lay, N.A.*, No. 12-1586 SC, 2013 WL 1320468, at *12–13 (N.D. Cal. Apr.1, 2013) (holding that plaintiff stated a claim where defendants represented that their potato chips were "Made with ALL NATURAL Ingredients" when they allegedly contained artificial and unnatural maltodextrin, ascorbic acid, citric acid, and caramel color); *Colucci* v. ZonePerfect Nutrition Co., 2012 WL 6737800, at *7–8 (N.D. Cal.

Dec. 28, 2012) (denying motion to dismiss in case involving the use of "all natural" on packaging of nutrition bars that contain allegedly artificial and synthetic ingredients).

Defendant argues that Plaintiff's "complaint acknowledges that the flavoring for Seagram's Ginger Ale is formulated with real ginger" because Plaintiff "allows" at paragraph 26 of the complaint that "it may be that ginger root is used in the creation of the natural flavor" used in the Seagram's Product, and that this acknowledgement "is the end of her case." (ECF No. 25 at and 5, *citing* Compl. ¶ 26.) But Defendant's argument misses the mark. Plaintiff merely acknowledged that *even if* ginger root "may be…used in" the creation of the Seagram's chemical flavoring compound—for example, to copy its molecular structure—that does not end the inquiry. It is still literally false to claim that the Product is "MADE WITH REAL GINGER" if the truth is that it is "MADE WITH A CHEMICAL COMPOUND THAT WAS DERIVED FROM REAL GINGER." But even if Defendant's label statement were literally true, it is still actionable because, as Plaintiff alleges, it is likely to deceive reasonable consumers. *Williams*, 552 F.3d at 938 (citations omitted) (California's consumer protection laws prohibit "'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public'"). Even "a perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1289–90 (2002); *see, also, Morgan v. AT&T Wireless Svcs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009) (same). Because Plaintiff has alleged that reasonable consumers understand the statement "MADE WITH REAL GINGER" to mean that the Product is flavored with and contains real ginger, not that it is flavored with and contains a chemical compound somehow derived from real ginger, Plaintiff's allegations at paragraphs 25–26 of the Complaint are not, as Defendant asserts, "the end of her case."

Defendant next mischaracterizes Plaintiff's allegations of how reasonable consumers interpret the label claim, asserting that Plaintiff alleges consumers interpret the phrase "MADE WITH REAL GINGER" to mean that the Product "confers [an] array of health benefits" and that "ginger is present in a certain quantity or form," which Defendant then denigrates as "farfetched"

and "implausible" interpretations of the label. (ECF No. 25 at 5–8.) But Defendant is wrong and must resort to twisting the allegations of the Complaint to formulate such strained interpretations. This Court should not accept Defendant's attempts to manipulate Plaintiff's allegations about how reasonable consumers interpret the challenged label. *See Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015) ("What a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss."). Plaintiff alleges that reasonable consumers interpret Defendant's label to mean that the Product is flavored with and contains real ginger, not a lab-manufactured flavoring compound, and this interpretation is plausible. *See id.* ("Plaintiff alleges, among other things, that the IntenseX labeling represents to consumers that the product has aphrodisiac effects, when it has none. Defendant did not explain why no reasonable consumer could be deceived by such representations.").

Although Plaintiff includes allegations regarding the health benefits associated with real ginger, Defendant misapprehends the purpose of those allegations. Those allegations do not mean, as Defendant asserts, that consumers must interpret the label to mean that the product is "healthy" or "cures cancer" for the label to be misleading. Rather, Plaintiff's allegations about the health benefits of real ginger explain why Defendant's representation that its Product was made with real ginger would be *material* to reasonable consumers, and why consumers would be willing to pay a price premium to purchase a beverage they believed contained real ginger. Plaintiff does not allege, as Defendant suggests, that it misled reasonable consumers into thinking that the Product was "healthy" or had "cancer-curing properties." (ECF No. 25 at 8, 9). Thus, the cases Defendant cites rejecting theories of misrepresentation that depend on consumers interpreting a label to mean that a product is healthy are irrelevant. (ECF No. 25 at 7–8) (citing *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. Apr. 5, 2012); *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGR), 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012); *Sugawara v. Pepsico, Inc.*, No. 08-01335-MCE-JFM, 2009 U.S. Dist. LEXIS 43127, at *8–9 (E.D. Cal. May 21, 2009); *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010); *Rahman v. Mott's, LLP*, No. 13-3482 SI, 2014 U.S. Dist. LEXIS 11767, at *27-28 (N.D. Cal. Jan. 29, 2014)).

