PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (*pro hac vice*)
Michelle W. Cohen (*pro hac vice*)
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  (212) 336-2000
Facsimile:     (212) 336-2222

SHOOK HARDY & BACON LLP
Tammy B. Webb
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone: 415-544-1904
Facsimile: 415-391-0281
tbwebb@shb.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED<br><br>Plaintiff,<br><br>vs.<br><br>THE COCA-COLA COMPANY<br><br>Defendant. | Case No. 5:17-cv-00603-EJD<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Case Removed:  February 6, 2017<br>Hearing Date:  May 25, 2017<br>Time:  9:00 a.m.<br>Courtroom:  4<br>Judge:  Honorable Edward J. Davila |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................................1

ARGUMENT .........................................................................................................................................2

I. PLAINTIFF HAS NOT ALLEGED A FALSE OR MISLEADING STATEMENT................2

    A. Plaintiff Cannot Plausibly Allege That "Made With Real Ginger" Is False..................2

    B. Plaintiff Cannot Plausibly Allege That "Made With Real Ginger" Is Misleading..................................................................................................................4

II. PLAINTIFF DOES NOT ADEQUATELY ALLEGE A CONSUMER-PROTECTION CLAIM BASED ON SUPPOSED REGULATORY VIOLATIONS .............6

III. PLAINTIFF'S NATIONWIDE CLASS CLAIMS SHOULD BE DISMISSED ....................11

IV. PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND ...........................................13

CONCLUSION ....................................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ................................................................................................................ 11

*Bush v. Mondelez Int'l, Inc.*,
  2016 U.S. Dist. LEXIS 140013 (N.D. Cal. Oct. 7, 2016) .......................................................... 7

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ................................................................................................... 13

*Coluci v. ZonePerfect Nutrition Co.*,
  2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) ....................................................... 6

*Dvora v. General Mills, Inc.*,
  No. CV 11-1074-GW(PLAx), 2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) ......................................................................................................................................... 8

*Elan Microelectronics Corp. v. Apple, Inc.*,
  2009 U.S. Dist. LEXIS 83715 (N.D. Cal. Sept. 14, 2009) ........................................................ 3

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
  590 F. Supp. 2d 1282 (C.D. Cal. 2008) .................................................................................... 7

*Figy v. Frito-Lay N. Am.*,
  67 F. Supp. 3d 1075, 1087 (N.D. Cal. 2014) .......................................................................... 12

*General Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................................ 12

*Gershman v. Bayer HealthCare LLC*,
  No. 14-05332-HSG, 2015 U.S. Dist. LEXIS 60835 (N.D. Cal. May 8, 2015) ........................ 12

*Hadley v. Kellogg Sales Co.*,
  2017 U.S. Dist. LEXIS 40825 (N.D. Cal. Mar. 21, 2017) ............................................... 3, 7, 11

*Ham v. Hain Celestial Gr., Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) ...................................................................................... 6

*Henderson v. Gruma Corp.*,
  2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ......................................................... 5

*Manchouck v. Mondelez Int'l, Inc.*,
  603 F. App'x 632, 633 (9th Cir. May 18, 2015). ...................................................................... 5

*Manchouck v. Mondelez Int'l, Inc.*,
   2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept. 26, 2013). ..........................................................5

*Mazza v. Am. Honda Motor Co.*,
   66 F.3d 581 (9th Cir. 2012) ...............................................................................................11, 12

*Mohamed v. Kellogg Co.*,
   2015 U.S. Dist. LEXIS 181088 (S.D. Cal. Aug. 19, 2015) ......................................................6

*Moua v. IBM*,
   2012 U.S. Dist. LEXIS 156311 (N.D. Cal. Oct. 30, 2012) ........................................................3

*PhotoMedex, Inc. v. Irwin*,
   601 F.3d 919 (9th Cir. 2010) ....................................................................................................7

*Red v. Kraft Foods, Inc.*,
   2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ........................................................5

*Salazar v. Honest Tea, Inc.*,
   2015 U.S. Dist. LEXIS 153397 (E.D. Cal. Nov. 11, 2015) ......................................................7

*Stack v. Lobo*,
   903 F. Supp. 1361 (N.D. Cal. 1995) ........................................................................................3

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) .........................................................................................................11

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .............................................................................................................2

*Trazo v. Nestle USA, Inc.*,
   2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ..................................................7, 10

*Van Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010) ....................................................................................8

*Victor v. R.C. Bigelow, Inc.*,
   2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014) ........................................................7

*Williams v. Gerber Prods.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................................................2, 6

*Wilson v. Frito-Lay N. Am.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................................................13

**Statutes/Administrative Regulations**

21 C.F.R. § 101.22(i)(1) ..................................................................................................6, 9, 11

21 C.F.R. § 101.22(a)(1) ........................................................................................................11

