UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL,<br><br>    Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY,<br><br>    Defendant. | Case No. 5:17-cv-00603-EJD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 25 |

## I.  INTRODUCTION

In this putative class action, Plaintiff Jackie Fitzhenry-Russell ("Plaintiff") alleges that the label on Seagram's Ginger Ale, "Made With Real Ginger," is false and misleading. Presently before the Court is Defendant The Coca Cola Company's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil L.R. 7-1(b). For the reasons set forth below, Defendant's motion is denied.

## II.  BACKGROUND

Defendant The Coca Cola Company ("Defendant"), a Delaware corporation with its principal place of business in Atlanta, Georgia, manufactures, distributes, markets, advertises and sells soft drinks in the United States under several brand names, including Seagram's. The packaging for Seagram's Ginger Ale (the "Product") includes the statement "Made With Real Ginger." Plaintiff alleges that Defendant prominently made the claim "Made With Real Ginger" on the front label panel of the Product, "cultivating a wholesome and healthful image in an effort to promote the sale of its soft drink and to compete with small batch ginger ales that do use real

Case No.: 5:17-cv-00603-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS
1

ginger root." Complaint at ¶4. Plaintiff also alleges that consumers value the representation "Made From Real Ginger" because studies have found that real ginger has health benefits.

Plaintiff alleges that the statement "Made With Real Ginger" is false and misleading because the Product "is not made from real ginger root." Complaint at ¶3. Rather, the Product is allegedly made from carbonated water, high fructose corn syrup, citric acid, preservatives, and "natural flavor." Complaint at ¶22.[1] The "natural flavor" is allegedly "a chemical flavoring compound that is manufactured to mimic the taste of ginger, but does not contain ginger as a reasonable consumer understands it to mean and contains none of the health benefits of real ginger root." Id. The Food and Drug Administration has defined "natural flavor" to mean "the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional." Id. at ¶25 (quoting 21 C.F.R. §501.22(a)(3)).

Plaintiff acknowledges that Defendant might use ginger root in the creation of the "natural flavor" in the Product. Id. at ¶26. Plaintiff alleges, however, that the "natural flavor" in the Product is not ginger as a reasonable consumer would understand it. Id. Rather, Plaintiff alleges that the scientists that created the "natural flavor" in the Product "would have isolated proteins from the cells and tissue of the ginger root or extracted oils or essences from the ginger root. But because those isolated compounds may not actually taste like ginger, the scientist would have then combined those extractions with any number of other extractions from other plants and animals to create a flavoring substance that tastes like ginger." Id. Plaintiff alleges that "an average

---

[1] Defendant requests that the Court take judicial notice of a more recent version of the product packaging for the Product that lists ginger as an ingredient. The request for judicial notice is denied because Defendant has not provided evidence to authenticate the packaging. Furthermore, Plaintiff contends that this version of product packaging is not the same version of the product packaging that was affixed to the cases of ginger ale she purchased, which did not list ginger as an ingredient.

Case No.: 5:17-cv-00603-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS
2

consumer does not have the specialized knowledge necessary to ascertain that the ginger flavor in the soft drink is not from the presence of real ginger in the soft drink but instead comes from the chemical compound[] added to the drink to make it taste like ginger." Id. at ¶38.

Plaintiff alleges that Defendant intended for consumers to read the statement "Made With Real Ginger" and to believe the Product is made from and contains real ginger. Id. at ¶43. Plaintiff also alleges that Defendant had an incentive to emphasize the presence of ginger in the Product "to appeal to consumers seeking real ingredients instead of a traditional soda." Id. at ¶45. Plaintiff further alleges that Defendant knew and intended that consumers would purchase and pay a premium for the Product because they would perceive the Product as more nutritious and healthful than other brands of ginger ales that are not made with real ginger. Id. at ¶46.

Plaintiff allegedly purchased several cases of the Product over the last two years. Id. at ¶54. Plaintiff allegedly made each of her purchases of the Product after reading and relying on the statement "Made With Real Ginger" and believing the Product was made with and contained real ginger. Id. at ¶55. Plaintiff alleges that she "was attracted to the Product because, when given a choice, she prefers to consume soft drinks made with real ginger for health benefits, namely stomach calming or relaxation." Id. at ¶56. Plaintiff allegedly would not have purchased the Product, or would have paid less for the Product, if she had known the Product was not "Made With Real Ginger." Id. at ¶59.

Based upon the foregoing allegations, Plaintiff seeks to represent a nationwide class comprised of all persons who, between December 23, 2012 and the present, purchased the Product. Plaintiff asserts claims for violations of California's Consumers Legal Remedies Act ("CLRA"), the False Advertising Law ("FAL"), the Unfair Competition Law ("UCL"), and for common law fraud, deceit and/or misrepresentation.

