GUTRIDE SAFIER LLP
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (pro hac vice)
Michelle W. Cohen (pro hac vice)
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone:  (212) 336-2000
Facsimile:   (212) 336-2222

SHOOK HARDY & BACON LLP
Tammy B. Webb
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone:  415-544-1904
Facsimile:  415-391-0281
tbwebb@shb.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL,<br><br>  Plaintiff,<br><br>  v.<br><br>THE COCA-COLA COMPANY,<br><br>  Defendant. | Case No. 5:17-CV-00603-EJD<br><br>**DISCOVERY DISPUTE JOINT REPORT # 1** |

This joint report addresses the parties' dispute regarding whether Coca-Cola is required to search for, review, and produce documents, including email correspondence, created after the date of the filing of the Complaint. The parties' lead counsel met in person on January 23, 2018 at the office of Shook Hardy & Bacon LLP in San Francisco. The deadline for Plaintiff to provide her expert report(s) offered in support of class certification is April 16, 2018. The close of

discovery is not yet scheduled. The parties' lead counsel attest that they complied with the standing orders' requirements for the presentation of joint discovery disputes.

### PLAINTIFF'S STATEMENT

**A.  Statement of the Case**

This case concerns Seagram's Ginger Ales (the "Products") beverages. Defendant prominently states, on the label of all of the Products, and on other packaging and marketing materials, that its Seagram's Ginger Ales are "MADE WITH REAL GINGER." (First Amended Complaint (Dkt.# 55), ¶¶ 2-4.) Plaintiff alleges that the representation is false and/or misleading because (i) it leads consumers to reasonably believe that the Products are made from, and contain, real ginger root, and that by drinking the Products they will receive the health benefits associated with consuming real ginger root; and (ii) the Products are, in fact, made with a chemical flavoring compound manufactured to mimic the flavor of ginger root without any of the health benefits of real ginger root. (Id.)

**B.  Summary of the Dispute**

Plaintiff served her first set of requests for production (the "requests") on Defendant on May 30, 2017. Plaintiff served her first set of interrogatories on Defendant on September 5, 2017.

Defendant served its objections and responses to the requests on June 29, 2017 and its objections and responses to the interrogatories on October 5, 2017. In response to each of the requests, Defendant objected to "the Requests as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent they seek information without any temporal limitation or outside the Class Period. Unless otherwise noted, Coca-Cola will only produce documents from December 23, 2012 through December 23, 2016." In response to each of the interrogatories, Defendant objected to "the Interrogatories as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent they seek information without any temporal limitation or outside the Class Period. Unless otherwise noted, Coca-Cola's responses are limited to the period December 28, 2012 through December 28, 2016." Defendant amended its responses to the requests and interrogatories but did not withdraw its temporal objections.

The parties participated in a lengthy meet and confer call. During that call, Defendant agreed it would search for responsive documents and relevant information pre-dating December 28, 2012. Defendant did not agree to search for responsive documents or relevant information after December 28, 2016. Coca-Cola agreed to "consider a proposal under which [it] would produce almost any other category of document—sales data, labeling, consumer research, etc.—post-dating the Complaint," but that is insufficient because it will not search for responsive ***email correspondence*** post-dating the Complaint. Defendant does not contend that the information and email correspondence are irrelevant; rather, it objects that it would be too burdensome to search for these documents because it anticipates that there would be a lot of privileged communications—specifically privileged emails with in house attorneys.[1] When asked, Defendant could not substantiate the burden—i.e., it did not know how many such potentially privileged emails were at issue.[2] It also did not have any suggestions when Plaintiff asked if there was some technological way the theoretically privileged emails could be separated out.

### C. Defendant Should Produce (or Log) Documents Created After the Filing of the Lawsuit

There is no basis to use the date of the filing of the complaint as a temporal limitation to discovery. Plaintiff's proposed class includes individuals who purchased Seagram's ginger ale after the filing of the Complaint. Moreover, documents relevant to Plaintiff's claims, and this litigation, could have been created after Plaintiff's complaint was filed, including but not limited to, documents discussing consumer understanding of the phrase "made from real ginger," consumer complaints, testing of samples of Seagram's ginger ales, competitive analysis of the market for ginger ales, pricing and sales related information, and/or changes to Defendant's marketing materials, suppliers, MSRP, ad campaigns, recipe, formula, or labels. Further Defendant's email correspondence regarding these subjects are equally relevant to Plaintiff's claims.

---

[1] Plaintiff and Defendant have already agreed that post-filing communications with outside counsel need not be searched or logged. (Dkt. # 57.)

[2] Defendant did suggest that there could be 500 emails after the complaint was filed. To Plaintiff, reviewing 500 emails for privilege does not seem all that burdensome.

