**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, and DOES 1-50,<br><br>Defendants. | Case No. 5:17-CV-00603-EJD<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION** |

**PROPOUNDING PARTY: PLAINTIFF, JACKIE FITZHENRY-RUSSELL**

**RESPONDING PARTY: DEFENDANT THE COCA-COLA COMPANY.**

**SET NUMBER: ONE**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**YOU ARE HEREBY REQUESTED**, pursuant to Rule 34 of the Federal Rules of Civil Procedure, to produce the designated documents for inspection and copying within 30 days of receipt of this demand at the law offices of Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, California 94111.

If DEFENDANT objects to the production of ANY DOCUMENT on the grounds that it is protected from disclosure by the attorney-client privilege, work-product doctrine or ANY other privilege, DEFENDANT is requested to identify each DOCUMENT for which the privilege is claimed and give the following information:

(1) the name of the writer, sender, or initiator of each copy of the DOCUMENT;

(2) the name of the recipient, addressee, or party to whom ANY copy of the DOCUMENT was sent;

(3) the date of each copy of the DOCUMENT, if any, or an estimate of its date;

(4) the type of document;

(5) the subject matter of the DOCUMENT; and

(6) a statement of the basis for the claim of privilege.

**DEFINITIONS AND INSTRUCTIONS**

The definitions below are incorporated into each request for production. DEFENDANT is directed to respond to each request for production as if the definitions were set forth therein.

1. “YOU” or “YOUR” means DEEFNDANT, your officers, directors, trustees, agents, employees, staff members, and paid consultants; ANY predecessor, successor, parent, subsidiary, division or affiliate; and ANY PERSON acting on behalf of ANY of the aforementioned.

2. “DEFENDANT” means The Coca-Cola Company, its officers, directors, trustees, agents, employees, staff members, and paid consultants; ANY predecessor, successor, parent,

subsidiary, division or affiliate; and ANY PERSON acting on behalf of ANY of the aforementioned.

3. "PLAINTIFF" means Plaintiff, Jackie Fitzhenry-Russell and her agents and assigns; and ANY PERSON acting on behalf of ANY of the aforementioned.

4. The terms "DOCUMENT" or "DOCUMENTS" mean, without limitation, the original (and absent the original a copy thereof), ALL file copies and copies not identical to the original of ANY writing, record, or recording of every type, form, and description that is in the possession, custody, or control of the responding party, or which no longer is in the responding party's possession but of which the responding party still has knowledge, including, by way of illustration and not limitation, the following items: notes; correspondence; communications of ANY nature (including intra-company communications and correspondence); electronically-stored information (including electronic mail messages and stand-alone electronic files); telegrams, cables, memoranda (including internal memoranda); notebooks of ANY nature, including laboratory and engineering reports; summaries, minutes and records of telephone conversations, personal conversations or interviews; diaries, routing slips or memoranda, reports (including tests and analysis reports), books, manuals, publications, invoices, specifications, shipping papers, purchase orders, shop instrument output, plans, patterns, drawings, flow charts, schematics, diagrams, photographs of ANY nature, artists' drawings, sketches, blueprints, minutes or recordings of meetings and conferences, including lists of persons attending meetings or conferences; transcripts of oral testimony or statements; reports and or summaries of interviews; reports and or summaries of investigations; opinions or reports of consultants; opinions of counsel; forecasts; reports of patent searches; patent opinions, analyses or appraisals; agreements and contracts (including ALL modifications or revisions thereof); reports and or summaries of negotiations; court papers, labels, tags, placards, fliers, counter cards, brochures, pamphlets, advertisements, advertising layouts, circulars, trade letters, press releases, and translations; presentations, including boards, transparencies, storybooks and or scripts; drafts of original or preliminary notes on, and marginal comments appearing on, ANY document; whether said writings or records are on paper, magnetic disk, tape or other computer or digital storage

medium, microfilm, microfiche, floppy or ANY other storage or recording medium within the scope of Federal Rules 26 and 34.

5. As used herein the term DOCUMENT also includes ANY document, which did exist, but as of the date of response and production has been destroyed, lost, misplaced, or is otherwise unavailable. For ANY such document, the response must to the extent possible identify the document by date, subject matter, author, addressee, and persons to whom the document was distributed; must state whether the document was lost, destroyed, or misplaced; and must state the name and address of the person who last had custody of or knowledge of the existence of the document.

