PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (pro hac vice)
Michelle W. Cohen (pro hac vice)
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

SHOOK HARDY & BACON LLP
Tammy B. Webb
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone: 415-544-1904
Facsimile: 415-391-0281
tbwebb@shb.com

*Attorneys For Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE COCA-COLA COMPANY,<br><br>　　　　　Defendant. | Case No. 5:17-CV-00603-EJD<br><br>**DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |

　　　　Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant The Coca-Cola Company ("Coca-Cola") hereby responds and/or objects to Plaintiff Jackie Fitzhenry-Russell's First Set of Interrogatories ("Interrogatories") as follows:

### COCA-COLA'S DEFINITIONS

　　　　1.　　"Pack Type" means a variety of disposable containers (e.g., a 2-liter bottle) or outer packaging (*e.g.*, a 12-pack carton) in which a product is packaged for retail sale, excluding any containers or outer packaging in which the product is packaged for wholesale or fountain distribution.

　　　　2.　　"Product" means the soft drink Seagram's® Ginger Ale.

# GENERAL OBJECTIONS

Coca-Cola incorporates each of the General Objections below into its specific objections to each Interrogatory, whether or not each such General Objection is expressly referred to in Coca-Cola's objections to a specific Interrogatory. Coca-Cola reserves the right to supplement, amend, modify, or correct its responses and objections under Rule 26(e) should it discover additional information or grounds for objections at any time prior to the conclusion of this action. The following responses and objections are based upon information known at this time.

1. Coca-Cola objects to the Interrogatories to the extent they purport to impose obligations on Coca-Cola that exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules, and any other relevant rules of practice. Coca-Cola will respond in accordance with its obligations under the applicable rules, and will provide only such answers as can be determined in the exercise of reasonable diligence.

2. Coca-Cola objects to the Interrogatories as harassing to the extent they are duplicative of one another and other discovery, and to the extent they seek information outside of the scope of the Federal Rules of Civil Procedure, the Local Rules, and any other relevant rules of practice, including Federal Rule of Civil Procedure 26(b)(1).

3. The only Product at issue in this lawsuit is Seagram's® Ginger Ale. Coca-Cola objects to all Interrogatories seeking information about other products as not relevant, not proportional to the needs of this case, and excessively burdensome in comparison to any theoretical benefit.

4. Coca-Cola objects to the Interrogatories to the extent any individual Interrogatory is vague, ambiguous, unintelligible, indefinite, or confusing and therefore not susceptible to a clear and definitive response.

5. Coca-Cola objects to the Interrogatories to the extent they are duplicative of other Interrogatories specifically and of other discovery requests generally.

6. Coca-Cola objects to the Interrogatories to the extent they seek information that is obtainable from publicly available sources and therefore equally available to both parties.

7. Coca-Cola objects to the Interrogatories to the extent they seek information not in the possession, custody, or control of Coca-Cola.  Coca-Cola will respond to these Interrogatories with information that is known by Coca-Cola or discoverable in the exercise of reasonable diligence.

8. Coca-Cola objects to the Interrogatories to the extent they seek information subject to third-party confidentiality agreements or subject to confidentiality pursuant to court order.

9. Coca-Cola objects to the Interrogatories to the extent that they call for trade secrets, confidential business information or other confidential information.  Coca-Cola will produce information in response to the Interrogatories pursuant to the September 6, 2017 Protective Order (Dkt. No. 44).

10. Coca-Cola objects to the Interrogatories to the extent that they purport to impose any obligation on agents, investigators or other third parties to gather or communicate information.

11. Coca-Cola objects to the Interrogatories to the extent that they seek information concerning products, labeling, advertising, marketing, and/or other promotional statements which Plaintiff did not purchase and/or see, and/or upon which Plaintiff did not rely.

12. Coca-Cola objects to the Interrogatories to the extent they seek information or communications protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.

13. Coca-Cola objects to the Interrogatories to the extent that they call for a legal conclusion or purport to require Coca-Cola to form, set forth, or perform a legal analysis.

14. Coca-Cola objects to the Interrogatories as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent they seek information without any temporal limitation or outside the Class Period. Unless otherwise noted, Coca-Cola's responses are limited to the period December 28, 2012 through December 28, 2016.

