**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469
adam@gutridesafier.com
seth@gutridesafier.com

MATTHEW T. MCCRARY (admitted *pro hac vice*)
265 Franklin St, Suite 1702
Boston, MA 02110
Telephone: (214) 502-2171

Attorneys for *Plaintiffs in-Intervention*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL, on behalf of herself, the general public and those similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br>THE COCA COLA COMPANY,<br><br>Defendant. | CASE NO. 5:17-CV-00603-EJD<br><br>**PLAINTIFFS-IN-INTERVENTION'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Edward J. Davila<br><br>May 16, 2019 at 9:00 a.m.<br><br>San Jose Courthouse, Courtroom 4 - 5th Floor |

-1-

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................................1

II.  STATEMENT OF FACTS....................................................................................................2

    A.   Background ....................................................................................................................2
    B.   New Plaintiffs Were Misled By the Same False Advertising at Issue in
          Russell's Case. ...............................................................................................................4

III. ARGUMENT .........................................................................................................................6

    A.   Legal Standard ..............................................................................................................6
    B.   New Plaintiffs May Intervene As a Matter of Right Under Rule 24(a). .....................6
          1.   New Plaintiffs' Intervention Is Timely. ............................................................7
          2.   New Plaintiffs Have Significant, Protectable Interests, and the
               Disposition of This Action May Impede Their Ability to Protect
               Their Interest. .....................................................................................................9
          3.   Russell May Not Adequately Represent New Plaintiffs' Interests. ................10
    C.   In the Alternative, This Court Should Permit New Plaintiffs To Intervene
          Under Rule 24(b). ........................................................................................................11

IV.  CONCLUSION.....................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)..........................10

*China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018)............................................1, 10

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011)..........................................................................................................................9

*Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir.1989) ..................11

*Dixon v. Cost Plus*, 2012 WL 2499931 (N.D. Cal. June 27, 2012) ............................11

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995)........7

*In re Cmty. Bank of N. Virginia*, 418 F.3d 277 (3d Cir. 2005) ....................................9

*In re JDS Uniphase Corp. Sec. Litig.*, 2005 WL 2562621 (N.D. Cal. Oct. 12, 2005)...............10

*In re Melridge, Inc. Sec. Litig.,* 1988 U.S. Dist. LEXIS 14392 (D. Or. Aug. 11, 1988) ...........................................................................................................................9

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ...................................2

*MGM Grand Hotel, Inc. v. Smith-Hemion Prods., Inc.,* 158 F.R.D. 677, 680 (D. Nev. 1994)...................................................................................................................12

*Munoz v. PHH Corp.,* 2013 U.S. Dist. LEXIS 106004 ..............................................8, 9

*Munoz v. PHH Corp.*, 2013 WL 3935054 (E.D. Cal. July 29, 2013) ..........................11

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)..........................................................7

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ........10

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) .............................................10

*Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193 (S.D.N.Y.1992)..............................11

*United States v. State of Oregon*, 745 F.2d 550 (9th Cir. 1984) ..............................7, 8

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989) *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990)......................................................................................12

*W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701 (9th Cir. 2011) .....................................................................................................8

*Wood v. Motorola, Inc.,* 587 F.Supp. 531 (D.Haw.1984) ...........................................12

*Yniguez v. State of Arizona*, 939 F.2d 727 (9th Cir. 1991) ..........................................7

## RULES

Fed. R. Civ. P. 24(a)........................................................................................................6

Fed. R. Civ. P. 24(b)(1)(B). .....................................................................................6, 12

Fed. R. Civ. P. Rule 24(b).............................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

On May 16, 2019 at 9:00 a.m., in Courtroom 4, on the 5th floor of the United States District Court for the Northern District of California (San Jose Division), David Swartz, Ashley Salcedo, Scott Miller, Isabelo Pascual, Florin Carlin, and Kristina Hoffman (collectively, "New Plaintiffs"), will, and hereby do, move, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in the above captioned matter and to file the proposed Complaint-in-Intervention attached hereto as Exhibit 1 to the Declaration of Seth Safier, filed concurrently.

Plaintiff Jackie Fitzhenry-Russell does not oppose that New Plaintiffs be granted leave to intervene.

Plaintiff Jackie Fitzhenry-Russell concurrently seeks leave to file a consolidated amended complaint. The proposed consolidated amended complaint is the same as the proposed Complaint-in-Intervention attached as Exhibit 1 to the Declaration of Seth Safier. New Plaintiffs do not oppose that motion.