8

1   Defendant also asserts that Plaintiff alleges the label "communicates to consumers that

2   ginger is present in a certain quantity or form," but this is similarly based on twisting the

3   allegations of the Complaint (ECF No. 25 at 6). Plaintiff does not allege that consumers

4   understand "MADE WITH REAL GINGER" to mean the Product contains a "significant amount

5   of ginger" or any "specific" amount of ginger (*Id.* at 8), only that the label means what it says,

6   i.e., that the Product is flavored with, and contains, real ginger rather than a chemical flavoring

7   compound that was somehow derived or copied from real ginger. Defendant's reliance on

8   *Henderson v. Gruma Corp.* is therefore misplaced. *Henderson v. Gruma Corp.*, No. CV 10-04173

9   AHM AJWX, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011). In *Henderson*, the court

10  dismissed a claim that the phrase "With Garden Vegetables" was false because the product

11  actually contained vegetables that could be grown in a garden. *Id.* *8. Here, by contrast, Plaintiff

12  has alleged that Defendant's Product does not contain "real ginger." This is an actionable

13  representation. *See, supra*, cases cited at pp. 6–7.

14  Defendant also makes several arguments about its new label, which includes ginger in the

15  ingredient list whereas its previous label left ginger out of the ingredient list in favor of the term

16  "natural flavors," but these arguments are, at best, red herrings. (ECF No. 25 at 6.)[2] If the changes

17  did take place, they may ultimately prove liability to at least a subset of the proposed class. In any

18  event, Defendant does not, and cannot at this stage, dispute Plaintiff's allegation that the Product

19  is not flavored using real ginger, which means that Plaintiff has adequately alleged a

20  misrepresentation. In fact, Defendant's argument that it was appropriate to leave ginger off of its

21  ingredient list only *reinforces* Plaintiff's theory of misrepresentation. If Defendant's product were

22  actually flavored using real ginger, FDA regulations would require ginger to be listed as an

23  ingredient, and it would not have been appropriate simply to use the term "natural flavor," which

24  is all that was listed on the package Plaintiff purchased. *See* 21 C.F.R. § 101.22(a)(2) (defining

25  

26  [2] *See* Plaintiff's Opposition to Defendant's Request for Judicial Notice explaining why the court
    should not take judicial notice of Defendant's purported new label. Whether the label has

27  changed, and if so, what changed and when will be an issue for discovery. The ingredient list on
    the package plaintiff purchased did not list ginger in the ingredient list, only "natural flavors."

28  Plaintiff did not attach an image of the ingredient list to her complaint, but if necessary, could
    amend the complaint to do so.

ginger as a "spice"), and § 101.22(h)(1) (requiring a spice such as ginger to be listed in the ingredient list if it is used to flavor a food product rather than a natural flavor). Indeed, Defendant's argument that it was appropriate under the FDA regulations to leave ginger off of the ingredient list for its Product is arguably an admission that real ginger has no "technical or functional effect in that food," meaning that real ginger could *not* have been the flavoring agent. *See* 21 C.F.R. § 101.22(h)(2) (allowing that "an incidental additive in a food, originating in a spice [such as ginger] or flavor used in the manufacture of the food, need not be declared in the statement of ingredients if it meets the requirements of 101.100(a)(3)") and § 101.100(a)(3)(i) (defining an "incidental additive" as "substances that have no technical or functional effect but are present in a food by reason of having been incorporated into the food as an ingredient of another food . . .", i.e. Defendant's chemical flavoring compound).

Finally, Defendant's purported recent decision to change its label to include ginger in the ingredient list does not prove that the product is, or during the class period, was actually "MADE WITH REAL GINGER." As noted above, the regulations do not prohibit a company from listing as an ingredient an "incidental additive" that has no "technical or functional effect in that food" and is merely "incorporated into the food as an ingredient of another food." *See* 21 C.F.R. §§ 101.100(a)(3)(i), 101.22(h)(2). Defendant's purported new ingredient list still includes "natural flavors" well above ginger, which appears last on the list. *See* 21 C.F.R. § 101.4(a)(1) (requiring ingredients in the ingredient list to be listed in "descending order of predominance by weight"). Thus, it may be that some extract of ginger (i.e., a protein structure or essential oil) may be used in the creation of Defendant's chemical flavoring compound, and that no real ginger actually is contained in or has any effect on the product, which reinforces why Defendant's "MADE WITH REAL GINGER" claim is deceptive and misleading.[3]