21 C.F.R. § 101.22(a)(2) ................................................................................................................6, 8

21 C.F.R. § 101.22(a)(3) ...................................................................................................................8

21 C.F.R. § 101.22(h)(1) ...............................................................................................................8, 9

21 C.F.R. § 102.5(a) .......................................................................................................................10

21 C.F.R. § 102.5(b)-(c) .....................................................................................................7, 10, 11

21 U.S.C. § 337(a) ............................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 8(a) ...........................................................................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................................................................3

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................12

Fed. R. Civ. P. 15(a) .......................................................................................................................13

Fed. R. Evid. 201(b)(2) ....................................................................................................................8

**PRELIMINARY STATEMENT**

In opposing Coca-Cola's motion to dismiss, Plaintiff concedes that the statement "Made With Real Ginger," on Seagram's Ginger Ale, does not suggest to consumers that the product delivers health benefits.  She also concedes that the statement does not convey the presence of ginger in any specific quantity.  As to literal truth, Plaintiff acknowledges that she "does not currently know" whether the flavoring ingredients in Seagram's Ginger Ale actually contain real ginger.  Finally, she concedes that her complaint stems entirely from the statement on Seagram's Ginger Ale packaging, as opposed to its appearance in marketing and advertising materials.

After these concessions, there is not much left of Plaintiff's complaint.  Nevertheless, she argues that what remains is sufficient to state a claim under California's consumer-protection statutes.  Plaintiff argues that "Made With Real Ginger" misleads consumers to believe that the product contains "real ginger" when, she speculates, it actually contains only a "lab-manufactured chemical compound . . . derived from ginger."  Plaintiff further posits that the labeling of Seagram's Ginger Ale violates several FDA regulations, giving rise to a claim under the "unlawful" prong of the UCL.

These arguments are meritless.  Plaintiff admits that she has no knowledge of how the flavoring ingredients for Seagram's Ginger Ale are produced, and cannot withstand dismissal by speculating that they are "lab-manufactured" without real ginger.  Seagram's Ginger Ale does, in fact, contain real ginger—not some "lab-manufactured chemical compound" designed to mimic the flavor of ginger.  A complaint does not state a cause of action simply because it sets forth an unsupported fantasy that the defendant has outright lied about the contents of its product.

Plaintiff also cannot salvage her complaint by invoking technical FDA regulations and asserting, in conclusory fashion, that Coca-Cola has violated them.  The complaint contains no facts that establish that any of the claimed violations occurred.  And even if it did, a UCL claim cannot proceed, under the "unlawful" prong or otherwise, absent an allegation that the violation in question resulted in some injury.  Plaintiff does not and cannot allege that the purported regulatory violations to which she refers misled or injured consumers.

Finally, Plaintiff argues that she should be permitted to proceed with her claims on behalf of

a putative nationwide class until such time as the court conducts a choice-of-law analysis in connection with a motion for class certification.  But Plaintiff bears the initial burden of demonstrating a sufficient connection between the class members and the state of California.  The allegations of the complaint establish that she cannot meet this burden.  Her claims on behalf of a nationwide class should be dismissed now.

## ARGUMENT

### I. PLAINTIFF HAS NOT ALLEGED A FALSE OR MISLEADING STATEMENT

As set forth in our initial brief, each of Plaintiff's claims requires a plausible allegation that Coca-Cola made a false or misleading statement.  (*See* Def. Op. Br. at 7-9)  To state a claim for fraud, Plaintiff must point to a statement that was "actually false, [and] known to be false by the perpetrator."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  And to assert a claim under California's consumer-protection statutes, Plaintiff must identify a statement that is either false or "actually misleading or . . . has a capacity, likelihood or tendency to deceive or confuse the public."  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted).  Plaintiff has done neither, and makes clear in her opposition brief that her objections to the claim "Made With Real Ginger" are based on sheer speculation.

#### A. Plaintiff Cannot Plausibly Allege That "Made With Real Ginger" Is False

The statement that Seagram's Ginger Ale is "Made With Real Ginger" is true:  the product's flavoring ingredients include ginger root, the edible portion of the ginger plant.  Plaintiff's complaint does not allege otherwise, and in fact acknowledges that real ginger root "may" be used in the ginger flavoring.  (Compl. ¶ 26)

In her opposition, however, Plaintiff claims that "Defendant's Product is not flavored with and does not contain any real ginger, but is instead flavored using a chemical compound developed in a laboratory that mimics the flavor of real ginger."  (Pl. Opp. Br. at 6).  In other words, Plaintiff suggests that Seagram's Ginger Ale contains *no trace* of ginger—either because no ginger is used in the flavoring at all, or because the flavor formulation process alters the ginger so fundamentally as to transform it into an entirely different "chemical compound."