### III. STANDARDS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). When deciding whether to grant a motion to dismiss, the court must generally accept as

Case No.: 5:17-cv-00603-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS
3


true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014) (providing the court must "draw all reasonable inferences in favor of the nonmoving party" for a Rule 12(b)(6) motion). Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Consumer-protection claims that sound in fraud, as Plaintiff's do, are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b). Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud. . . ." Fed.R.Civ.P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).

## IV.  DISCUSSION

A.  Whether Plaintiff Sufficiently Alleged "Made With Real Ginger" Is False or Misleading

Claims under California's UCL, FAL and CLRA are governed by the "reasonable consumer" test. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). Under the reasonable consumer standard, a plaintiff must show that members of the public are likely to be deceived. Id. This standard also applies to common law fraud and negligent misrepresentation claims. Ham v. Hain Celestial Grp., Inc., 70 F.Supp.3d 1188, 1193 (N.D. Cal. 2014) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)). "Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss." Ham, 70 F.Supp.3d at 1193. "[I]n rare situations a court may determine, as a

matter of law, that the alleged violations of the UCL, FAL and CLRA are simply not plausible." Id. (citing Werbel ex rel. v. Pepsico, Inc., No. 09-cv-4456-SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (a reasonable consumer would not be deceived into believing that cereal named "Crunch Berries" derived significant nutritional value from fruit)); see also Manchouck v. Mondelez International, Inc., No. C13-02148 WHA, 2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) (rejecting claim that "Made With Real Fruit" made in connection with Strawberry and Raspberry Newton sandwich cookies was misleading where the cookies contained only "a small amount of processed fruit puree").

Defendant moves to dismiss Plaintiff's complaint for failure to allege a false or misleading statement. Defendant reasons that in paragraph 26 of the complaint, Plaintiff admits that the Product is, in fact, made with real ginger and therefore, "Made With Real Ginger" is not a false statement.[2]

Defendant's reading of the complaint is inaccurate. Nowhere does Plaintiff admit that the Product is made with real ginger. Instead, Plaintiff alleges repeatedly that the Product is not made from real ginger, and therefore the statement "Made With Real Ginger" is false or misleading. Complaint at ¶¶3, 22, 33, 37, 38. Specifically, in paragraph 26 of the complaint, Plaintiff alleges:

> While it may be that ginger root is used in the creation of the natural flavor, it is not ginger as a reasonable consumer would understand it. Rather the scientists that created the 'natural flavor' added to the Product would have isolated proteins from the cells and tissue of the

---

[2] Defendant also argues that the statement "Made With Real Ginger" is not misleading because it cannot reasonably be construed as a representation about the health benefits of ginger or a representation about the form or quantity of the ginger in the Product.
    Plaintiff clarifies in her motion papers that she is not contending that consumers would interpret the statement "Made With Real Ginger" to mean that the Product confers health benefits. Plaintiff's Opposition, pp. 7-8. Rather, Plaintiff included allegations about the health benefits of real ginger to explain why Defendant's statement "Made With Real Ginger" would be material to reasonable consumers and why consumers would be willing to pay a price premium to purchase a beverage they believed contained real ginger. Id.
    Also, contrary to Defendant's argument, Plaintiff does not allege that "Made With Real Ginger" communicates to consumers that ginger is present in a certain quantity or form. Rather, Plaintiff alleges that reasonable consumers reading the statement "Made With Real Ginger" would interpret it to mean that the Product is flavored with and contains real ginger when in fact, the Product does not contain real ginger.

Case No.: 5:17-cv-00603-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS
5

> ginger root or extracted oils or essences from the ginger root. But because those isolated compounds may not actually taste like ginger, the scientist would have then combined those extractions with any number of other extractions from other plants and animals to create a flavoring substance that tastes like ginger.

Complaint at ¶26. Defendant characterizes the allegations above as based on nothing more than "pure speculation" because Plaintiff did not perform any empirical tests of the Product. Defendant's Reply Brief, p. 3. Although Plaintiff has not alleged she performed any tests on the Product, she alleges sufficient facts from which to infer that the statement "Made With Real Ginger" is false or misleading. Plaintiff alleges that the Product contains only the following ingredients: carbonated water, high fructose corn syrup, citric acid, preservatives and "natural flavor" and further alleges that the "natural flavor" is not ginger as a reasonable consumer would understand it. Complaint at ¶¶22, 26. Defendant contends that Plaintiff's theory is "nonsensical," arguing that a reasonable consumer would "understand that it is not physically possible to incorporate ginger root into a soft drink without first reducing it to 'oils' or 'essences.'" Defendant's Reply Brief, p.5. Whether a reasonable consumer would be deceived, however, is generally a question of fact not amenable to determination on a motion to dismiss. Ham v. Hain Celestial Grp., Inc., 70 F.Supp.3d at 1193. At the pleading stage, Court finds Plaintiff's theory is "plausible" and the cases relied upon by Defendant are inapposite.