1  Plaintiff is mindful, particularly for ESI document searches, that there typically must be
2  some cut-off date—i.e., the date through which the data is amassed and searched. But that date is
3  almost invariably the search date, and not, as Defendant proposes, the date of the filing of the
4  initial complaint. This is consistent with federal practice in the FOIA domain, *see, e.g., Our*
5  *Children's Earth Foundation v. National Marine Fisheries Service*, Case No. 14-1130 SC, 2015
6  WL 4452136, at *10 (N.D. Cal., July 20, 2015) (holding the legal standard is that the appropriate
7  cut-off date is the day searching began) and standard electronic discovery practices. *See, e.g.,*
8  *MGA Entertainment, Inc. v. National Products Ltd.*, Case No. CV1007083, 2012 WL 12886446,
9  at *3 (C.D. Cal., Jan. 26, 2012) (ordering search of electronic files readily available on
10 Defendants' computers and/or computer system (or computers under their control) as of the date
11 of this order, long after case was filed.)
12  Even if some earlier date was also reasonable, Defendant has failed to meet its obligation
13 to substantiate its "unduly burdensome" objection. *See In re ATM Fee Antitrust Litigation*, 233
14 F.R.D. 542, 545 (N.D. Cal. 2005) (holding the objecting party has the burden to substantiate its
15 objections with specifics sufficient to justify denying discovery); *see also A. Farber and*
16 *Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (holding objections such as
17 "overly burdensome and harassing" are improper—especially when a party fails to submit any
18 evidentiary declarations supporting such objections); *Bird v. Wells Fargo Bank*, No.
19 116CV01130, 2017 WL 1213425, at *4 (E.D. Cal., Mar. 31, 2017) ("When objecting on the basis
20 that a discovery request is overly burdensome, the objecting party must affirmatively support its
21 objection with compelling proof in the form evidentiary declarations or other evidence
22 specifically describing the burden."). Indeed, in that parties' ongoing meet and confer, despite
23 Plaintiff's repeated requests, Defendant could not substantiate its purported burden. Nor could it
24 have any meaningful discussion regarding how the purported burden might be lessened. At best,
25 Defendant is guessing that there will be a burdensome amount of internal privileged
26 communications, but that is inadequate.
27  **D.  Plaintiff's Final Proposal**
28  Plaintiff requests that the Court overrule Defendant's temporal objections to the Requests

and Interrogatories and order Defendant to search for documents that post-date the filing of the Complaint. The cut-off should be the date the data is searched. If there are responsive documents that Defendant contends are privileged that do not involve outside trial counsel, Defendant should log those communications to substantiate its claim of privilege.

## DEFENDANT'S STATEMENT

### A. Summary of Dispute

Coca-Cola has not suggested "us[ing] the date of the filing of the complaint as a temporal limit to discovery." Rather, it has resisted Plaintiff's demand that it undertake a full ESI collection of *emails* post-dating the Complaint, because the burden of reviewing such emails for privilege outweighs the marginal benefit that discovery would afford to Plaintiff. Coca-Cola has, however, represented in writing that it will "consider a proposal under which [it] would produce almost ***any other category of document***—sales data, labeling, consumer research, etc.—post-dating the Complaint." (emphasis added) Plaintiff has not responded to that offer.

In addition, after Plaintiff expressed concerns that her anticipated class certification motion would be prejudiced by incomplete discovery relating to potential post-Complaint changes to the product formula, Coca-Cola represented that no such changes have occurred. It also provided Plaintiff with a stipulation that it would not rely upon any such changes in opposing her motion. Plaintiff rejected the stipulation and declined Coca-Cola's invitation to offer an alternative one. Thus, despite Coca-Cola's best efforts, this issue has ended up before the Court.

### B. The Requested Discovery Is Irrelevant and Unduly Burdensome to Produce

In order to be permissible under Rule 26, discovery must be "relevant and proportional to the needs of the case," and its "likely benefit" must outweigh the "burden or expense" associated with producing it. Fed. R. Civ. P. 26(b)(1). Plaintiff's request for post-Complaint emails does not satisfy these standards.

As Coca-Cola has explained in written correspondence and meet-and-confer discussions, the "burden or expense" of searching, collecting, processing, and producing email generated between December 2016 and the present would be considerable. Because the challenged "Made With Real Ginger" claim is not new, having appeared consistently on product labels since 2013,

most of the post-Complaint email correspondence relating to the claim would inevitably consist of privileged discussions related to Coca-Cola's defense of this lawsuit.  Reviewing such email for privilege is not a mechanical or "technological" function, as it is the content and purpose of a communication, not its recipients, that determines whether the privilege applies.  *See In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) ("[T]he privilege is not limited to the actual communication by the client to the attorney, or vice versa"); *see also Carl Zeiss Vision Int'l GmbH v. Signet Armorlite Inc.*, 2009 U.S. Dist. LEXIS 111877, at *21 (S. D. Cal. Dec. 1, 2009) ("[T]he attorney-client privilege continues to apply to communications made for the purpose obtaining legal advice, even if the communications were never sent to counsel").  Accordingly, even if Coca-Cola were relieved of the obligation to log some subset of the privileged communications, the process of identifying them would still involve considerable attorneys' fees.[3]  Moreover, Plaintiff has not wavered in her demand that Coca-Cola incur the burdens of logging all privileged post-Complaint communications that do ***not*** include outside counsel.  Because outside counsel has not been copied on many of in-house counsel's lawsuit-related internal emails, the burden of logging such communications would not be insignificant.