6. Any electronic records and computerized information must be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

7. The terms “RELATES,” “RELATE,” “RELATED TO” and “RELATING TO” mean concerning, mentioning, indicating, disclosing, discussing, regarding, constituting, analyzing, serving as a basis for, relying upon, supporting, describing, referring or in ANY other way bearing upon or illuminating the subject matter into which inquiry is made.

8. “AND/OR” shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

9. The terms “ANY,” “ALL,” and “EACH” shall each mean and include the other.

10. “INCLUDE,” “INCLUDES,” and “INCLUDING” shall include by reference without limitation.

11. The term “PERSON(S)” includes the plural as well as the singular and includes ANY person, firm, association, partnership, corporation, and or ANY other form of legal entity.

12. The terms “MARKET,” “MARKETED,” “MARKETING” and “MARKETING MATERIALS” refer to the use of ANY print advertisement, radio advertisement, television advertisement, internet advertisement, billboard, banner advertisement, website, letter, postcard, brochure, pamphlet, packaging, labeling, shelf card, point of sale display, coupon, book, offer, or other attempt, effort or process that conveys ANY information, invitation or offer to ANY

PERSON to PURCHASE, review, compare or otherwise acquire the SEAGRAM'S GINGER ALES.

13. The term "REPORTS" refers to internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews, or audits, focus groups, analyses, or assessments.

14. The term "SEAGRAM'S GINGER ALES" means the soft drinks MANUFACTURED, sold, marketed, AND/OR distributed by YOU which are branded as Seagram's.

15. The term "GINGER ALE" means ANY and ALL ginger ale flavored soft drinks.

16. The term "BEVERAGES" means ANY and ALL beverages MANUFACTURED, sold, marketed, AND/OR distributed by YOU, INCLUDING GINGER ALES, soft drinks, juices, beers, AND/OR bottled water.

17. The term "COMMUNICATION" or "COMMUNICATIONS" shall mean, without limitation, ANY transmittal, conveyance or exchange of a word, statement, fact, thing, idea, DOCUMENT, instruction, information, demand, question or other information by ANY medium, whether by written, oral or other means, including but not limited to letters, electronic COMMUNICATIONS and electronic mail.

18. The term "CLASS PERIOD" means December 28, 2012 through the present.

19. The term "CUSTOMER" means ANY PERSON who PURCHASED ANY SEAGRAM'S GINGER ALE.

20. The term "PURCHASE" shall mean acquired for consideration, INCLUDING with or by cash, check, money order, refund, debit card, credit card, gift certificate, exchange or store credit.

21. The term "MANUFACTURE" means the making or producing of the SEAGRAM'S GINGER ALES.

22. The term "MANUFACTURER" means ANY PERSON involved in the MANUFACTURE of the SEAGRAM'S GINGER ALES.

23. The term "THIS ACTION" means the above-captioned lawsuit.

24. The terms "IDENTIFY" and "IDENTIFICATION" mean:

a. With reference to DOCUMENTS, state the type of DOCUMENT (e.g. letter, interoffice memorandum), and provide information sufficient to enable PLAINTIFFS to identify the DOCUMENT to obtain its production by DEFENDANT, such as its date, the name of the signer or signers, the name of the author or authors, the name of the recipient or recipients, and the title, heading, or subject matter of the DOCUMENT; and

b. With reference to a PERSON, furnish information sufficient to enable PLAINTIFFS to identify and to locate the PERSON, including, to the extent the information is available to you, the full name, the present or last known residence address and business address and telephone numbers (business and residence) of the PERSON.

**REQUESTS FOR PRODUCTION**

1. ALL DOCUMENTS identified or otherwise referenced in DEFENDANT's responses to ANY interrogatories served by PLAINTIFF on YOU in THIS ACTION.

2. ALL DOCUMENTS consulted and/or reviewed by YOU to assist in the preparation of DEFENDANT's responses to ANY interrogatories served by PLAINTIFF on YOU in THIS ACTION.

3. Exemplars of ALL packaging and labels for ALL SEAGRAM'S GINGER ALES sold during the CLASS PERIOD.

4. Exemplars of ALL packaging and labels for ALL BEVERAGES sold during the CLASS PERIOD.

5. ALL MARKETING MATERIALS for SEAGRAM'S GINGER ALES sold or offered for sale during the CLASS PERIOD.

6. ALL DOCUMENTS that RELATE, REFER or PERTAIN to YOUR purchase of ANY advertisements on ANY search engine, including Google bid records, for SEAGRAM'S GINGER ALES.