15. Coca-Cola objects to the Interrogatories to the extent they are harassing, vague, ambiguous, overbroad or unduly burdensome, lack reasonable particularity, seek irrelevant information or are not reasonably calculated to lead to the discovery of admissible evidence, and are not proportional to the needs of the case. For example, and without limitation, Coca-Cola objects to the Interrogatories as overbroad and unduly burdensome to the extent they seek the production of "all" or "any" category of information that refers or relates to a particular subject.

16. Coca-Cola objects to the Interrogatories to the extent they call for an interpretation on the part of Coca-Cola. In order to provide a response in good faith, Coca-Cola has made interpretations where necessary and has responded accordingly.

17. Coca-Cola objects to the Interrogatories to the extent they are not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1).

18. Coca-Cola objects to the Interrogatories to the extent they exceed 25 in number, accounting for discrete subparts. *See* Fed. R. Civ. P. 33(a)(1).

19. Coca-Cola will construe each Interrogatory only to require it to use reasonable diligence under the circumstances in responding.

20. Coca-Cola's responses to the Interrogatories shall in no way constitute or be construed as a waiver of any of the objections contained herein, or of any other objection regarding the relevance, materiality, privilege, or admissibility of any such information as evidence in this suit or any other proceeding, action, or trial.

21. Coca-Cola's responses are based upon information presently known to it. Coca-Cola reserves the right to rely on any facts, documents, or other evidence which may develop or subsequently come to its attention, to assert additional objections, and to supplement

these responses.

All individual responses to the Interrogatories are made on the express reservation of all applicable previous objections, court rulings, agreements and understandings limiting the Interrogatories and are made pursuant to the foregoing general objections and any specific objections set forth below.

## **OBJECTIONS TO PLAINTIFF'S DEFINITIONS AND INSTRUCTIONS**

1. Coca-Cola objects to the definition of "ANY," "ALL," and "EACH" as unintelligible. Coca-Cola will construe these terms in good faith and in accordance with their plain meaning.

2. Coca-Cola objects to the definition of "CLASS PERIOD" as overbroad. Unless otherwise noted, Coca-Cola's responses are limited to the period December 28, 2012 through December 28, 2016.

3. Coca-Cola objects to the definition of "COMMUNICATION" as vague and overbroad. Coca-Cola will construe this term in good faith and in accordance with its plain meaning.

4. Coca-Cola objects to the definition of "CUSTOMER" as overbroad, unduly burdensome, and disproportionate to the needs of the case, to the extent it encompasses persons and/or entities who are not members of the putative Class, and of whom Coca-Cola has no knowledge.

5. Coca-Cola objects to the definition of "DOCUMENT" as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to impose obligations on Coca-Cola that are inconsistent with or exceed the Federal Rules of Civil Procedure, the Local Rules, or any other relevant rules of practice.

6. Coca-Cola objects to the definition of "FLAVOR SUPPLIER" as overbroad, unduly burdensome, and disproportionate to the needs of the case, to the extent it encompasses persons and/or entities of whom Coca-Cola has no knowledge.

7.      Coca-Cola objects to the definition of "GINGER ALE" as overbroad, unduly burdensome, and disproportionate to the needs of the case, to the extent it encompasses information about products that were not purchased and/or seen by Plaintiff, are not manufactured or distributed by Coca-Cola, and/or are outside of Coca-Cola's custody and control.

8.      Coca-Cola objects to the definition of "INCLUDE," "INCLUDES," and "INCLUDING" as vague, ambiguous, and confusing.  Coca-Cola will in good faith construe the words "INCLUDE," "INCLUDES," and "INCLUDING" in the Interrogatories to mean that any modifiers that succeed these terms are offered as non-exhaustive illustrations.

9.      Coca-Cola objects to the definition of "MARKET," "MARKETED," "MARKETING," and "MARKETING MATERIALS" as vague, overbroad and unduly burdensome, as it includes advertisements and other documents that are not mentioned in the Complaint and that Plaintiff did not see, and/or upon which Plaintiff did not rely.

10.      Coca-Cola objects to the definition of "REPORTS" as vague and overbroad to the extent it includes "informal" investigations, studies, research, assessments, analyses, reviews, or audits, focus groups, analyses, or assessments without clarification or limitation.