This motion is based on the following memorandum of points and authorities, the accompanying declaration of Seth Safier, the complete records and files in this action, and all matters of which the Court may take notice.

## I.      INTRODUCTION

New Plaintiffs respectfully seek leave to intervene in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure. New Plaintiffs satisfy each of the requirements to intervene as a matter of right. If this Court finds otherwise, it should, nevertheless, exercise its discretion to permit intervention.

New Plaintiffs each purchased Seagram's ginger ale, falsely and deceptively advertised as being "Made with Real Ginger" in recent years. They are all therefore members of the proposed class defined in the December 23, 2016 complaint, and the January 8, 2018 operative first amended complaint filed by Plaintiff Jackie Fitzhenry-Russell ("Russell"), *i.e.*, "All persons who, between December 23, 2012 and the present, purchased any of Defendants' Product." Dkt. #1 at ¶ 63; Dkt. # 55 at ¶ 63. Like Russell, New Plaintiffs all purchased the Seagram's ginger ale on the belief that it was "Made with Real Ginger", and later learned that Seagram's ginger ale has only a miniscule amount of ginger flavor extract, a fact that Defendant has concealed. Like Russell and other members of the class, New Plaintiffs have suffered damages as a result of Defendant's false and misleading advertisements and have a direct interest in the outcome of this case.

New Plaintiffs also seek to intervene as additional class representatives to address concerns relating to Russell's ability to obtain and maintain standing, certification of a nationwide class and several multi-state subclasses. New Plaintiffs reside all over the country, and have purchased Seagram's ginger ale in numerous different states,[1] which in turn share elements in common with the consumer protection laws of many more states, as well as the common law unjust enrichment claims nationwide.

Significant rights are at stake and New Plaintiffs will be prejudiced if not permitted to intervene. Per a June 11, 2018 Supreme Court decision, while the statute of limitations tolls from the date of the Complaint, that tolling provision does not carry over into a new class action. *See generally China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018) (reversing the Ninth Circuit).

---

[1] Plaintiffs continue to receive contacts from other potential plaintiffs in other states. Plaintiffs' counsel also represent other plaintiffs, including those from New York, who do not currently seek intervention.

While all New Plaintiffs have purchased Seagram's ginger ale in the last year or two, many have been purchasing for much longer, as have millions of consumers nationwide. To deny these New Plaintiffs the right to intervene to ensure the interests of those consumers are protected, Defendant will be rewarded for its efforts to conceal the truth about its Seagram's ginger ale.

Finally, should the Court deny New Plaintiffs the right to intervene, each will be forced to file a separate lawsuit, which will be much more disruptive to the parties and impact judicial economy.

## II.     STATEMENT OF FACTS

### A.     Background

Russell filed this lawsuit on December 23, 2016, alleging that Defendant The Coca-Cola Company ("Defendant" or "Coke") falsely advertised Seagram's ginger ale as being "Made with Real Ginger." The truth is that it was actually not made with real ginger root, but rather a miniscule amount—at best a few parts per million—of ginger flavor extract.

Defendant moved to dismiss, but the Court denied it in all respects except one. Dkt. #48 at 19.

Russell has yet to move for class certification. Germane to the instant motion is this Court's decision to deny Defendant's motion to dismiss Plaintiff's "class claims on behalf" of "all persons" who purchased Seagram's Ginger Ale because they encompass sales outside of California to non-California consumers that are beyond the reach of California's consumer protection laws. Dkt.# 48, p. 8. Citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), this Court noted at "this stage in the proceedings, neither party has undertaken the governmental interest analysis and thus it would be premature to dismiss the class action claims at this stage." *Id.*

Russell will soon be filing her motion for class certification, seeking certification of a nationwide class and California subclass. Defendant has announced its intention to challenge Ms. Russell on adequacy and typicality grounds. It will suggest that Ms. Russell was not aggrieved

because it claims she testified she did not rely on the "Made with Real Ginger" label before she purchased Seagram's ginger ale.[2] For example, Ms. Russell testified as follows:

> MS. COHEN: Sitting here today, you cannot recall, specifically, whether you saw the "made with real ginger" claim on that one pack that you purchased in 2014, when you first bought it?
> THE WITNESS: Yes. I think that it did. But, I can't absolutely say

(Safier Decl., Ex. 3, 102:5-12.) Coke will further argue that Ms. Russell knew, as early as 2014, that Canada Dry was not "made from real ginger" due to the following testimony: "Q. And was it in 2014 that you discovered that there was no ginger in Canada Dry? THE WITNESS: Yes." (Id., 93:16-20.)