---

[3] As explained in more detail in Plaintiff's Opposition to Defendant's Request for Judicial Notice, the Court should not take judicial notice of the purported label Defendant attached to that request because it originates directly from Defendant, a party to this lawsuit, and therefore is not from a source whose accuracy cannot reasonably be questioned and it lacks proper authentication. *See* Fed. R. Evid. 201. At minimum, even if the Court were to take judicial notice of the existence of the label, the Court cannot use the label or its inclusion of ginger in the ingredient list to take judicial notice that the Product is actually flavored with and contains real ginger. Defendant never attempts to argue that its product is not flavored with a chemical flavoring compound, as opposed

10

2.     **Plaintiff Properly Pleads that Defendant's Label Violates FDA Regulations and States a Claim Under the "Unlawful" Prong of the UCL**

Defendant argues that Plaintiff cites "irrelevant regulations" and does not allege any "facts to support the conclusion that the labeling for Seagram's Ginger Ale has ever violated any of them." (ECF No. 25 at 10.) But Defendant is wrong on both counts. Plaintiff has alleged that the "MADE WITH REAL GINGER" representation violates numerous, relevant provisions of California Health and Safety Law, including California Health & Safety Code §§ 110390 *et seq.*, 110660 *et seq.* (the "Sherman Law"), as well as FDA regulations, including 21 C.F.R. §§ 101.3, 101.13, 101.14, 101.33, and 101.65. (Compl. ¶¶ 33–36). The FDA's regulation at 21 C.F.R. § 101.22, which Plaintiff cited in paragraph 36 of her Complaint, is particularly germane. That regulation provides:

> If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:
>
> …
>
> If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in 'strawberry shortcake,' and the food contains *natural flavor derived from such ingredient* and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word 'natural' and shall be immediately followed by the word 'flavored' in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake.'"

21 C.F.R. § 101.22(i)(1)(i) (emphasis added). Under this regulation, Defendant could have

---

to real ginger, as Plaintiff has alleged. Plaintiff suspects that Defendant's decision to add ginger to the ingredient list simply reflects, as Plaintiff explains in paragraphs 25–26 of her Complaint, that some extract of ginger is used in the derivation of Defendant's chemical flavoring compound. Thus, as noted above, Defendant's inclusion of ginger in the ingredient list remains perfectly consistent with Plaintiff's theory of misrepresentation. And, even if Defendant's label change reflects a change in the formula for the Product to use real ginger as the flavoring agent—the change in formula would only support rather than detract from Plaintiff's claim that Defendant deceptively advertised the Product prior to the formula change.

11

described the Product as "MADE WITH NATURAL GINGER FLAVOR" but not as "MADE WITH REAL GINGER." Its conduct, Plaintiff alleges, violates the FDA regulations, California's Sherman Law, and, as a result, constitutes a violation of the "unlawful" prong of the UCL. *See Sandoval*, 145 F. Supp. 3d at 994, 998 (refusing to dismiss UCL mislabeling claims "because Plaintiff alleges a violation of FDA regulations, a parallel violation of the Sherman Law, and a resulting violation of the unlawful prong of the UCL").

Defendant's label also violates the provisions of 21 C.F.R § 102.5(b) and (c), which provide as follows:

> (b) The common or usual name of a food *shall include the percentage(s) of any characterizing ingredient(s) or component(s)* when the proportion of such ingredient(s) or component(s) in the food *has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case*. The following requirements shall apply unless modified by a specific regulation in subpart B of this part.
>
> .....
>
> (c) The common or usual name of a food *shall include a statement of the presence or absence of any characterizing ingredient(s) or component(s)* and/or the need for the user to add any characterizing ingredient(s) or component(s) when the presence or absence of such ingredient(s) or component(s) in the food *has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present when it is not, and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food*. The following requirements shall apply unless modified by a specific regulation in subpart B of this part.

The regulations then each specify how the required disclosure, either of the percentage of the characterizing ingredient in the product, or the absence of it from the product, must be made.