These assertions contradict the allegations in Plaintiff's complaint, which acknowledged the

1  possibility that Seagram's Ginger Ale flavoring contained "extracted oils or essences from the ginger
2  root." (Compl. ¶ 26)  Moreover, Plaintiff concedes that her contentions regarding the absence of
3  ginger are nothing more than conjecture: she "[d]oes not currently know exactly what steps
4  Defendant[] . . . follows to synthesize the chemical flavoring compounds used in the Product."  (Pl.
5  Opp. Br. at 1)  Simply put, Plaintiff has not alleged, and **admits she has no basis to allege**, that the
6  flavoring for Seagram's Ginger Ale is devoid of "real ginger."  Her rank speculation is insufficient
7  to satisfy the pleading standards of Fed. R. Civ. P. 8(a) and 9(b).
8        Courts in this Circuit routinely dismiss consumer-protection claims that, like this one, are
9  based on guesswork.  In *Hadley v. Kellogg Sales Co.*, 2017 U.S. Dist. LEXIS 40825 (N.D. Cal. Mar.
10 21, 2017), the court considered a claim "premised on [the defendant's] 'excessive' use of added
11 sugar," where the plaintiff had failed to "allege the amount of added sugar for each product." *Id.* at
12 *24.  The court rejected the plaintiff's protestations that "the precise amount of added sugar in [the
13 challenged] products [was] currently within [the defendant's] exclusive knowledge," reasoning that
14 "[if] Plaintiff conducted a proper Rule 11 investigation before filing the instant suit," he "must have
15 access to at least some knowledge concerning the amount of sugar in [the defendant's] products," or
16 else his "claims are groundless." *Id.* at *21-22; *see also Moua v. IBM*, 2012 U.S. Dist. LEXIS
17 156311, at *13 (N.D. Cal. Oct. 30, 2012) (Davila, J.), (cautioning "against unlocking the doors of
18 discovery to a plaintiff asserting mere speculation") (internal quotation marks omitted); *Elan
19 Microelectronics Corp. v. Apple, Inc.*, 2009 U.S. Dist. LEXIS 83715, at *10 (N.D. Cal. Sept. 14,
20 2009) ("[R]egardless of what knowledge may lie exclusively in the possession of [the defendant] . . .
21 [s]imply guessing or speculating that there may be a claim is not enough"); *Stack v. Lobo*, 903 F.
22 Supp. 1361, 1369 (N.D. Cal. 1995) ("Pure speculation [that a defendant made a misrepresentation]
23 does not enable Plaintiffs to survive a motion to dismiss and entitle them to conduct discovery on
24 their claims.").
25       Here too, Plaintiff has premised her complaint on "pure speculation" that the flavoring for
26 Seagram's Ginger Ale is a "lab-manufactured chemical" that merely "mimics" the taste of real
27 ginger.  Nowhere does she assert that she performed any empirical tests of the product, or took any
28 other steps to verify her unsupported hunch that Coca-Cola's "Made With Real Ginger" claim is

1  false.  Indeed, Plaintiff admits in her opposition brief that she has no facts to substantiate this

2  baseless charge.  Her fraud and consumer-protection claims must be dismissed on this basis alone.

3    **B.    Plaintiff Cannot Plausibly Allege That "Made With Real Ginger" Is Misleading**

4  Plaintiff has also failed to allege any facts that show that the statement "Made With Real

5  Ginger," though literally true, is likely to mislead a reasonable consumer.  Although both her

6  complaint and her opposition brief attribute a substantial array of health benefits to "real ginger," she

7  disclaims any theory that the statement misleads consumers as to the health benefits of Seagram's

8  Ginger Ale.  (*See* Compl. ¶¶ 23-24, 45-46, 56; Pl. Opp. Br. at 8)  She also disavows any suggestion

9  that consumers will understand the claim to mean that "the Product contains 'a significant amount of

10 ginger' or any 'specific' amount of ginger."  (Pl. Opp. Br. at 9)

11 Instead, Plaintiff asserts that  "reasonable consumers . . . will expect that . . .  Defendant's

12 ginger ale is actually made or flavored with real ginger," when in fact it is flavored with "some lab-

13 manufactured chemical compound. . . derived from ginger."  (Pl. Opp. Br. at 2)  In other words, she

14 maintains that the claim is misleading because the ginger flavoring in Seagram's Ginger Ale takes

15 the form of a "chemical compound"—a phrase that Plaintiff invokes nine times throughout her brief.

16 *See*, *e.g.*, Pl. Opp. Br. at 3 ("Defendant does not disclose on its labels that the Product is flavored

17 with a chemical compound rather than real ginger"); *id.* at 6 ("it is literally false to claim that the

18 Product is 'MADE WITH REAL GINGER' if the truth is that it is 'MADE WITH A CHEMICAL

19 COMPOUND THAT WAS DERIVED FROM REAL GINGER'"); *id.* at 1, 2, 3, 4, 7, 10 n.3.

20 This is nonsensical.  If Plaintiff means to suggest that the flavoring in Seagram's Ginger Ale

21 does not include ginger in any recognizable form, that claim is entirely speculative for the reasons

22 discussed above.  And if she means to suggest that the presence of any "chemical compound" that

23 contributes to the product's ginger flavor renders the claim misleading, that is all the more illogical.