For example, in Red v. Kraft Foods, No. CV-10-1028-GW, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), the plaintiff claimed that the statement "Made With Real Vegetables" on a box of crackers was false and misleading. The court dismissed the consumer-protection claims after rejecting plaintiff's assertion that the statement would lead a reasonable consumer to believe that the product was healthy and contained a significant amount of vegetables. The court concluded that "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables," and that "it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase 'Made with Real Vegetables' on the box." Id. at *3-4. In the present case, it does not "strain credulity" to imagine

Case No.: 5:17-cv-00603-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

6

that a reasonable consumer would believe that a ginger ale product bearing the statement "Made With Real Ginger" on the product label would, in fact, contain real ginger, and not just a chemical compound derived from ginger that was created in a laboratory to mimic the flavor of real ginger.

The case Workman v. Plum, Inc., 141 F.Supp.3d 1032, 1035-36 (N.D. Cal. 2015), is also distinguishable. In Workman, the court rejected the plaintiff's claim that an image of certain ingredients on the product panel was false and misleading. Notably, the plaintiff in Workman conceded that all four of the ingredients pictured on the product panel were actually present in the product. The court reasoned that a reasonable consumer would simply not view the pictures on the packaging and assume that the size of the items pictured directly correlated with their predominance in the product. Moreover, the court concluded that any potential ambiguity regarding the predominance of the pictured ingredients "could be resolved by the back panel of the products, which listed all ingredients in order of predominance. . ." Workman, 141 F.Supp.3d at 1035.

Unlike Workman, the Plaintiff in this case does not concede that ginger is present in the Product. Furthermore, unlike Workman, Plaintiff alleges that reasonable consumers "lack the meaningful ability to test or independently ascertain the truthfulness of" the statement "Made With Real Ginger." Complaint at ¶38. Plaintiff also alleges that consumers "would not know the true nature of the ginger flavoring merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer." Id.

Furthermore, even if the chemical compound used to flavor the Product has trace amounts of ginger in it, the statement "Made With Real Ginger" is actionable because Plaintiff has alleged that the statement is likely to deceive reasonable consumers into believing that the Product is flavored with and contains real ginger. See e.g. Kasky v. Nike, Inc., 27 Cal.4th 939, 950 (2002) (UCL and false advertising law prohibit not only false advertising, "but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (quoting Leoni v. State Bar, 39 Cal.3d 609, 626 (1985)).

Case No.: 5:17-cv-00603-EJD
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

7

1  Plaintiff's allegation that the statement "Made With Real Ginger" is false or misleading is
2  sufficient at the pleading stage.

3  B.  Class Claims

4  Defendant contends that the class claims on behalf of "all persons" who purchased
5  Seagram's Ginger Ale should be dismissed because they encompass sales outside of California to
6  non-California consumers that are beyond the reach of California's consumer protection laws.
7  Plaintiff asserts that the scope of the class should be decided later in the context of a class
8  certification motion and not a motion to dismiss.

9  The Court agrees that it is preferable to defer ruling on the scope of the class in the context
10 of a class certification motion and not a motion to dismiss.  See Bruton v. Gerber Prod. Co., No.
11 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) (denying motion to strike
12 nationwide class allegations because the court cannot resolve any choice-of-law challenge at the
13 pleading stage).  California applies a three-step "governmental interest analysis" to determine
14 whether California law should apply extraterritorially.  Figby v. Lifeway Foods, Inc., No. 13-CV-
15 04828-TEH, 2016 WL 4364225, at *6 (N.D. Cal. Aug. 16, 2016) (citing Mazza v. Am. Honda
16 Motor Co., Inc., 666 F.3d 581, 590 (9th Cir. 2012)).  At this stage in the proceedings, neither party
17 has undertaken the governmental interest analysis and thus it would be premature to dismiss the
18 class action claims at this stage.

19 V.  CONCLUSION

20 For the reasons set forth above, Defendant's motion is DENIED.  The Court sets a case
21 management conference for November 16, 2017 at 10:00 a.m. The parties shall file a joint case
22 management statement no later than November 6, 2017.

24 **IT IS SO ORDERED.**

25 Dated:  October 18, 2017

   _____
   EDWARD J. DAVILA
   United States District Judge

28 Case No.: 5:17-cv-00603-EJD
   ORDER DENYING DEFENDANT'S MOTION TO DISMISS
   8

United States District Court
Northern District of California