      Even as Plaintiff asks Coca-Cola to shoulder this expense, however, she cannot articulate what she hopes to gain from it.  Although she identifies various categories of nonprivileged post-Complaint information that might be marginally relevant to her claims—such as consumer research, market analysis, and pricing- and sales-related information—Coca-Cola has already indicated that it will produce those categories of information.  Her request is thus effectively limited to email communications in which Coca-Cola employees discuss a three-year-old label claim, unrelated to the pendency of a lawsuit regarding that claim.  Even assuming that a handful

---

[3] Plaintiff inexplicably takes Coca-Cola to task for not knowing how many privileged communications there are.  Obviously, Coca-Cola has no way of determining this unless and until it actually collects and reviews all of the relevant emails.  But the lawsuit has been pending for over a year, during which time Coca-Cola and its inside and outside counsel have engaged in privileged conversations regarding, among other things, removing the case; briefing a motion to dismiss; discussing possible resolution and mediation options with Plaintiff; and—most significantly—gathering documents and information responsive to Plaintiff's broad and numerous discovery requests.  Under these circumstances, it stands to reason that the volume of privileged communications is significant.

1  of communications in this category exist, the negligible benefit that Plaintiff would derive from
2  them does not justify the burden on Coca-Cola associated with wading through more than a year's
3  worth of communications about the lawsuit, reviewing them for privilege, and logging many, if
4  not all, of them.

5  The cases Plaintiff relies upon do not support her contention that she is entitled to this
6  irrelevant and burdensome discovery. One concerns the interpretation of a FOIA regulation that
7  is not at issue in this case. *See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, No.
8  14-4365 SC, 2015 U.S. Dist. LEXIS 94997, at *29 (N.D. Cal. July 20, 2015) (construing 15
9  C.F.R. § 4.5(a)). And in the other, *MGA Entertainment v. National Products Ltd.*, the court
10 merely noted that the defendant should re-do a search it had already conducted because it had
11 apparently misapplied keywords to the wrong fields. *MGA Entm't, Inc. v. Nat'l Prods.,* No. CV
12 10-07083 JAK (SSx), 2012 U.S. Dist. LEXIS 196271, at *10 (C.D. Cal. Jan. 26, 2012). Neither
13 case has anything to do with whether a defendant must search for post-Complaint documents in a
14 false-labeling lawsuit like this, where the burden of such a search dramatically outweighs its
15 relevance. Coca-Cola should not be required to undertake a full ESI collection of emails post-
16 dating the Complaint.

17     **C.**     **Defendant's Final Proposal**

18 Coca-Cola requests that the Court enter a protective order providing that it does not need
19 to (1) collect or review email created after Plaintiff filed her Complaint; (2) run keyword searches
20 or review electronically-stored documents created after Plaintiff filed her Complaint; or (3)
21 produce a privilege log concerning the same. Coca-Cola remains willing to stipulate that it will
22 not oppose class certification, or make any arguments in opposition to class certification, on the
23 basis that any aspect of the formula for the Product changed after Plaintiff filed her Complaint.
24 Subject to its other objections, Coca-Cola is also willing to produce certain categories of
25 documents (excluding email) Plaintiff identified in her Statement of Position above to the extent
26 it has already agreed to produce those documents within the Class Period, such as consumer
27 complaints, market research, and pricing information.
28

Dated: February 6, 2018

| | |
|---|---|
| *By: /s/ Marie A. McCrary          /* | */s/ Jane Metcalf (by permission)          /* |
| Adam J. Gutride | Steven A. Zalesin (*pro hac vice*) |
| Seth A. Safier | Michelle W. Cohen (*pro hac vice*) |
| Matthew T. McCrary | Patterson Belknap Webb & Tyler LLP |
| Marie A. McCrary | 1133 Avenue of the Americas |
| GUTRIDE SAFIER LLP | New York, NY 10036-6710 |
| 100 Pine Street, Suite 1250 | Telephone: 212-336-2000 |
| San Francisco, CA 94111 | Facsimile: 212-336-2222 |
| Telephone: (415) 271-6469 | sazalesin@pbwt.com |
| Facsimile: (515) 449-6469 | mcohen@pbwt.com |
| | |
| Attorneys for Jackie Fitzhenry-Russell | Tammy B. Webb |
| | Shook Hardy & Bacon LLP |
| | One Montgomery Tower, Suite 2700 |
| | San Francisco, CA 94104 |
| | Telephone: 415-544-1904 |
| | Facsimile: 415-391-0281 |
| | tbwebb@shb.com |
| | |
| | Attorneys for The Coca-Cola Company. |