7. ALL DOCUMENTS RELATING TO product launches for the SEAGRAM'S GINGER ALES.

8. ALL DOCUMENTS, INCLUDING internal COMMUNICATIONS and/or internal

memoranda, RELATING TO YOUR decision to MARKET the SEAGRAM'S GINGER ALES with the representation that they are "MADE WITH REAL GINGER" AND/OR variants thereon.

9. ALL DOCUMENTS that comprise, reference or RELATE TO ANY REPORTS about consumer demand for GINGER ALES.

10. ALL DOCUMENTS that comprise, reference or RELATE TO ANY REPORTS about consumer preference or desire for GINGER ALES MARKETED as "MADE WITH REAL GINGER" AND/OR variants thereon.

11. ALL DOCUMENTS that comprise, reference or RELATE TO ANY REPORTS about consumer perception, understanding, or comprehension of the phrase "MADE WITH REAL GINGER" AND/OR variants thereon.

12. ALL DOCUMENTS that evidence, RELATE OR REFER TO ANY relative, comparative, competitive or strategic analysis or REPORT performed by or on behalf of DEFENDANT RELATING TO the use of the words "MADE WITH REAL GINGER" AND/OR variants thereon in the MARKETING or sale of ANY SEAGRAM'S GINGER ALES, GINGER ALES, AND/OR BEVERAGES .

13. ALL DOCUMENTS that evidence, RELATE OR REFER TO ANY relative, comparative, competitive or strategic analysis or REPORT regarding GINGER ALES performed by or on behalf of DEFENDANT.

14. ALL DOCUMENTS that propose, discuss, analyze, create standards for, impose requirements or limitations on, or otherwise RELATE TO the use of the phrase "MADE WITH REAL GINGER" AND/OR variants thereon in DEFENDANT's MARKETING MATERIALS.

15. ALL DOCUMENTS RELATING TO the following (or similar) messages appearing on the SEAGRAM'S GINGER ALES that YOU MANUFACTURED and/or sold during the CLASS PERIOD: "MADE WITH REAL GINGER."

16. DOCUMENTS sufficient to IDENTIFY the ingredients and processes used to MANUFACTURE the SEAGRAM'S GINGER ALES sold during the CLASS PERIOD.

17. ALL DOCUMENTS RELATING TO the selection, design, and development of the formula, ingredients, and/or processes used to MANUFACTURE the SEAGRAM'S GINGER

ALES.

18. DOCUMENTS sufficient to IDENTIFY the ingredients and method used to MANUFACTURE the "natural flavors" used in the SEAGRAM'S GINGER ALES sold during the CLASS PERIOD.

19. DOCUMENTS sufficient to IDENTIFY the ingredients and the relative proportions AND/OR amounts of those ingredients in the SEAGRAM'S GIGNER ALES sold during the CLASS PERIOD.

20. ALL DOCUMENTS RELATING TO the selection, design, and development of the formula AND/OR ingredients in the "natural flavors" used to MANUFACTURE the SEAGRAM'S GINGER ALES.

21. DOCUMENTS sufficient to IDENTIFY ANY agreements between DEFENDANT and ANY PERSON concerning the MARKETING, MANUFACTURE, research, design, construction, testing, sale, distribution, resale, advertisement, and/or supply of the SEAGRAM'S GINGER ALES.

22. ALL DOCUMENTS RELATING TO ANY agreements, partnerships and/or other relationships between DEFENDANT and ANY PERSON concerning the MARKETING, MANUFACTURE, research, design, construction, testing, sale, distribution, resale, advertisement, and/or supply of the SEAGRAM'S GINGER ALES.

23. DOCUMENTS sufficient to IDENTIFY ANY agreements between DEFENDANT and ANY PERSON involved in the MARKETING, MANUFACTURE, research, design, construction, testing, sale, distribution, resale, advertisement, and/or supply of the flavoring used in the SEAGRAM'S GINGER ALES.