11.      Coca-Cola objects to the definition of "YOU" or "YOUR" as overbroad, unduly burdensome, not proportional to the needs of the case, and inconsistent with the Federal Rules of Civil Procedure.  Coca-Cola's responses will be limited to the named Defendant only.

12.      Coca-Cola objects to Instructions Nos. 19–25 as purporting to impose obligations on Coca-Cola that exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules, and any other relevant rules of practice.  To the extent Coca-Cola responds to the Interrogatories, it will provide only such responses as are determinable and verifiable through the exercise of reasonable diligence.

13.      Coca-Cola objects to the demand for a privilege log as purporting to

DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
CASE NO. 5:17-CV-00603-EJD

10128005v.3

impose obligations on Coca-Cola that exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules, and any other relevant rules of practice.

**SPECIFIC RESPONSES AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES**

**INTERROGATORY NO. 1:** Provide ALL UPC code and SKU numbers associated with EACH SEAGRAM'S GINGER ALE sold in the United States during the CLASS PERIOD.

**RESPONSE TO INTERROGATORY NO. 1**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as duplicative of other discovery requests generally, including Plaintiff's First Request for the Production of Documents. Coca-Cola further objects to this Interrogatory as the phrase "associated with" is vague and ambiguous. Coca-Cola further objects to this Interrogatory to the extent it seeks information that otherwise does not exist in the ordinary course of business. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify the UPC codes for each Pack Type of the Product sold in the United States during the Class Period, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 2:** Identify ALL FLAVOR SUPPLIERS that made flavorings or "natural flavors" used to make ANY of the SEAGRAM'S GINGER ALES sold during the CLASS PERIOD.

**RESPONSE TO INTERROGATORY NO. 2**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as duplicative of Interrogatory No. 8 specifically and other discovery requests generally, including Plaintiff's First Request for the Production of Documents. Coca-Cola further objects to the phrase "flavorings or 'natural flavors'" as vague and ambiguous. Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, to the extent it seeks information about ingredients unrelated to the labeling claim at issue. In accordance with Plaintiff's clarification in her November 9, 2017 letter to Coca-Cola that she is "asking for the identity of the FLAVOR SUPPLIERS that provide the

compound(s) used to provide the ginger flavor in SEAGRAM'S GINGER ALE," Coca-Cola will identify business partners it engaged in developing the flavoring for the Product during the Class Period, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 3:** Identify, by Bates Nos., ALL product labels, boxes, and/or packages in use during the CLASS PERIOD for EACH variety of SEAGRAM'S GINGER ALES. If more than one was used, state the dates on which EACH product label, box, and/or package was, or will be, introduced to and/or removed from SEAGRAM'S GINGER ALES in the market.

**RESPONSE TO INTERROGATORY NO. 3**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as irrelevant, overbroad, unduly burdensome, and neither proportional to the needs of the case, nor relevant to any claim or defense in this Action, to the extent it seeks packaging and labels neither seen nor relied upon by Plaintiff, including hypothetical prospective future packaging and labels and labels that have not been used in retail sale. Coca-Cola further objects to this Interrogatory as the phrase "product labels, boxes, and/or packages in use" is vague and ambiguous. Coca-Cola further objects to this Interrogatory to the extent it seeks information that otherwise does not exist in the ordinary course of business, as Coca-Cola does not maintain records of when its labels are in circulation and has no means of controlling the distribution channels for particular product labels after they leave Coca-Cola's possession. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify the Bates numbers that correspond to the packaging and labels for the Product during the Class Period that could be located after a reasonable search, and the dates those labels were generated, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 4:** Identify ALL products (INCLUDING, the types of products, brands, and sub-brands) that YOU contend compete with SEAGRAM'S GINGER ALES in the market.