Plaintiff disputes Coke's interpretation of Ms. Russell's testimony. Coke's attorney did a nice job of confusing Ms. Russell during her deposition, but she later clarified her testimony. For example, with regard to her Canada Dry purchases, Ms. Russell testified that she meant 2016, not 2014, which was supported by her further testimony that she stopped purchasing Canada Dry at that point. In fact, she continued purchasing it until late 2016. She additionally testified that she relied on the front of the label, but did not start reading the back of the label until 2016 when she learned of about the falsity of Canada Dry's label. Much of Ms. Russell's confusion was, in fact, due to Coke's attorney's refusal to differentiate between the front and back of the labels. Ms. Russell testified:

> A. Well, I remember that there was Canada Dry here and there was Seagram's here. Now, the Canada Dry was all gone. It was empty. So I went over to Seagram's, I looked at the front of it. Okay, it's got ginger root. Got it.
> ***
> Q. Okay. But you later testified that the date was mistake; is that correct?
> A. Right. I never looked at any labels until 2016.
> Q. And when you say "looked at labels," you mean the back of the labels?
> A. I mean the back of the label. I don't mean like when you see the product in the store. That's the front of the label.
> Q. So, you are talking about the ingredients; correct?
> A. Yes.
> ***

---

[2] Per the parties' agreement, Ms. Russell has yet to review or correct her deposition transcript. Dkt.# 72.

1
2

    Q. And before you spoke with attorneys from my firm in sometime late in 2016, was it always your practice to read the front of the ginger ale labels before you purchased them?
A. Yeah.
Q. That includes Seagram's Ginger Ale?
A. Yes.

3
4
5

(Id., 104, 152-153.)[3] Regarding Defendant's argument that Plaintiff did not suffer any damages

6

because she testified she did not pay "too much or too little," this too is based on witness

7

confusion. Ms. Russell is not an attorney and she was trying to explain that the price of the

8

Seagram's ginger ale was in line with the rest of the sodas on offer and the Canada Dry that she

9

had been purchasing. She stated:

10
11
12
13
14
15
16

    Q. And what I want to know is: By stating you paid too much or too little, what did you mean?
A. I meant it was right in there with the rest of them. If it -- if I had known that it did not have anything in it, but I didn't know that. I didn't know.
Q. So, when you say: "Right in there with the rest of them," do you mean that the price was right in there with the rest of them?
A. Yeah.
Q. Right. And now that you know that the Seagram's product did not contain real ginger root, going back in time would you have purchased that product?
A. No.

17

(Id., 149-150.)

18

    So, although Ms. Russell has a defense to the challenges Coke intends to mount to her

19

adequacy and typicality, the fact Coke could challenge her adequacy as a class representative

20

counsels in favor of allowing additional potential representatives to intervene. New Plaintiffs

21

have joined Ms. Russell in this motion, seeking to be class representatives so that they may

22

represent consumers in their states, including California, if Ms. Russell is not found to be an

23

adequate or typical, as well as other states with similar laws and ensure their interests with respect

24

to the statute of limitations are protected.

25

    **B.**    **New Plaintiffs Were Misled By the Same False Advertising at Issue in Russell's Case.**

26

    There are six New Plaintiffs, all of whom were misled in the same ways as Russell.

27
28

---

[3] and was not damaged because she did not think she paid "too much or too little" for the product

Until he discovered the truth of the matter, David Swartz regularly purchased Seagram's ginger ale during the class period. He resides in Oakland, California. Mr. Swartz purchased Seagram's ginger ale because he believed that the real ginger in the beverage helped him and other persons in his family with stomach related issues.

Ashley Salcedo is a resident of Harrisburg, Pennsylvania. She has been purchasing Seagram's ginger ale for years at her local Walmart, as well as other stores nearby, on the belief that it contains real ginger root. She specifically purchased the Seagram's ginger ale for the health properties of ginger, i.e., helping with stomach flu, cold, nausea, anti-inflammation, and digestive regulation.

Scott Miller resides in Auburndale, Florida. Until early 2015, he had been purchasing Seagram's ginger ale every month. He purchased Seagram's for the real ginger and carefully read the label on Seagram's ginger ale. He stopped purchasing after he tried another small batch ginger ale, which made him question the veracity of Defendant's "Made with Real Ginger" representation.