Because Defendant uses the "common or usual name" of the food in its label, i.e. "ginger ale," and because, as Plaintiff alleges, the phrase "MADE WITH REAL GINGER" creates an erroneous impression that real ginger "is present when it is not," and has a material impact on price and consumer acceptance, Defendant was required to disclose on the label the absence of "real ginger" from the Product. At minimum, even if Defendant can establish that some miniscule trace of an extract of ginger is present in the product because such extract was used in formulating

12

Defendant's chemical flavoring compound, the phrase "MADE WITH REAL GINGER" still gives the "erroneous impression" that real ginger is "present in an amount greater than is actually the case," because it leads reasonable consumers to believe that the Product was actually made and flavored with real ginger. As a result, Defendant was required to disclose whatever miniscule percentage of ginger is actually present in the product. Defendant's failure to do so violates these regulations and section 110100 of California's Sherman Law and constitutes a violation of the unlawful prong of the UCL.[4]

### B.   Plaintiff's Claims Are Not Based on Defendant's Website or Advertising

Defendant argues that Plaintiff cannot state any claims based on Defendant's website and advertising campaigns. (ECF No. 25 at 11-12). However, Defendant misunderstands the purpose of those allegations in the Complaint. Plaintiff's claims are based on the misleading statement on all of Defendant's Product's *labels* that the Product is "MADE WITH REAL GINGER." Plaintiff's allegations relating to Defendant's website and advertising only highlight Defendant's intent to deceive consumers—i.e., that Defendant intends for consumers to believe that the Product contains or is made with real ginger. Plaintiff does not "state any claims" based on Defendant's website and advertising, and there are, therefore, no claims to dismiss.

### C.   Defendant's Request to Dismiss Plaintiff's Class Claims is Premature and Improper

Finally, in a premature challenge to class certification, Defendant moves to dismiss Plaintiff's class claims because the class definition "encompasses sales outside of California to non-California consumers," and Defendant asserts that California's consumer protection statutes cannot be applied extraterritorially. (ECF No. 25 at 12.) However, Defendant ignores that Plaintiff also asserts a common law fraud claim in addition to the statutory claims. Numerous courts have held that common law claims such as fraud can be brought on a nationwide basis. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014) ("[E]lements of the common law of fraud are sufficiently similar across jurisdictions"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (certifying a

---

[4] Plaintiff did not specifically call out these provisions of the FDA regulations, but could amend her complaint to do so.

nationwide class of consumers subject to different state laws under breach of contract theories against an Indiana-based defendant, noting commonality and predominance between the legal issues to be decided notwithstanding the number of state laws involved); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, *21 (N.D. Cal. June 13, 2014) (certifying nationwide breach of contract class notwithstanding differences in state law, finding the plan for addressing the minor differences that plaintiff proposed at class certification to be manageable). Defendant offers no argument why the common law claims could not be brought on a nationwide basis and therefore have not presented any valid basis to dismiss Plaintiff's class claims.

Moreover, although Defendant argues that the Court should dismiss Plaintiff's class claims because, as a matter of law, it is not appropriate to apply California law extraterritorially, Defendant greatly oversimplifies the issue. "California applies a three-step 'governmental interest analysis' to determine whether California law should apply extraterritorially: (1) whether the laws of the affected jurisdictions differ; (2) if so, whether there is a 'true conflict' given each jurisdiction's interest in the application of its own law under the facts; and (3) if so, which jurisdiction's interests would be most impaired if its laws were not applied." *Figy v. Lifeway Foods, Inc.*, No. 13-CV-04828-TEH, 2016 WL 4364225, at *6 (N.D. Cal. Aug. 16, 2016) (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012)); *see also, e.g., Bruton v. Gerber Products Co.*,  2014 WL 172111 *13 (N.D. Cal. Jan. 15, 2014) (refusing to dismiss nationwide class claims because "[a]lthough Gerber may ultimately prove correct in its argument that California law cannot be applied to out-of-state purchases made by out-of-state consumers, whether or not this is so depends, in substantial part, on a case-specific choice-of-law analysis that the parties and the Court have yet to undertake"). Defendant does not even mention, let alone try to conduct a choice-of-law analysis to determine whether applying California law to a nationwide class of purchasers would be appropriate, despite the fact that Defendant, as the party arguing that California law cannot apply, bears the burden of proof on this issue. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) ("Because Zinser seeks to invoke the law of a jurisdiction other than California, she bears the burden of proof.") (citing *Wash. Mut. Bank v. Superior Court*, 24

Cal. 4th 906, 919–20 (2001)).