24 In a technical sense, Seagram's Ginger Ale, like all physical matter on Earth, is composed *entirely* of

25 "chemical compounds," the most predominant of which is water.  Some of these compounds are

26 extracted from real ginger root, so the product is "made with real ginger."  The truism that

27 Seagram's Ginger Ale is made up of "chemical compounds" cannot turn this true statement into a

28 false or misleading one.

1       To the extent Plaintiff's claims arise from her charge that the flavoring incorporates "oils or

2  essences" from ginger root—as opposed to the whole root—that too is nonsensical.  (Compl. ¶ 26;

3  Pl. Opp. Br. at 10)  Consumers understand that it is not physically possible to incorporate ginger root

4  into a soft drink without first reducing it to "oils" or "essences."  A reasonable consumer would not

5  interpret the phrase "Made With Real Ginger," affixed to a carbonated soft drink, to mean that the

6  soft drink contains the entire edible portion of the ginger plant.

7       This Court need not credit Plaintiff's implausible suggestions to the contrary.  It is well

8  settled that a consumer-protection claim cannot be premised on the notion that consumers reading

9  product labels will "disregard 'well-known facts of life' and assume things about the products *other*

10 *than* what the statement actually says."  *Red v. Kraft Foods, Inc.*, 2012 U.S. Dist. LEXIS 164461, at

11 *9-10 (C.D. Cal. Oct. 25, 2012) (noting that "a reasonable consumer will be familiar with the fact of

12 life that a cracker is not composed of primarily fresh vegetables.").  In *Manchouck v. Mondelez*

13 *International, Inc.*, 2013 U.S. Dist. LEXIS 138877 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x

14 632, 633 (9th Cir. May 18, 2015), for example, the court rejected a claim that the statement "Made

15 With Real Fruit"—made in connection with Strawberry and Raspberry Newton sandwich cookies—

16 was misleading where the cookies contained only "a small amount of processed fruit puree."  The

17 court there concluded that the plaintiff had "not plausibly alleged why the statement 'made with real

18 fruit' would not include mechanically separated fruit puree," and called it "ridiculous to say that

19 consumers would expect snack food 'made with real fruit' to contain only 'actual strawberries or

20 raspberries,' rather than those fruits in a form amenable to being squeezed inside a Newton

21 [cookie]."  *Id.* at *9-10.  It is just as "ridiculous" to posit that consumers are unaware of the fact that

22 the ginger in Seagram's Ginger Ale must be present in a manner that renders it "amenable" to

23 absorption into a soft drink.  *See also Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, at

24 *33-34 (C.D. Cal. Apr. 11, 2011) (dismissing a claim based on the label statement "With Garden

25 Vegetables" where the product in question, a "Guacamole-Flavored dip," contained "avocado

26 powder, dehydrated onion, garlic powder, and bell pepper"—all of which, the court reasoned,

27 constituted "vegetables that can be grown in a garden.").

28       Although she asserts that dismissal of a consumer-protection complaint for failure to allege a

misleading statement is "rare," Plaintiff cites *no* case in which a court has upheld a complaint based upon a truthful claim that a product is "made with" an identified ingredient.  Most of the cases she cites address statements that a product is "all natural" or "made with natural ingredients," and are accordingly irrelevant.  *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) (addressing "All Natural" claim made on a box of waffles); *Mohamed v. Kellogg Co.*, 2015 U.S. Dist. LEXIS 181088 (S.D. Cal. Aug. 19, 2015) (addressing claim that a product was "Made With Natural Ingredients"); *Campen v. Frito-Lay N.A.*, 2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2013) (addressing "All Natural" claims); *Colucci v. ZonePerfect Nutrition Co.*, 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) (addressing identification of products as "All-Natural Nutrition Bars.")  And her citation to *Williams v. Gerber* gets her nowhere: that case concerned the claim "Made With Real Fruit Juice," juxtaposed with prominent vignettes of four fruits, where it was undisputed that the product "contained *no fruit juice* from any of the fruits pictured on the packaging."  *Williams*, 552 F.3d at 936 (emphasis added).  Here, by contrast, the product actually contains ginger—the only ingredient touted on the product packaging.

Plaintiff has failed to identify any statement that could plausibly mislead a reasonable consumer.  Her complaint must therefore be dismissed.

## II.  PLAINTIFF DOES NOT ADEQUATELY ALLEGE A CONSUMER-PROTECTION CLAIM BASED ON SUPPOSED REGULATORY VIOLATIONS

In its opening brief, Coca-Cola noted that Plaintiff's complaint cited to a laundry list of FDA regulations Coca-Cola purportedly had violated, with virtually no supporting factual allegations. (Def. Op. Br. at 10-11)  In her opposition, Plaintiff narrows her focus to three regulations (only two of which were mentioned in her complaint), and asserts— with minimal supporting facts—that the labeling of Seagram's Ginger Ale runs afoul of them.  Plaintiff posits that, even if the claim "Made With Real Ginger" did not mislead consumers, the Seagram's Ginger Ale label violated FDA regulations by (1) designating ginger as a "natural flavor" rather than declaring it specifically on the ingredient list, *see* 21 C.F.R. §§ 101.22(a)(2), 101.22(h)(1); (2) failing to comply with specialized regulations applicable to the small subset of foods "commonly expected to contain a characterizing food ingredient," *see* 21 C.F.R. § 101.22(i)(1)(i); and (3) failing to disclose the percentage of ginger

1  in the product, *see* 21 C.F.R. § 102.5(b)-(c).  Plaintiff urges the Court to overlook her failure to

2  allege any false or misleading statement, and to permit the case to proceed on an "unlawful" theory,

3  grounded on these purported regulatory violations.  (*See* Pl. Opp. Br. at 12-13)

4        This gambit is unavailing.  It is well established that a technical violation of FDCA

5  regulations—absent any plausible allegation of injury to consumers—cannot support a claim under

6  any provision of California's consumer-protection statutes, including the "unlawful" prong of the

7  UCL.  Rather, a "[p]laintiff[] must connect the dots showing how the alleged misbranding misled

8  plaintiffs in a way that a reasonable consumer would be deceived." *Trazo v. Nestle USA, Inc.,* 2013

9  U.S. Dist. LEXIS 113534, at *34 (N.D. Cal. Aug. 9, 2013); *see also Bush v. Mondelez Int'l, Inc.*,

10  2016 U.S. Dist. LEXIS 140013, at*11-12 (N.D. Cal. Oct. 7, 2016) (dismissing consumer-protection

11  complaint based on violation of FDA slack-fill regulations, on the grounds that "even claims based

12  on unlawful misrepresentations require a showing of reasonable reliance under the UCL"); *Salazar*

13  *v. Honest Tea, Inc.*, 2015 U.S. Dist. LEXIS 153397, at *16 (E.D. Cal. Nov. 11, 2015) ("Courts

14  generally agree that a plaintiff cannot circumvent the reliance requirement by arguing that statements

15  are 'per se' misleading if the statements violate a technical FDA regulation"); *Victor v. R.C.*

16  *Bigelow, Inc.*, 2014 U.S. Dist. LEXIS 34550, at *21 (N.D. Cal. Mar. 14, 2014) (holding that where a

17  consumer-protection plaintiff's claim "sound in fraud, he must plead actual reliance for all his causes

18  of action, including his 'unlawful' claim"); *Hadley*, 2017 U.S. Dist. LEXIS 40825, at *42

19  (dismissing UCL claim based on technical FDCA violations where the plaintiff had failed to "set

20  forth what is false or misleading about the particular claims such that a reasonable consumer would

21  be misled.") (internal quotation marks omitted).[1]  Here, Plaintiff has not alleged that any statement

22  on Seagram's Ginger Ale packaging is misleading to reasonable consumers, and her invocation of

---

[1] As these cases reflect, California courts have concluded, as a matter of statutory interpretation, that the UCL does not permit claims for pure "technical" food-labeling violations absent a showing of reliance and injury.  In addition, all such claims are preempted by the FDCA, which does not permit a private right of action for violation of its provisions or regulations.  21 U.S.C. § 337(a); *see also PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 928 (9th Cir. 2010) (unfair-competition claims are preempted when they would "require a court to usurp the FDA's prerogative to enforce the FDCA and to decide whether, under the FDCA and its regulations," a regulatory violation occurred); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1290-91 (C.D. Cal. 2008) (private plaintiffs are preempted from using "state unfair competition laws as a vehicle to bring a private cause of action that is based on violations of the FDCA.").

technical regulatory provisions cannot cure that fundamental deficiency.

Moreover, any suggestion that consumers were misled by these putative regulatory violations is not only unsupported by factual allegations, but inconsistent with the allegations that do appear in Plaintiff's complaint. Plaintiff claims in her opposition brief that if Seagram's Ginger Ale were "actually flavored using real ginger, FDA regulations would require ginger to be listed as an ingredient," rather than subsumed under the heading "natural flavors," as was the case in a now-discontinued version of the Seagram's Ginger Ale package.[2] *See* Pl. Opp. at 9-10 (citing 21 C.F.R. §§ 101.22(a)(2), 101.22(h)(1)). But even if Plaintiff could show that Coca-Cola's use of the "natural flavors" designation was improper, she has not alleged any facts suggesting that Coca-Cola's omission of "ginger" from the Seagram's ingredient list was misleading to reasonable consumers. Indeed, such an allegation would undermine her central claim: her objection to the labeling of Seagram's Ginger Ale is that it **overstated** the presence of ginger in the product.

In any event, Plaintiff's charge that listing ginger as a "natural flavor" violated FDCA regulations has no merit. Natural flavors, including those derived from "spices," may be declared generically as "natural flavors" per 21 C.F.R. § 101.22(h)(1); *see also* 21 C.F.R. § 101.22(a)(3) (providing that a "natural flavor" may be "derived from a spice"). The separate designation "spices" is appropriate only when the ingredient appears "in the whole, broken, or ground form"—which, as detailed above, could never be the case in a soft drink. 21 C.F.R. § 101.22(a)(2).[3]

---

[2] As shown in Coca-Cola's Request for Judicial Notice and Exhibit A thereto, the current labels for Seagram's Ginger Ale specifically identify "ginger" as an ingredient. (*See* Dkt. No. 26-1) Plaintiff's opposition to Coca-Cola's Request for Judicial Notice is unfounded: courts regularly take judicial notice of product labels that are specifically referenced in the pleadings. The fact that Coca-Cola submitted a two-dimensional proof rather than a full product sample, for the Court's convenience, does not foreclose judicial notice. *See, e.g.*, *Dvora v. General Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 U.S. Dist. LEXIS 55513, at *4 (C.D. Cal. May 16, 2011) (taking judicial notice of a color copy of the cereal box referenced throughout the plaintiff's complaint); *Van Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1073 (E.D. Cal. 2010) (same for juice bottle labels). Should the Court credit Plaintiff's contention that a two-dimensional proof is not amenable to judicial notice, Coca-Cola is prepared to submit a three-dimensional product sample for judicial notice. Similarly, although Coca-Cola disagrees with Plaintiff's assertion that authentication is necessary for a document whose "accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2), Coca-Cola is prepared to submit an authenticating declaration from a representative with personal knowledge if the Court so requests.

[3] Plaintiff's charge that Coca-Cola's decision "to leave ginger off of the ingredient list . . . is arguably an admission that real ginger has 'no technical or functional effect in that food,' meaning that real ginger could not have been the flavoring agent," is an exercise in circular reasoning. (*See*

1    Plaintiff's citation to 21 C.F.R. § 101.22(i)(1)(i) is likewise unpersuasive.  That regulation
2  provides that, for any food that is "***commonly expected*** to contain a characterizing food ingredient,
3  e.g., strawberries in 'strawberry shortcake,'" but does not contain enough of the ingredient to give
4  the food the flavor in question, the name of the "expected" characterizing ingredient must be
5  followed by the word "flavored."  *Id.* (emphasis added).  According to Plaintiff, this regulation
6  requires Coca-Cola to label Seagram's Ginger Ale as "made with natural ginger flavor" rather than
7  "made with real ginger."[4]

8    Plaintiff, however, alleges no facts to support her claim that the Seagram's Ginger Ale label
9  violated this provision.  By its terms, the regulation applies only to those products that contain "an
10 amount of characterizing ingredient [*i.e.*, ginger] ***insufficient to independently characterize the***
11 ***food***."  *Id.* (emphasis added).  Plaintiff cannot does not and cannot allege that is true of Seagram's
12 Ginger Ale: as she has admitted, she has no knowledge about how the ginger flavoring for
13 Seagram's is formulated, how much ginger it contains, or whether that quantity is sufficient to
14 "independently characterize the food."  Accordingly, Plaintiff's claim that the labeling for Seagram's
15 Ginger Ale violated § 101.22(i)(1)(i) is just as speculative as her claim that the product contains no
16 real ginger at all.

17   Moreover, Plaintiff does not explain, either in her complaint or in her opposition brief, how
18 this violation, if it occurred, would have caused reasonable consumers to be misled.  In particular,
19 she has not alleged that reasonable consumers "commonly expect" a product labeled as a "ginger
20 ale" to contain ginger.  Indeed, she ***cannot*** allege that, because the gravamen of her complaint is that
21 "Made With Real Ginger" claim gave Seagram's Ginger Ale an unfair competitive advantage over
22 ***other ginger ales***.  *See* Compl. ¶ 46 (alleging that "Made With Real Ginger" positions Seagram's as

---

Pl. Opp. Br. at 10)  As Coca-Cola explained in its opening brief, it did not "leave ginger off of the ingredient list," but included it under the heading "natural flavors," precisely *because* ginger acted as a flavoring agent.  (*See* Def. Op. Br. at 6 (citing 21 C.F.R. § 101.22(h)(1))  Plaintiff's theory that ginger must have had "no technical or functional effect" in the product assumes the accuracy of her erroneous position that ginger cannot be listed as a "natural flavor."

[4] In this, too, Plaintiff is incorrect: if 21 C.F.R. § 101.22(i)(1)(i) applied to Seagram's Ginger Ale (which it does not), it would actually require Coca-Cola to label the product  "Seagram's Ginger Flavored Ale"— a name that, to Coca-Cola's knowledge, has never been affixed to any product in the marketplace, and would be profoundly confusing to consumers.

1  "superior to, better than, and more nutritious and healthful than other brands of ginger ale" and that
2  Coca-Cola included the statement to compete with "other brands of ginger ales that do not contain
3  the . . . representation"); ¶ 58 (alleging that Plaintiff paid a price premium over "similar soft
4  drink[s]" as a result of the claim).  Plaintiff cannot have it both ways:  if the claim "Made With Real
5  Ginger" induced consumers to choose Seagram's over competing ginger ales, it cannot also be true
6  that consumers "commonly expect" ginger ale to be made with real ginger.  In short, Plaintiff cannot
7  "connect the dots" and show that this supposed regulatory violation "misled plaintiffs in a way that a
8  reasonable consumer would be deceived."  *Trazo,* 2013 U.S. Dist. LEXIS 113534, at *36.

9  Finally, Plaintiff's invocation of 21 C.F.R. § 102.5(b)-(c)—which, as she admits, she did not
10  cite in her complaint—suffers from similar defects.  Those paragraphs establish an exception to the
11  default rule, laid out in § 102.5(a), that every food should be identified by its "common or usual
12  name . . . that states, in clear terms, what it is."  They provide that, in certain discrete circumstances,[5]
13  the common or usual name of the food should be accompanied by "a statement of the presence or
14  absence of any characterizing ingredient(s) or component(s)" and/ or "the percentage(s) of any
15  characterizing ingredient(s) or components."  *Id.*

16  The problem with Plaintiff's reliance on this provision is that Seagram's Ginger Ale already
17  features "a statement of the presence or absence of [its] characterizing ingredient," ginger.  As
18  detailed above, Plaintiff cannot plausibly allege that this statement is false.  Nor has Plaintiff alleged
19  that any reasonable consumer would have expectations regarding the percentage of ginger in the
20  product based upon either its designation as "ginger ale" or the statement "Made With Real Ginger."
21  To the contrary, her opposition brief explicitly disclaims that theory: "Plaintiff does not allege that
22  consumers understand 'MADE WITH REAL GINGER' to mean the Product contains a 'significant
23  amount of ginger' or any 'specific' amount of ginger."  (Pl. Opp. Br. at 9 (quotation marks omitted))

24  If Plaintiff's claims were to proceed, discovery would show that the labeling for Seagram's

---

[5] Those circumstances, which apply to a small minority of foods, exist where (1) "the labeling or the appearance of the food may otherwise create an erroneous impression" as to the presence, absence, or proportion of the ingredient; or (2) the presence, absence, or proportion of the ingredient "has a material bearing on price or consumer acceptance" of the food.  Plaintiff has alleged no facts to establish that either circumstance exists here.

1  Ginger Ale complies with all applicable laws and regulations.[6]  But Coca-Cola should not have to
2  undergo that costly discovery simply because Plaintiff has copied-and-pasted a few regulatory
3  provisions and claimed—with virtually no supporting facts, and no connection to consumer
4  deception—that the labeling for Seagram's Ginger Ale violates them.  Plaintiff does not and cannot
5  "set forth what is false or misleading about the particular claims such that a reasonable consumer
6  would be misled"; accordingly, her invocation of technical labeling FDA regulations cannot save her
7  complaint.  *Hadley*, 2017 U.S. Dist. LEXIS 40825, at *42.

### III. PLAINTIFF'S NATIONWIDE CLASS CLAIMS SHOULD BE DISMISSED

As set forth in Coca-Cola's opening brief, Plaintiff's assertion of claims on behalf of *all* Seagram's Ginger Ale purchasers nationwide, under California consumer-protection laws, is impermissible given California's presumption against extraterritorial application of its laws. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  In her opposition, Plaintiff argues that (1) the applicability of California law to non-California class members cannot be determined until the Court undertakes a choice-of-law analysis; and (2) that analysis should be deferred until the class-certification stage of the case, at which point Coca-Cola will have the burden of showing that California law should not apply.

This puts the cart before the horse.  "Under California's choice of law rules, the **class action proponent bears the initial burden** to show that California has 'significant contact or significant aggregation of contacts' to the claims of **each class member**."  *Mazza v. Am. Honda Motor Co.*, 66 F.3d 581, 589 (9th Cir. 2012) (emphases added).  This showing "is necessary to ensure that application of California law is constitutional."  *Id.* at 589-90 (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981) (holding that "if a State has only an insignificant contact with the parties

---

[6] As noted above, Plaintiff's assertion that ginger should have been classified as a "spice"—and thus called out separately in the ingredient list—is incorrect because ginger is classified as a "spice" only when it appears in food in "whole, broken, or ground form."  21 C.F.R. § 101.22(a)(1).  Her assertion that Seagram's Ginger Ale should have been labeled in accordance with 21 C.F.R. § 101.22(i)(1)(i) is incorrect because a soft drink is not "commonly expected" to contain a characterizing ingredient; accordingly, that provision does not apply, and Coca-Cola instead labels Seagram's Ginger Ale pursuant to 21 C.F.R. § 101.22(i)(1)(iii).  And her claim that Seagram's Ginger Ale should have been labeled in accordance with 21 C.F.R. § 102.5(b)-(c) is incorrect because ginger ale is not among the few food products to which those provisions apply.

and the occurrence or transaction, application of its law is unconstitutional")).  Only after the plaintiff makes this initial showing does the burden shift to the defendant to show that, under choice-of-law principles, another state's law should apply.  *Id.* at 590.

Here, the Court need not reach the choice-of-law analysis, because it is clear from the face of the complaint that Plaintiff cannot meet her "initial burden" of establishing that each class member has the constitutionally-required "significant contact or significant aggregation of contacts" to warrant application of California law.  By its terms, Plaintiff's proposed class definition—which includes "[a]ll persons" who purchased Seagram's Ginger Ale between December 23, 2012 and the present—encompasses individuals who do not live in California, have never purchased Seagram's Ginger Ale in California, and have never even set foot in California.  Accordingly, this Court can and should dismiss her claims on behalf of a nationwide class pursuant to Fed. R. Civ. P. 12(b)(6).  *See General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.").

Although Plaintiff notes that some courts have considered this issue at the class-certification stage, she articulates no reason why that approach is preferable in this case, and there is none.  Coca-Cola should not be subject to costly nationwide discovery, or compelled to brief a complex choice-of-law issue, when it is apparent from the face of Plaintiff's complaint that she cannot meet her burden of establishing "significant contact" between California and the class members who have no connection to California.  That is why some courts have addressed this issue at the pleading stage—not, as Plaintiff suggests, because they "got the analysis wrong."  *See, e.g.*, *Gershman v. Bayer HealthCare LLC*, No. 14-05332-HSG, 2015 U.S. Dist. LEXIS 60835, at *19 (N.D. Cal. May 8, 2015) ("Plaintiffs also argue that choice-of-law analyses should not be considered until the class certification stage . . . [b]ut at this stage the Court is determining the jurisdictional reach of the UCL, not deciding what substantive law should apply to a certified class"); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1087 (N.D. Cal. 2014) (dismissing claims on behalf of non-California class members for whom "none of the alleged misconduct or injuries occurred in California," and distinguishing this analysis from "the choice of law inquiry often required at the class certification

1  stage"); *Wilson v. Frito-Lay N. Am.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing class
2  claims on behalf of non-California purchasers, after concluding that "there is no plausible way for a
3  non-California citizen who purchased Defendant's Products outside California to bring these
4  claims."). This Court should take the same approach here.

## IV. PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND

Finally, having failed to state a claim in her complaint, or to identify any plausible bases for her claim in her opposition brief, Plaintiff asks for yet another chance to state a claim for relief, this time by obtaining leave to amend her pleading. The Court should deny this request.

Courts have discretion to deny leave to amend on the grounds of "futility of amendment." *See* Fed. R. Civ. P. 15(a); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010) (upholding denial of leave to amend on futility grounds). Here, Plaintiff has admitted that she has no facts to back up her core contention that the claim "Made With Real Ginger" is false. She has repeatedly failed to articulate any manner in which the claim is misleading to consumers. And she has not alleged that any putative regulatory violation had the potential to mislead consumers. No amendment can cure these fundamental deficiencies. Her request for leave to amend should be denied.

## CONCLUSION

Plaintiff has filed a bogus action premised upon the mistaken assertion that Seagram's Ginger Ale contains no real ginger, and instead is flavored with a "chemical compound" that merely "mimics" the flavor of ginger. There is no support for this baseless assertion in Plaintiff's complaint, and indeed, it is false. For the reasons set forth above and in its opening brief, The Coca-Cola Company respectfully requests that this Court dismiss the complaint, in its entirety, with prejudice.

Dated: April 3, 2017

Respectfully submitted,

  /s/ Steven A. Zalesin  

Steven A. Zalesin (admitted *pro hac vice*)
Michelle W. Cohen (admitted *pro hac vice*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222
sazalesin@pbwt.com
mcohen@pbwt.com

Tammy B. Webb
SHOOK HARDY & BACON LLP
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone:  415-544-1904
Facsimile:  415-391-0281
tbwebb@shb.com

*Attorneys for Defendant*