24. ALL DOCUMENTS RELATING TO ANY agreements, partnerships and/or other relationships between DEFENDANT and ANY PERSON involved in the MARKETING, MANUFACTURE, research, design, construction, testing, sale, distribution, resale, advertisement, and/or supply of the flavoring used in the SEAGRAM'S GINGER ALES.

25. ALL DOCUMENTS that RELATE to COMMUNICATIONS with ANY PERSON involved in the MARKETING, MANUFACTURE, research, design, construction,

testing, sale, distribution, resale, advertisement, and/or supply of the SEAGRAM'S GINGER ALES about the use of the phrase "MADE WITH REAL GINGER," including internal COMMUNICATIONS.

26. ALL DOCUMENTS that reflect, discuss or RELATE TO the selection or development of the methodology by which DEFENDANT tested, analyzed, or evaluated whether the SEAGRAM'S GINGER ALES are "MADE WITH REAL GINGER."

27. DOCUMENTS sufficient to IDENTIFY the laboratories, facilities, or institutions where the SEAGRAM'S GINGER ALES sold during the CLASS PERIOD were researched, developed, and tested.

28. Other than DOCUMENTS produced in response to Requests Nos. 25–26, DOCUMENTS sufficient to IDENTIFY and/or determine ALL tests DEFENDANT conducted or received that purport to assess or evaluate whether the SEAGRAM'S GINGER ALES are "MADE WITH REAL GINGER."

29. Other than DOCUMENTS produced in response to Requests Nos. 25–27, DOCUMENTS sufficient to IDENTIFY and/or determine ALL tests or analyses used to evaluate whether GINGER ALES are "MADE WITH REAL GINGER," regardless of whether DEFENDANT conducted such tests.

30. ALL DOCUMENTS that evidence, or RELATE TO ANY legislation, regulations, rules, statutes, ordinances (including proposed and enacted) that purport to set standards for or limitations on the use of the phrase "MADE WITH REAL GINGER."

31. ALL customer-service related DOCUMENTS, including scripts, training manuals, or reference materials and drafts thereof (including ALL of DEFENDANT's internal communications and memoranda ), that RELATE TO SEAGRAM'S GINGER ALES.

32. ALL DOCUMENTS and information (including transcripts of testimony) provided in response to ANY subpoena, inquiry, or investigation, whether informal or formal, purporting to seek information about the use of the phrase "MADE WITH REAL GINGER."

33. ALL DOCUMENTS RELATED to ANY COMMUNICATIONS to or from CUSTOMERS or purchasers regarding the use of the phrase "MADE WITH REAL GINGER."

34. ALL DOCUMENTS RELATED to ANY COMMUNICATIONS to or from CUSTOMERS or purchasers regarding whether the SEAGRAM'S GINGER ALES are made with or contain real ginger, or the amount thereof.

35. ALL sales sheets, sales presentations, and other MARKETING MATERIALS provided to retailers RELATING TO the SEAGRAM'S GINGER ALE.

36. ALL DOCUMENTS submitted to the Federal Food and Drug Administration AND/OR ANY state or municipal agency, department, bureau, or commission to substantiate ANY claims concerning the SEAGRAM'S GINGER ALE.

37. ALL DOCUMENTS RELATED TO ANY COMMUNICATIONS, between YOU and ANY government agency (including but not limited to the Federal Drug Administration, Federal Trade Commission, the Environmental Protection Bureau, state and federal attorney generals' offices, and ANY state or municipal agency, department, bureau, or commission) elected official, legislative body, or staff member, advisor or consultant to such agency, official, or legislative body regarding the use of the phrase "MADE WITH REAL GINGER."

38. ALL DOCUMENTS that RELATE TO ANY claim, contention, suggestion, or accusation that DEFENDANT engaged in false advertising, mislabeling, unfair competition, or unfair trade practices in connection with the SEAGRAM'S GINGER ALES.

39. DOCUMENTS sufficient to determine the quantity of SEAGRAM'S GINGER ALES sold during the CLASS PERIOD in California.

40. DOCUMENTS sufficient to determine the quantity of SEAGRAM'S GINGER ALES sold during the CLASS PERIOD in the United States.

41. DOCUMENTS sufficient to determine YOUR methods, policies, and procedures for pricing SEAGRAM'S GINGER ALES during the CLASS PERIOD.

42. DOCUMENTS sufficient to determine YOUR methods, policies, and procedures for pricing BEVERAGES during the CLASS PERIOD.

43. ALL DOCUMENTS related to the manufacturer's suggested retail pricing or other standard pricing for the SEAGRAM'S GINGER ALES.

44. ALL DOCUMENTS related to the manufacturer's suggested retail pricing or other

standard pricing for ANY GINGER ALES.

45. ALL DOCUMENTS related to the manufacturer's suggested retail pricing or other standard pricing for ANY BEVERAGES.

46. ALL DOCUMENTS concerning ANY internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews, or audits regarding or RELATING TO SEAGRAM'S GINGER ALES' pricing and sales as compared to other GINGER ALES.

47. ALL DOCUMENTS concerning ANY internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews, or audits regarding or RELATING TO SEAGRAM'S GINGER ALES' pricing and sales as compared to other BEVERAGES.

48. ALL DOCUMENTS concerning ANY internal or external, formal or informal, investigations, studies, research, assessments, analyses, reviews, or audits regarding or RELATING TO ANY product or brand that competes with the SEAGRAM'S GINGER ALES.

49. DOCUMENTS sufficient to determine the gross volume, gross dollar amount or net dollar amount of SEAGRAM'S GINGER ALES sold during the CLASS PERIOD by month.

50. DOCUMENTS sufficient to IDENTIFY ALL CUSTOMERS who PURCHASED ANY SEAGRAM'S GINGER ALES during the CLASS PERIOD.

51. DOCUMENTS sufficient to set forth the names of ALL distributors and retailers for ANY SEAGRAM'S GINGER ALES during the CLASS PERIOD.

52. ALL DOCUMENTS that RELATE TO PLAINTIFFS.

53. DOCUMENTS sufficient to establish DEFENDANT's policies, procedures, or practices for the preservation of DOCUMENTS.

54. ALL DOCUMENTS that RELATE TO ANY instructions or directives to hold, preserve, or destroy DOCUMENTS that refer or RELATE TO the SEAGRAM'S GINGER ALES and testing thereof.

55. ALL DOCUMENTS concerning or RELATED TO insurance policies or indemnification agreements that may provide coverage for ANY DEFENDANT for ANY claims

or causes of action asserted in this litigation or that may provide reimbursement for costs, fees or payments incurred or made in defense of this litigation

56. For EACH of the SEAGRAM'S GINGER ALES, GINGER ALES, AND BEVERAGES sold during the CLASS PERIOD, DOCUMENTS (including data from market research companies such as Nielsen or IRI that P&G possesses and/or has a right to obtain or view) sufficient to identify the following:

(a) Universal Product Code (UPC);

(b) Manufacturer;

(c) Brand name;

(d) Product descriptions;

(e) Size of the product;

(f) any other product attribute information available at any time during the class period.

57. For EACH of the SEAGRAM'S GINGER ALES, GINGER ALES, AND BEVERAGES, DOCUMENTS (including data from market research companies such as Nielsen or IRI that YOU possess AND/OR have a right to obtain or view) sufficient to show sales in California for EACH SKU sold during the CLASS PERIOD, including:

(a) sales by week;

(b) sales in units and in dollars; and

(c) sales at retail and at wholesale.

58. DOCUMENTS sufficient to determine the dates during which the packages and/or labels produced in response to Request Nos. 3–4 were shipped or distributed to retailers or otherwise marketed and sold to consumers.

DATED: May 30, 2017.

GUTRIDE SAFIER LLP

By: /s/ Matthew T. McCrary
Matthew T. McCrary, Esq.

**PROOF OF SERVICE**

I, Matthew T. McCrary, declare:

My business address is 100 Pine Street, Suite 1250, San Francisco, California. I am over the age of 18 years and not a party to the within cause.

On May 30, 2017, I served the following documents:

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

on the following person(s) in this action by placing a true copy thereof as follows:

Jane M. Metcalf, jmetcalf@pbwt.com;
Michelle Cohen, mcohen@pbwt.com;
Steven A. Zalesin, sazalesin@pbwt.com;
Lauren M. Capaccio, lcapaccio@pbwt.com;
Tammy Beth Webb, tbwebb@shb.com.

[x] BY E-MAIL. I caused said documents to be transmitted to the email address indicated after the address(es) pursuant to the parties' e-mail stipulation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on May 30, 2017, at Jackson, Wyoming.

Matthew T. McCrary, Esq.