**RESPONSE TO INTERROGATORY NO. 4**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as overbroad, unduly burdensome, and neither proportional to the needs of the case, nor relevant to any claim or defense in this Action, to the extent it seeks Coca-Cola's subjective opinions not relied upon by Plaintiff. Coca-Cola further objects to this Interrogatory to the extent it seeks information obtainable from publicly available sources and therefore equally available to both parties, as Plaintiff acknowledged in her November 9, 2017 letter to Coca-Cola. Coca-Cola further objects to this Interrogatory as the word "sub-brands" and the phrase "in the market" are vague and ambiguous. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify ginger ale products that it contends competed with Seagram's® Ginger Ale during the Class Period, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 5:** Identify ALL factors that YOU contend are material to the consumer demand for SEAGRAM'S GINGER ALES and/or consumers' decision to PURCHASE SEAGRAM'S GINGER ALES.

**RESPONSE TO INTERROGATORY NO. 5**: In addition to the foregoing general objections, Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, and neither proportional to the needs of the case, nor relevant to any claim or defense in this Action, to the extent it seeks Coca-Cola's subjective opinions not relied upon by Plaintiff. Coca-Cola further objects to this Interrogatory as the phrase "material to the consumer demand for SEAGRAM'S GINGER ALES" is vague and ambiguous, and to the extent it calls for a legal conclusion. Coca-Cola further objects to this Interrogatory as duplicative of Interrogatory No. 6 specifically and other discovery requests generally. Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify final non-privileged market research,

consumer studies and reports that relate to consumers' preference during the Class Period for ginger ale beverages marketed as "MADE WITH REAL GINGER" and/or variants thereon, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 6:** Identify ALL factors that YOU contend are material to the consumer demand for GINGER ALES and/or consumers' decision to PURCHASE GINGER ALES.

**RESPONSE TO INTERROGATORY NO. 6**: In addition to the foregoing general objections, Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, and neither proportional to the needs of the case, nor relevant to any claim or defense in this Action, to the extent it seeks Coca-Cola's subjective opinions not relied upon by Plaintiff, and to the extent it is not limited to the labeling claim at issue. Coca-Cola further objects to this Interrogatory as the phrase "material to the consumer demand for GINGER ALES" is vague and ambiguous, and to the extent it calls for a legal conclusion. Coca-Cola further objects to this Interrogatory as duplicative of Interrogatory No. 5 specifically and other discovery requests generally. Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify final non-privileged market research, consumer studies and reports that relate to consumers' preference during the Class Period for ginger ale beverages marketed as "MADE WITH REAL GINGER" and/or variants thereon, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 7:** For EACH year in the CLASS PERIOD, state the total number of units of EACH variety of SEAGRAM'S GINGER ALE (e.g., Seagram's Ginger Ale and Seagram's Diet Ginger Ale) sold in EACH state in the United States and the revenue obtained for the same.

**RESPONSE TO INTERROGATORY NO. 7**: In addition to the foregoing general

objections, Coca-Cola objects to this Interrogatory as duplicative of other discovery requests generally, including Plaintiff's First Request for the Production of Documents. Coca-Cola further objects to the term "variety" as vague and ambiguous. Coca-Cola further objects to this Interrogatory to the extent it seeks information that is not in Coca-Cola's possession, custody, or control. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify the number of units of each Pack Type of Seagram's® Ginger Ale sold in the United States during the Class Period, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 8:** For EACH lot number of SEAGRAM'S GINGER ALES sold during the CLASS PERIOD, state the bottler and flavor supplier for EACH and the variety (e.g., Seagram's Ginger Ale and Seagram's Diet Ginger Ale) of SEAGRAM'S GINGER ALES in the lot.

**RESPONSE TO INTERROGATORY NO. 8**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as vague and unintelligble, and as the terms "variety" and "lot number" are vague and ambiguous. Coca-Cola further objects to this Interrogatory as duplicative of Interrogatory No. 2 specifically and other discovery requests generally, including Plaintiff's First Request for the Production of Documents. Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, not proportional to the needs of the case, and not relevant to any claim or defense to the extent it seeks information about ingredients unrelated to the labeling claim at issue. Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Coca-Cola further objects to this Interrogatory to the extent it seeks information that otherwise does not exist in the ordinary course of business, as Coca-Cola does not employ "lot" numbers, nor does it maintain bottler/flavor supplier information for each unit of each Pack Type sold. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify business partners it engaged in

developing the flavoring for and bottling the Product during the Class Period, to the

extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 9:** If YOU contend that YOU have made ANY changes to the SEAGRAM'S GINGER ALES' flavoring, ingredients, or the way that such ingredients are combined or assembled, that RELATE TO the claim that the SEAGRAM'S GINGER ALES are "MADE WITH REAL GINGER," identify ANY such change(s), INCLUDING, when the change(s) occurred and the reason(s) for the change(s).

**RESPONSE TO INTERROGATORY NO. 9**: In addition to the foregoing general

objections, Coca-Cola objects to this Interrogatory as vague and unintelligible. Coca-

Cola further objects to this Interrogatory to the extent it seeks information that is

protected by the attorney-client privilege, work-product immunity, or any other

applicable privilege or immunity. Notwithstanding and without waiving the foregoing

objections, Coca-Cola will identify any changes to the ingredients for flavoring the

Product during the Class Period that relate to the claim that the Product is "MADE WITH

REAL GINGER," to the extent that information can be determined in the exercise of

reasonable diligence.

**INTERROGATORY NO. 10:** Identify (by full name, the present or last known residence address and business address and telephone numbers) ALL of YOUR current and former employees, officers, owners and/or agents, who have or had, as part of their job duties, ANY responsibility for substantiating the claims made on the packaging of the SEAGRAM'S GINGER ALES or in marketing materials RELATED TO SEAGRAM'S GINGER ALES, and describe those responsibilities for EACH PERSON.

**RESPONSE TO INTERROGATORY NO. 10**: In addition to the foregoing general

objections, Coca-Cola objects to this Interrogatory as overbroad, unduly burdensome, and

neither proportional to the needs of the case, nor relevant to any claim or defense in this

Action, to the extent this Interrogatory seeks information about "marketing materials" not

relied upon by Plaintiff. Coca-Cola further objects to the Interrogatory as irrelevant,

overbroad, and unduly burdensome to the extent it seeks personal information related to

"ALL" employees with "ANY" responsibility for substantiating claims that appear on the

Product, and to the extent it is not limited to the labeling claim at issue. Coca-Cola

further objects to this Interrogatory as the phrase "responsibility for substantiating the claims" is vague and ambiguous.  Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.  Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify a person or persons with knowledge of or experience with substantiation for the statement that Seagram's® Ginger Ale is "MADE WITH REAL GINGER" during the Class Period, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 11:** Identify the methodology by which DEFENDANT tested, analyzed, or evaluated whether the SEAGRAM'S GINGER ALES are "MADE WITH REAL GINGER," INCLUDING the laboratories, facilities, or institutions where the SEAGRAM'S GINGER ALES and/or the flavorings used were researched, developed, and tested and the REPORTS produced.

**RESPONSE TO INTERROGATORY NO. 11**:  In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as vague and unintelligible.  Coca-Cola further objects to this Interrogatory as duplicative of other discovery requests generally, including Plaintiff's First Request for the Production of Documents.  Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.  Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify business partners it engaged in developing the flavoring for the Product or testing the ginger content during the Class Period, and all tests Coca-Cola conducted or received during the Class Period relating to whether the Product is "MADE WITH REAL GINGER," to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 12:** Identify ALL evidence (INCLUDING ALL DOCUMENTS and/or witnesses with relevant knowledge) that forms the basis AND/OR supports the claim on the packaging of the SEAGRAM'S GINGER ALES that they are "MADE WITH REAL GINGER."

**RESPONSE TO INTERROGATORY NO. 12**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case, to the extent it seeks "ALL DOCUMENTS" and "ALL . . . witnesses" without temporal or other limitation. Coca-Cola further objects to this Interrogatory as duplicative of other discovery requests generally, including Plaintiff's First Request for the Production of Documents. Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity. Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify a person or persons with knowledge of or experience with substantiation for the statement that the Product is "MADE WITH REAL GINGER" during the Class Period, and will identify all tests Coca-Cola conducted or received during the Class Period demonstrating that the Product is "MADE WITH REAL GINGER," to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 13:** State the formula (i.e., the ingredients and the quantity of EACH ingredient used) used to make EACH of the SEAGRAM'S GINGER ALES during the CLASS PERIOD. If more than one formula was used, state the dates on which the formula was or will be used to make the SEAGRAM'S GINGER ALES.

**RESPONSE TO INTERROGATORY NO. 13**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as duplicative of Interrogatory No. 14 specifically, and other discovery requests generally, including Plaintiff's First Request for the Production of Documents. Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks trade secrets, to the extent it seeks information about ingredients unrelated to the labeling claim at issue, and to the extent it seeks information about hypothetical future changes to the Product formula. Coca-Cola further objects to this Interrogatory to the extent it seeks information not in the possession, custody, or control of Coca-Cola.

Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify the ingredients used in flavoring the Product during the Class Period, and the dates of changes to the ingredients for flavoring the Product during the Class Period that relate to the statement that the Product is "MADE WITH REAL GINGER," to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 14:** State the formula (i.e., the ingredients and the quantity of EACH ingredient used) used by EACH FLAVOR SUPPLIER to make EACH of the flavorings and/or "natural flavors" used to make EACH of the SEAGRAM'S GINGER ALES during the CLASS PERIOD. If more than one formula was used, state the dates on which the formula was or will be used in the making of each of the flavorings and/or "natural flavors" used the make the SEAGRAM'S GINGER ALES.

**RESPONSE TO INTERROGATORY NO. 14**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as vague and unintelligble, and as the phrase "flavorings and/or 'natural flavors'" is vague and ambiguous.  Coca-Cola further objects to this Interrogatory as duplicative of Interrogatories Nos. 2, 8, and 13 specifically, and other discovery requests generally, including Plaintiff's First Request for the Production of Documents.  Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks trade secrets, to the extent it seeks information about ingredients unrelated to the labeling claim at issue, and to the extent it seeks information about hypothetical prospective changes to the Product formula.  Coca-Cola further objects to this Interrogatory to the extent it seeks the production of information not in the possession, custody, or control of Coca-Cola.  Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify the ingredients used in flavoring the Product during the Class Period, and will identify the dates of changes to the ingredients for flavoring the Product during the Class Period that relate to the statement that the Product is "MADE WITH REAL GINGER," to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 15:** What is the meaning of the phrase "MADE WITH REAL

GINGER" on the SEAGRAM'S GINGER ALES?

**RESPONSE TO INTERROGATORY NO. 15**: In addition to the foregoing general objections, Coca-Cola objects to this Interrogatory as vague and to the extent it seeks a legal conclusion.  Coca-Cola further objects to this Interrogatory as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks trade secrets, and to the extent it seeks information not relevant to any claim or defense in this action, to the extent it seeks information equally available to both parties, and to the extent it seeks Coca-Cola's subjective opinions not seen or relied upon by Plaintiff.  Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.  Notwithstanding and without waiving the foregoing objections, Coca-Cola will identify its understanding of the phrase "MADE WITH REAL GINGER" on the Product during the Class Period, to the extent that information can be determined in the exercise of reasonable diligence.

**INTERROGATORY NO. 16:**   Provide ALL reasons that YOU decided to MARKET the SEAGRAM'S GINGER ALES with the representation "MADE WITH REAL GINGER."

**RESPONSE TO INTERROGATORY NO. 16**: In addition to the foregoing general objections, Coca-Cola further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks trade secrets, and to the extent it seeks Coca-Cola's subjective opinions not relied upon by Plaintiff.  Coca-Cola further objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity.  Notwithstanding and without waiving the foregoing objections, Coca-Cola will describe the timing and circumstances of the addition of the statement "MADE WITH REAL GINGER" on Seagram's® Ginger Ale and any motivations therefor during the Class Period, to the extent that information can be

determined in the exercise of reasonable diligence.

Dated: December 6, 2017

  /s/ Steven A. Zalesin
Steven A. Zalesin (*pro hac vice*)
Michelle W. Cohen (*pro hac vice)*
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
Facsimile: 212-336-2222
sazalesin@pbwt.com
mcohen@pbwt.com

Tammy B. Webb
Shook Hardy & Bacon LLP
One Montgomery Tower, Suite 2700
San Francisco, CA 94104
Telephone:  415-544-1904
Facsimile:  415-391-0281
tbwebb@shb.com

*Attorneys for Defendant The Coca-Cola Company*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2017, I caused a copy of the foregoing document to be served by email on the following counsel for Plaintiff:

    /s/ Lauren Capaccio

    Lauren Capaccio