Isabelo Pascual resides in Los Angeles, California. Over the past few years, he has purchased Seagram's ginger ale in 2 liter bottles from Ralph's grocery and 7-11 stores near his house. He purchased Seagram's for the real ginger and carefully read the label on Seagram's ginger ale.

Florin Carlin lives in St. Petersburg, Florida. For the past two years, she has been purchasing Seagram's approximately every 2 weeks from the Publix grocery store in her neighborhood. Before that time, she would occasionally purchase Seagram's ginger ale. About two years ago, she switched from other carbonated beverages to Seagram's because of the "Made With Real Ginger" representation. She purchased Seagram's for the ant-inflammatory and stomach calming benefits associated with ingesting real ginger root. However, she stopped purchasing recently when she learned of the truth of the matter from news reports regarding the Canada Dry litigation.

Kristina Hoffman lives in Medford, New Jersey with her two young daughters, one of which has digestive issues. Since moving to New Jersey a few years ago, she has been purchasing Seagram's approximately every week or two, generally from the Acme and Shoprite grocery stores in her neighborhood. She typically, but not exclusively, purchases the screw top bottle format, as opposed to cans. Before that time, she would occasionally purchase Seagram's ginger ale, among other ginger ales. Shortly after she returned to Medford from California, a few years ago, she switched from other carbonated beverages to Seagram's because of the "Made With Real Ginger" representation. She purchased Seagram's for herself, and for her two young daughters, based upon the anti-inflammatory and stomach calming benefits associated with ingesting real ginger root. However, she curtailed purchasing Seagram's recently after she learned of the truth of the matter from news reports on the Canada Dry litigation.

**III.    ARGUMENT**

### A.    Legal Standard

Federal Rule of Civil Procedure Rule 24(a), referred to as "mandatory intervention" or "intervention by right," requires that a court permit a party to intervene where that party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Rule 24(b)(1), which involves "permissive intervention," authorizes the Court to permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). New Plaintiffs meet all of the requirements for both mandatory and permissive intervention.

### B.    New Plaintiffs May Intervene As a Matter of Right Under Rule 24(a).

An applicant seeking to intervene as of right under Rule 24 must satisfy four requirements: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to

protect its interest; and (4) the existing parties may not adequately represent the applicant's

interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). In applying this rule, the Ninth

Circuit has further explained that:

> A liberal policy in favor of intervention serves both efficient resolution of issues
> and broadened access to the courts. By allowing parties with a *practical* interest in
> the outcome of a particular case to intervene, we often prevent or simplify future
> litigation involving related issues; at the same time, we allow an additional
> interested party to express its views before the court.

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995) (emphasis

added). Thus, while an applicant seeking to intervene has the burden to show that these four

elements are met, the requirements are broadly interpreted in favor of intervention. *See id*. at

1493. As New Plaintiffs easily satisfy all four requirements, their motion for intervention as of

right should be granted.

### 1.      New Plaintiffs' Intervention Is Timely.

Timeliness is left to the sound discretion of the trial court. *See Yniguez v. State of Arizona*,

939 F.2d 727, 731 (9th Cir. 1991). In determining timeliness under Rule 24, a court should

consider "(1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for

and the length of the delay." *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

A court should not base its decision merely on the length of time the case has been pending, but

rather, it must consider all the circumstances relating to timeliness in the case. *Id.* The most

important consideration in deciding whether a motion for intervention is timely is whether any

delay in bringing the motion has prejudiced the existing parties to the case. *Id.* at 553. A court

also should construe the timeliness requirement broadly in favor of the party seeking intervention

and "the timeliness requirement for intervention as of right should be treated more leniently than

for permissive intervention because of the likelihood of more serious harm." *Id.* at 552.

Here, New Plaintiffs are timely in seeking to intervene. This Court has not set a deadline

for adding claims and parties, let alone a trial date. Discovery is still open. A class has not been

certified yet. While Defendant will no doubt complain that this motion to intervene comes after

the case has been pending for two years, that alone is not a basis to deny this motion. *See United*

1  *States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) ("Mere lapse of time alone is not

2  determinative."); *Munoz v. PHH Corp.,* 2013 U.S. Dist. LEXIS 106004, at *21-22 (E.D. Cal. July

3  26, 2013) (rejecting arguments that motion to intervene in class action untimely even though case

4  had been pending for over five years, because "[d]iscovery is ongoing" and "very little has

5  actually been litigated"). Rather, this motion comes at a natural juncture in this litigation.

6       No significant delay will be caused by the intervention. The class certification hearing is

7  not set until July 11, 2019. Plaintiffs have not filed their opening brief. When they do, Defendants

8  have ample time to depose New Plaintiffs and brief all class certification issues.

9       Nor can Defendant show prejudice. "To determine whether intervention prejudices the

10  other parties to a case, the court compares the harm from allowing intervention at a later stage of

11  the proceedings with what would have occurred no matter when the applicant was allowed to

12  intervene." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701,

13  710 (9th Cir. 2011). *See also Munoz v. PHH Corp.,* 2013 U.S. Dist. LEXIS 106004 at *24

14  ("prejudice in this context is the harm that arises from late intervention as opposed to early

15  intervention"). In other words, to show prejudice, Defendant must show it would be prejudiced

16  now in ways it would not have been had New Plaintiffs sought intervention sooner. Defendant

17  cannot do so.

18       *Munoz* is on point. There a new plaintiff sought to intervene at the time the court held a

19  hearing on the plaintiff's motion for class certification. *Id.* at *4, 9-10. The intervenor proposed

20  adopting allegations of the complaint in entirety, and sought to intervene "for the sole purpose of

21  tethering the already-pled …allegations to a named class representative." *Id.* at *17-18. The court

22  found her motion timely, despite the fact that the case had been pending for five years. *Id.* at * 21.

23  The court rejected the defendant's argument that class certification had "spanned three year

24  [sic]", noting that for ten of those months, the stay was to await resolution of a matter before the

25  Supreme Court. *Id.* at *22. The court also rejected the defendant's argument that intervention

26  would prejudice them in that it would require them to take her discovery and brief additional class

27  certification issues, finding that to amount to "little-to-no prejudice." *Id.* at *25. Here, as in

28

*Munoz*, the allegations are the same, and any new discovery to be propounded will either be discovery that Russell would also propound or that New Plaintiffs would propound in a separate litigation.

Finally, the inclusion of New Plaintiffs in this litigation, in connection with the class certification motion, will arguably expedite the proceeding. Should this Court find Russell to be atypical or inadequate to represent California and/or out-of-state purchasers, the analysis can be conducted here and now, rather than in a later class certification briefing that will arise out of the lawsuits New Plaintiffs will inevitably file if they are not permitted to intervene.

> **2.    New Plaintiffs Have Significant, Protectable Interests, and the Disposition of This Action May Impede Their Ability to Protect Their Interest.**

To demonstrate a sufficient interest in a motion to intervene, prospective intervenors must establish that they have a "significant protectable interest" such that "disposition of the action may … impair or impede the [intervenors'] ability to protect [their] interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). These two prongs are automatically satisfied where, as here, a person seeks to intervene in a class action of which he is a member of a putative class. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.") *See also Munoz*, 2013 U.S. Dist. LEXIS 106004 at *35 (noting that a complaint that "alleges claims that span a class period encompassing [intervenor's] claims. . . provide a *significant* protectable interest") (emphasis added); *In re Melridge, Inc. Sec. Litig.,* 1988 U.S. Dist. LEXIS 14392, at *4 (D. Or. Aug. 11, 1988) ("Denying [intervenor] leave to intervene and forcing him to start his own suit will, as a practical matter, impair [intervenor's] and the class members' who he seeks to represent interests in the suit.").

The interests here, however, are even more serious than in the ordinary class action, as New Plaintiffs seek to ensure that that consumers nationwide are not stripped of their rights to recover for Defendants' false advertising should this Court declines to certify a multi-state or

nationwide class action. Russell filed her complaint in 2013 on behalf of a nationwide class; per well-settled authority, "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018) (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)). Last month, however, the Supreme Court clarified that that while class members could obtain the benefit of tolling if they intervene or file an individual suit, the holding in American Pipe "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id*. at 128. Thus, New Plaintiffs seek to intervene to ensure consumers in their states and nationwide may recover based on the December 2016 filing date. Should they be denied the right to intervene, millions of consumers may be stripped of their rights and Defendant will experience a windfall.

### 3.     Russell May Not Adequately Represent New Plaintiffs' Interests.

In determining whether a would-be intervenor's interests will be adequately represented by an existing party, "courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 810 (9th Cir. 2001). Additionally, the burden of showing inadequacy is "'minimal,' and the applicant need only show that representation of its interests by existing parties '*may be*' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972) (emphasis added). *See also In re JDS Uniphase Corp. Sec. Litig.*, 2005 WL 2562621 (N.D. Cal. Oct. 12, 2005) (defendants' "attack on the standing of the current named [p]laintiff to bring claims on behalf of the [] Subclass actually bolsters the motion to intervene, because it illustrates why [intervenor] seeks, in an abundance of caution, to intervene to protect its interests").

Here, New Plaintiffs may not be adequately represented by Russell. While their claims with respect to the "MADE WITH REAL GINGER" representation on the Seagram's ginger ale

product are identical, Russell only purchased the Seagram's ginger ale in California. New

Plaintiffs purchased the product in different states. This Court may find that Russell cannot alone

represent purchasers whose state consumer protection laws differ from the laws of California, and

thus, the New Purchasers ensure that other states' consumers are represented. More importantly,

this Court could find that Ms. Russell cannot adequately represent the interests of California

consumers.

Intervention under circumstances such as this one should be granted as a matter of right.

*See, e.g., Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1405, fn. 1 (9th Cir. 1989)

("[A] member of a class should have the right to intervene in a class action if he can show the

inadequacy of the representation of his interest by the representative parties before the court");

*Munoz v. PHH Corp.*, 2013 WL 3935054 (E.D. Cal. July 29, 2013) (intervention granted as a

matter of right where intervenor could represent class members with different statute of

limitations concerns); *Dixon v. Cost Plus*, 2012 WL 2499931 (N.D. Cal. June 27, 2012)

(intervention granted as a matter of right where intervenor raised concerns about putative

representative's adequacy); *Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193 (S.D.N.Y.1992)

("Intervention of class representatives to ensure adequate class representation is highly

desirable.").

**C.      In the Alternative, This Court Should Permit New Plaintiffs To Intervene Under Rule 24(b).**

Rule 24(b) allows permissive intervention when (1) application is timely; (2) the proposed

intervenor and the existing parties present common questions of law or fact; and (3) intervention

will neither unduly delay nor prejudice the rights of the original plaintiffs or defendants. *See* Fed.

R. Civ. P. 24(b).

For the reasons above, New Plaintiffs have satisfied the first and third prongs of

timeliness and lack of delay or prejudice.

With respect to the second requirement under Rule 24(b), New Plaintiffs' claims raise

identical issues of law and fact to those in Russell's operative first amended complaint. Moreover,

Rule 24 does not require that all questions of fact and law be identical, but rather, it merely

requires that the intervenor have "*a* claim or defense that [it] shares with the main action." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). Here, where all the key factual issues underlying New Plaintiffs' claims are identical to Russell's, the second prong is satisfied.

Finally, in evaluating whether to grant a Rule 24(b) request for intervention, this Court should consider the interests of judicial economy. *See Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989) *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990) ("judicial economy is a relevant consideration in deciding a motion for permissive intervention"). In *Venegas*, the Ninth Circuit considered the consequences of a district court's refusal to grant permissive intervention where that refusal would result in a subsequent lawsuit being filed. *Id.* The Ninth Circuit concluded that because the parties "would be required to make a record that would consist of facts and arguments that are already before this court…[and] would be forced to litigate before a judge who lacks the long experience with this case," the interests of judicial economy would be better served by allowing intervention. *Id.* (citing *Wood v. Motorola, Inc.,* 587 F.Supp. 531, 532– 33 (D.Haw.1984))*; see also MGM Grand Hotel, Inc. v. Smith-Hemion Prods., Inc.,* 158 F.R.D. 677, 680 (D. Nev. 1994) (considering judicial economy in decision to allow for permissive intervention). Accordingly, New Plaintiffs should be permitted to intervene.

## IV.   CONCLUSION

For the foregoing reasons, New Plaintiffs respectfully request they be permitted to file the complaint in intervention attached as Exhibit 1 and join in Plaintiff Russell's request for leave to file an identical consolidated amended complaint.

Dated: January 29, 2019                                          **GUTRIDE SAFIER LLP**


   /s/ Seth Safier/s/
   Adam J. Gutride, Esq.
   Seth A. Safier, Esq.
   100 Pine Street, Suite 1250
   San Francisco, California 94114


        Attorneys for Plaintiff Jackie Fitzhenry-Russell

-12-