The majority approach in this Circuit is to defer the question until class certification. *See, e.g. Figy*, 2016 WL 4364225, at *6 ("Courts within the Ninth Circuit routinely decline to even address this question at such an early stage in the litigation."); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) (declining to dismiss claim for nationwide class under California law; explaining that "[s]uch a detailed choice-of-law analysis is not appropriate at this stage of the litigation."); *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) (dismissing nationwide class claims at the pleading stage "premature"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (dismissing nationwide class claims at the pleading stage "inappropriate"); *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887-HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) ("Whether California law differs from the laws of other states in a way that is material to this litigation is not a proper inquiry at the pleading stage. Such a deeply factual inquiry is more appropriately addressed at the class certification stage, which was, incidentally, the posture of the *Mazza* action when it was appealed to the Ninth Circuit.") *Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1666427, at *3 (S.D. Cal. Apr. 17, 2014) ("[D]etermination of the choice of law issue is premature at this stage of litigation, given the state of the record."); *see also Won Kyung Hwang v. Ohso Clean, Inc.*, C-12-06355 JCS, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) ("[A choice of law] inquiry is most appropriate at the class certification stage of the case, after the parties have engaged in discovery."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("*Mazza* (and nearly every other case cited by Defendants) undertook a class-wide choice-of-law analysis at the class certification stage, rather than the pleading stage at which we find ourselves. Until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case.").[5]

---

[5] Even if the claims are limited to a California class, it is not clear that the class would need to be limited to "citizens" of California. More likely the class also would include residents of California and/or all persons (regardless of residency or citizenship) whose purchases were made in California. *See, e.g., Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *10 (N.D. Cal. July 15, 2016) (approving settlement of class action that applied California law

15

1    Finally, even if the Court were to determine that, under California's choice-of-law rules,

2  California law cannot apply extraterritorially, dismissal would not be the appropriate response.

3  "Although *Mazza* held that the plaintiffs in that case could not bring California consumer

4  protection claims on behalf of a nationwide class, the Ninth Circuit did not dismiss the class

5  claims. Rather, it remanded to the district court to determine whether to certify a California-only

6  class or 'a class with members more broadly but with subclasses for class members in different

7  states, with different jury instruction for materially different bodies of state law.'" *Gitson v.*

8  *Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1116 (N.D. Cal. 2014) (*quoting Mazza*, 666 F.3d at 595).

9  "Under Ninth Circuit law, then, at least in certain circumstances, a consumer protection class

10  action can proceed under the laws of multiple states, and it appears from the remand instructions

11  in *Mazza* that the failure to identify the appropriate subclasses at the outset of the case is not

12  fatal." *Id.*

13    Defendant cites three cases—two decided by Judge Conti, and one by Judge Gilliam—that

14  dismissed nationwide class claims under California's consumer protection statutes due to the

15  presumption against the extraterritoriality of those statutes. Unfortunately, these cases simply got

16  the analysis wrong. They held that California law would not apply nationwide without ever

17  engaging in the proper choice-of-law analysis necessary to make the determination. As noted

18  above, the majority approach is to wait until there is an adequately developed factual record to

19  make the determination of whether California law can apply to a nationwide class.

20    **D.    If The Court Is Inclined to Grant Defendant's Motion to Dismiss in Any**
     **Respect, Plaintiff Respectfully Requests Leave to Amend**

21

22    If a complaint is dismissed, "leave to amend should be granted unless the court determines

23  that the allegation of other facts consistent with the challenged pleading could not possibly cure

24  the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

25  1986). Indeed, leave to amend is only properly denied "where the amendment would be futile."

26  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any of

27  the allegations insufficient to state a claim, Plaintiff requests leave to amend.  Such amendment

28  to a class of "All purchasers in California of liquid Filippo Berio brand olive oil of any grade
     except "Organic" between May 23, 2010, and June 30, 2015").

16

could include further allegations regarding the regulations cited herein, including 21 C.F.R

§§ 101.4, 101.22, 101.100, and 102.5.

## IV.   CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss in its

entirety.

Dated: March 7, 2017                    **GUTRIDE SAFIER LLP**


_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Marie McCrary, Esq.
Kristen G. Simplicio, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94114

Attorneys for Plaintiff

OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS