**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile: (415) 449-6469

MATTHEW T. MCCRARY (admitted *pro hac vice*)
265 Franklin St, Suite 1702
Boston, MA 02110
Telephone: (214) 502-2171

*Counsel for Plaintiff and Plaintiffs-In-Intervention*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE FITZHENRY-RUSSELL, on behalf of herself, the general public and those similarly situated, | Case No. 5:17-cv-00603-EJD |
| Plaintiff, | **PLAINTIFFS' MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | **Date: June 13, 2019**<br>**Time: 9:00 a.m.** |
| The COCA-COLA COMPANY., Defendant. | **Courtroom: 4**<br>**Judge: Honorable Edward J. Davila** |

**<u>TABLE OF CONTENTS</u>**

A.    Introduction ................................................................................. 1

B.    Background and Settlement Negotiations ................................... 2

C.    The Benefits Conferred on the Settlement Class Under the Proposed Settlement of this Action ................................................................................. 5

    1.    Changed Practices ................................................................. 5

    2.    Monetary Relief ................................................................... 6

    3.    Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards ................................................................................. 6

D.    The Settlement Should Be Approved. ....................................... 7

    1.    Legal Framework ................................................................. 7

    2.    Fairness, Adequacy, and Reasonableness of Settlement ...... 8

        (a)    Procedural Concerns ................................................. 8

            i.    Adequate Representation of the Class ............ 8

            ii.    Arm's Length Negotiations ............................ 8

        (b)    Substantive Concerns ............................................... 10

            i.    Strength of Plaintiffs' Case and Risk of Continuing Litigation .... 10

            ii.    Effectiveness of Distribution Method ........... 14

            iii.    Effectiveness of Distribution Method ........... 14

            iv.    Terms of Attorneys' Fees .............................. 15

            v.    Supplemental Agreements ............................. 15

            vi.    Equitable Treatment of Class Members ......... 15

            vii.    Plaintiffs' Counsel's Experience ................... 15

            viii.    Past Distributions ......................................... 16

E.    The Settlement Class Should Be Conditionally Certified ......... 16

F.    Adequacy of Notice ................................................................. 21

G.    Approval of the Attorneys' Fees and Expenses. ....................... 23

    1.    Plaintiffs' Fee Request is Reasonable Percentage of the Common Fund ............ 23

    2.    Plaintiff's Fee Request is Reasonable under a Lodestar Cross-Check. ............ 25

3.     Plaintiffs' Counsel Should be Awarded Costs.............................................31

H.    The Incentive Award for The Class Representatives is Reasonable. ...............................31

I.    Dates for the Final Approval Process ................................................................32

J.    Conclusion ....................................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007).........................................................................................................10

*Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150 (2005) ....................................14

*Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349 (N.D. Ill. 1974)..................29

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991) ......................................................25

*Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564 (N.D. Cal. June 6, 2013) ......................15, 25

*Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1282-1283 (S.D. Ohio 1996) ..................................29

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................................13

*Cazares v. Sanez*, 208 Cal.App. 3d 279 (1989) ..........................................................................30

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)...............................................................................................................................13

*Downey Cares v. Downey Community Dev. Comm'n,* 196 Cal. App. 3d 983 (1987)................29

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014).........................................28

*Embry v. Acer America Corp.*, C 09-01808 JW, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) ...............................................................................................................................32

*Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018)........16, 17, 21

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, CV06-5342 DSF (SHX), 2008 WL 618893 (C.D. Cal. Feb. 27, 2008)..........................................................32

*Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ..............28

*Hanlon v. Chrysler Corp.*, 150 F.3d 1101 (9th Cir. 1998) ..............................................7, 8, 10

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011), *aff'd,* 473 F. App'x. 716 (9th Cir. 2012) ...................................................................................................................23

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045  (N.D. Cal. Dec. 17, 2018) ......................................................................................8

*Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ........................................................14

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ..........................14, 19

*In re Biolase, Inc. Sec. Litig.*, No,. SACV 13-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)...................................................................................................13

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 21990, *43 (N.D. Cal. February 11, 2019) .......................... 19

*In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017) ............................ 25

*In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, 2014 WL 1266091 (N.D. Cal. Mar. 26, 2014)................................................................................. 22

*In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018).......................... 18, 19, 20

*In re Mego Financial Corp,* 213 F. 3d 454 (9th Cir. 2000)................................................ 7, 10, 32

*In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)............................................................................................... 15

*In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................... 13, 16

*In re Optical Disk Drive Prod. Antitrust Litig.,* 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016)........................................................................................................................ 28

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)......................................................... 23

*In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078 (N.D.Cal. 2007) .......................... 22

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ............... 28

*In re Wireless*, 253 F.R.D. 630 (S.D. Cal. 2008)...................................................................... 16

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ........................................................ 15

*Koller v. Med Foods, Inc.*, Case No. 14-cv-2400-RS, ECF No. 169 (N.D. Cal., Aug. 29, 2018) ............................................................................................................... 20

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ........................................................ 24

*Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918 (9th Cir. 2014) *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014) ..................................................................... 23

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2nd Cir. 1998) ................................................ 28

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998).................................... 7, 10, 13

*Lipuma v. American Express Company*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................... 12

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ................................................................................................ 11

*Maria P. v. Riles*, 43 Cal. 3d 1281 (1987) ................................................................................ 29

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir.2007) ................................ 15

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................................ 20

*Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338 (9th Cir. 1980) ........................................ 21

*Merola v. Atlantic Richfield Company*, 515 F.2d 165 (3d Cir. 1975) ...................................... 29

PLAINTIFFS' MOTION FOR APPROVAL
OF CLASS ACTION SETTLEMENT

*Missouri v. Jenkins*, 491 U.S. 274 (1989)................................................................. 28

*Morris v. Lifescan, Inc.*, 54 F. App'x 663 (9th Cir. 2003) ..................................... 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) .......... 9, 15

*Noll v. eBay, Inc.*, 309 F.R.D. 593 (N.D. Cal. 2015)............................................. 28

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th
    Cir. 1982, *cert denied*, 495 U.S. 1217 (1983) ................................................ 11

*Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices,
    & Prods. Liab. Litig)*, 895 F.3d 597 (9th Cir. 2018) ......................................... 19

*Press v. Lucky Stores, Inc*., 34 Cal. 3d 311 (1983)............................................... 29

*Ramos v. Countrywide Home Loans, Inc*., 82 Cal.App.4th 615 (2000) ................... 25

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................... 9

*Rosenburg v. I.B.M.*, No. CV-06-00430-PJH 2007, 2007 WL 128232 (N.D. Cal.
    2007)......................................................................................................... 21

*Serrano v. Unruh (Serrano IV)*, 32 Cal.3d 621 (1982)........................................... 29

*Smith v. CRST Van Expedited, Inc.*, 10-CV-1116- IEG WMC, 2013 WL 163293
    (S.D. Cal. Jan. 14, 2013)............................................................................ 32

*State of Fla. v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ........................................... 23

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) .......................................... 23, 31

*Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711
    (N.D. Cal. Aug. 25, 2017) .......................................................................... 16

*Thayer v. Wells Fargo Bank*, 92 Cal.App.4th 819 (2001) ................................... 30

*Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370 (9th Cir. 1993), *cert denied,*
    512 U.S. 1220 (1994)................................................................................. 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990)................. 27

*Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir 1996)...................... 21

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ........................ 24, 28, 31

*Vincent v. Hughes Air West*, 557 F.2d 759 (9th Cir. 1977) ...................................... 31

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................. 23, 28

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ............... 24

*Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *23 (N.D. Cal. Mar.
    28, 2007)................................................................................................... 24

PLAINTIFFS' MOTION FOR APPROVAL
OF CLASS ACTION SETTELEMENT

## STATUTES

28 U.S.C. § 1715 .............................................................................. 14

Cal. Civ. Code § 1782(d) .................................................................. 28

Cal. Civ. Code § 1750 ...................................................................... 21

Cal. Civ. Code § 1021.5 ............................................................. 21, 26

## OTHER AUTHORITIES

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.) ....................................... 16

*Managing Class Action Litigation: A Pocket Guide For Judges* § IV(F) ................................. 24

*Manual for Complex Litigation, Third* § 30.42 (1995) ...................................................... 15

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) ....................... 30

Wright & Miller, FEDERAL PRACTICE & PROCEDURE (3d ed. 2008) ...................................... 13

## RULES

Fed. R. Civ. P. 23(e) ....................................................................... 11

Fed. R. Civ. P. 23(e)(2) ...................................................... 12, 15, 16, 17, 20

Fed. R. Civ. P. 23(e)(5)(B) ............................................................. 25

PLAINTIFFS' MOTION FOR APPROVAL
OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on June 13, 2019, at 9:00 a.m. or as soon as the matter may be heard, in Courtroom 4, before the Honorable Edward J. Davila, Plaintiff Jackie Fitzhenry-Russell and Plaintiffs-in-Intervention David Swartz, Ashley Salcedo, Scott Miller, Isabelo Pascual, Florin Carlin, and Kristina Hoffman (Plaintiff Fitzhenry Russell and Plaintiffs-in-Intervention are referred to collectively as, "Plaintiffs")[1] shall and hereby do move the Court for an order:

(1) granting, for settlement purposes only, Plaintiffs-in-Intervention's motion to intervene and granting Plaintiffs leave to file the Second Amended Complaint;

(2) approving, for settlement purposes only, the certification of a settlement class defined as "all persons, other than Excluded Persons, who, (i) during the Class Period, purchased, in the United States, any of the Products, except for purpose of resale." "Excluded Persons" from the Settlement Class are: (1) the Honorable Edward J. Davila, the Honorable Virginia K DeMarchi, the Honorable Howard R. Lloyd, the Honorable Wayne Andersen (Ret.), and any member of their immediate families; (2) any government entity; (3) Defendant; (4) any entity in which Defendant has a controlling interest; (5) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely opt-out of the Settlement Class. The "Class Period" means the period of April 1, 2013, through the date of Preliminary Approval. The "Products" means any Seagram's brand ginger ale beverage, including but not limited to, Seagram's Ginger Ale, Seagram's Diet Ginger Ale, Seagram's Raspberry Ginger Ale, and Seagram's Diet Raspberry Ginger Ale.

(3) approving of sending notice to all class members who would be bound by the settlement of this class action as set forth in the class action settlement agreement dated May 9, 2019 ("Settlement");

(4) directing the dissemination of notice in the form and manner set forth in the Settlement; and

---

[1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

PLAINTIFFS' MOTION FOR APPROVAL
OF CLASS ACTION SETTELEMENT

(5) setting a date for a final approval hearing.

A copy of the Plaintiffs' Unopposed Proposed Order Granting Preliminary Approval of Class Action Settlement is attached to the Settlement Agreement as Exhibit D and is also separately submitted herewith.

**PLEASE ALSO TAKE NOTICE** that, after expiration of the time for class members to opt out or object, and upon the occurrence of the final approval hearing, Plaintiffs will seek entry of a further order:

(1) granting final approval to the Settlement and entering judgment thereon;

(2) entering an injunction against Defendant The Coca-Cola Company ("Coke" or "Defendant"), requiring changes to the labeling of Seagram's Ginger Ale as further set forth in the Settlement;

(3) requiring Defendant to create a settlement fund of $2,450,000;

(4) awarding class representative service awards of $5,000 to Plaintiff Jackie Fitzhenry-Russell and $2,500 to each of the Plaintiffs-in-Intervention, David Swartz, Ashley Salcedo, Scott Miller, Isabelo Pascual, Florin Carlin, and Kristina Hoffman; and

(5) awarding Plaintiffs' counsel $735,000 in attorneys' fees and $85,000 in costs.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Gutride Declaration, the Fite Declaration, the Filmore Declaration, and the pleadings and papers on file in this action, including the class action settlement agreement dated May 9, 2019, and any other matter of which this Court may take judicial notice.

PLAINTIFFS' MOTION FOR APPROVAL
OF CLASS ACTION SETTELEMENT

### A. Introduction

Plaintiff Jackie Fitzhenry-Russell and the six Plaintiffs-in-Intervention in the proposed second amended complaint, David Swartz, Ashley Salcedo, Scott Miller, Isabelo Pascual, Florin Carlin, and Kristina Hoffman (collectively, the "Plaintiffs"), respectfully move for preliminary approval of a proposed class action settlement with Defendant The Coca-Cola Company ("Coke" or "Defendant"), the terms and conditions of which are set forth in the Settlement Agreement. Declaration of Adam Gutride in Support of Plaintiffs' Motion for Approval of Class Settlement (the "Gutride Decl."), Exhibit 1 (the "Settlement"). Coke does not oppose this motion and has approved the form of the proposed Order of Preliminary Approval submitted herewith.

This case concerns Coke's Seagram's brand ginger ales, including Seagram's Ginger Ale, Seagram's Diet Ginger Ale, Seagram's Raspberry Ginger Ale, and Seagram's Diet Raspberry Ginger Ale (collectively, the "Products"). Plaintiff Fitzhenry-Russell filed a complaint in Santa Cruz County Superior Court (which Coke subsequently removed to this Court) alleging that Coke deceptively marketed and sold the Products with the representation "Made with Real Ginger" on the front label, when in fact they do not contain "real ginger" as reasonable consumers understand that term, nor do the Products provide the health benefits that consumers reasonably expect from real ginger. Coke denies these allegations.

To resolve this litigation, Coke has agreed to remove the phrase "Made With Real Ginger" from its ginger ale packaging. Further, Coke agreed to create a settlement fund of $2,450,000 and allow purchasers to make claims for cash refunds of $0.80 for each Product purchased during the class period, up to a maximum of 13 Products without Proof of Purchase or 100 products with Proof of Purchase, with a minimum payment for five purchases even if fewer than five purchases are claimed. The amounts to be paid to each class member may be reduced pro-rata, if the total value of claims exceeds the amount of the common fund after payment of notice, administration, fees, costs and incentives. Should funds remain in the common fund after paying all claims, incentive awards, and fees and costs, the parties have agreed to donate the money cy pres, in equal amounts, to two charitable organizations.

Plaintiff Fitzhenry-Russell seeks a $5,000 representative service award and each of the

Plaintiffs-in-Intervention seeks a $1,000 representative service award. Plaintiffs' counsel seeks an award of actual costs expended, which currently total $70,805.52, plus $735,000 in attorneys' fees (equal to 30% of the common fund, which is almost identical to their current lodestar, though less than the expected lodestar through date of judgment). Plaintiffs and their counsel have not yet received any compensation for their more than 892 hours of work on this case (equating to a lodestar of $731,685.00) or for the out-of-pocket expenses they have incurred (for experts, deposition transcripts, filing fees, etc.).

As the fair, reasonable and adequate Settlement is the product of a non-collusive, adversarial negotiation, and Plaintiffs' Counsel's request for fees and costs is fair and reasonable, Plaintiffs respectfully request that this motion be granted so that notice of the proposal can be given to the Settlement Class.

## B. Background and Settlement Negotiations

On December 23, 2016, Jackie Fitzhenry-Russell ("Fitzhenry-Russell") through her counsel Gutride Safier LLP ("GSLLP"), filed a Class Action Complaint in Santa Cruz County Superior Court alleging Defendant deceptively marketed and sold its Seagram's Ginger Ale products by including the words "Made with Real Ginger" on the front label. (Dkt. 1.) Fitzhenry-Russell alleged claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1780, *et seq.* ("CLRA"), false advertising under California Business and Professions Code § 17500, *et seq.*; unfair business practices under California Business and Professions Code § 17200 *et seq.*; and fraud, seeking damages, an injunction and other relief. (Id.) Fitzhenry-Russell sought to pursue these claims on behalf of herself and all purchasers of Seagram's Ginger Ale in the United States (other than resellers) between December 23, 2012, and the present. (Id.) Defendant timely removed the action to the Northern District of California on February 6, 2017. (Id.)

On March 13, 2017, Defendant moved to dismiss Plaintiffs' complaint. (Dkt. 25.) Defendant argued, *inter alia*, that Plaintiff failed to plead an actionable misrepresentation. (Id.) Plaintiff opposed the motion. On October 18, 2017, the Court denied Defendant's motion to dismiss in its entirety. (Dkt. 48.) On November 8, 2017, Defendant answered the complaint,

denying Fitzhenry-Russell's allegations and asserting several affirmative defenses. (Dkt. 50.) Fitzhenry-Russell filed an amended complaint on January 8, 2018 (Dkt. 55), which Defendant answered on January 22, 2018 (Dkt. 56).

Beginning in mid-2017, the Parties engaged in extensive discovery. (Gutride Decl. ¶¶ 9-13.) Defendant produced over 12,000 pages of corporate documents and answered detailed interrogatories. (Id.) Further, the parties presented three discovery disputes to the Court in early 2018 relating to Defendants' discovery obligations. (Dkt. 59-61.) From Fitzhenry-Russell's perspective, the most critical related to Defendant's refusal to produce documents and interrogatories relating to Seagram's formula and ingredients on grounds of relevance and protection of trade secrets. (Dkt. 60.) The Court agreed that this information was critical to whether Seagram's was "Made with Real Ginger," and ordered Defendant to produce documents and answer interrogatories. (Dkt. 63) Fitzhenry-Russell was deposed, and Defendant gave two days of 30(b)(6) testimony via three corporate designees. (Gutride Decl. ¶ 13.) In addition, Plaintiffs' Counsel retained and worked with a survey expert to conduct surveys of California and Nationwide consumers regarding what the understood the phrase "Made with Real Ginger" to mean and how the inclusion of the phrase affected the market price of Seagram's ginger ale. (Id. ¶ 14.) Plaintiffs' Counsel also retained and worked with an economist to estimate classwide damages. (Id.) He opined, based on the survey results, that during the Class Period consumers paid a price premium for the Seagram's Ginger Ale of approximately 6% of the purchase price, which is an average of $0.14 per product purchase. (Id.) Defendant retained and worked with an economist, who opined that there was no price premium, the Products were lined priced, and damages were $0.00. Further, Defendant engaged two consumer survey experts, who conducted a separate survey and opined that the claim at issue, "Made with Real Ginger," was not material to consumers and criticized Plaintiffs' expert's survey methodology as unreliable. (Id. ¶ 15.)

Plaintiff Fitzhenry-Russell and her counsel were, simultaneously with this case, prosecuting a similar ginger ale case against one of Coke's competitors, entitled *Jackie Fitzhenry-Russell et al. v. Keurig Dr. Pepper, Inc. et al.*, Case No. 5:2017-cv-00564-NC (the "Canada Dry case"). The Canada Dry case involved very similar claims relating to allegations that the phrase

"Made from Real Ginger" on the label of Canada Dry ginger ale was likely to mislead reasonable consumers. (Gutride Decl. ¶ 4.) The Canada Dry case proceeded more quickly than this case, and while the parties here were conducting expert discovery in late 2018, the parties in the Canada Dry case were preparing for trial, which was scheduled to begin on January 7, 2019. (Id. ¶¶ 8 and 18.) Given the pending trial of similar claims, the parties here agreed to stay the case until early 2019. (Dkt. 72.) The Canada Dry case settled on the eve of trial, and the Canada Dry Plaintiffs moved for preliminary approval of the settlement on January 4, 2019. (Gutride Decl. ¶ 27.) In order to settle the Canada Dry case, Keurig Dr. Pepper, Inc. agreed to: (i) an injunction requiring it to remove the "Made from Real Ginger" representation from its label and (ii) allow consumers to submit monetary claims for purchases of Canada Dry Ginger Ale for payment of $0.40 per unit purchased, for a total of up to $5.20 per consumer with no proof of purchase and $40.00 per consumer with proof of purchase. (Id. ¶ 28.) Likewise, in *George v. Keurig Dr. Pepper, Inc.*, No. 1822-CC11811 (Mo. Cir. Ct.), a Missouri Court approved a settlement for Canada Dry consumers in the remaining 49 states. (Id. ¶ 26.) In the 49-State Canada Dry case, Keurig Dr Pepper agreed to pay valid claims on the same terms, up to a cap of $11.2 million. (Id. ¶ 28.)

On January 29, 2019, the Proposed-Intervenors from four states (California, Pennsylvania, Florida, and New Jersey) filed a motion to intervene and a proposed amended complaint seeking to pursue claims on behalf of a nationwide class of consumers and to assert claims under the laws of all states. Fitzhenry-Russell joined in the motion and filed a motion for leave to amend. (Dkt. 75-76.) As addressed, *supra*, it is appropriate to certify a nationwide class, because Coke's misrepresentations and challenged practices are uniform for all purchasers, and the elements of the legal claims are nearly identical in all states. The minor differences among state laws are immaterial to certification, particularly because the laws of all 50 states state are substantively identical to those in at least one of the four states represented by the Plaintiffs, i.e., California, Pennsylvania, Florida, and New Jersey). The motions to intervene and amend were set to be heard on May 16, 2019, but the hearings were taken off calendar in light of the parties' agreement to attend mediation and to stay all case-related deadlines. (Dkt. 77.) The motions remain pending.

After the Canada Dry settlements were preliminary approved, Coca-Cola agreed to attend

mediation. (Gutride Decl. ¶ 31.) On February 19, 2019, the Parties participated in an all-day

mediation conducted by Honorable Wayne Anderson (retired) at JAMS in Chicago, Illinois. (Id. ¶

32.) The parties selected Anderson because he was one of the mediators involved in resolving the

Canada Dry case. Id. That mediation, and subsequent exchanges between the parties resulted in the

Settlement Agreement. Id.

### C. The Benefits Conferred on the Settlement Class Under the Proposed Settlement of this Action

The proposed settlement agreement ("Settlement") resolves claims between Coke and the

settlement class of "all persons (other than Excluded Persons) who, between April 1, 2013 and

[date of preliminary approval], purchased in the United States, any Seagram's Ginger Ale

Product."[2] (Settlement ¶ 2.40.) "Excluded Persons" are: (1) the Honorable Edward J. Davila, the

Honorable Virginia K DeMarchi; the Honorable Howard R. Lloyd; the Honorable Wayne

Andersen (Ret.); (2) any member of their immediate families; (3) any government entity, (4)

Defendant; (5) any entity in which Defendant has a controlling interest; (6) any of Defendant's

subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs,

successors, or assigns; (7) counsel for the Parties; and (8) any persons who timely opt-out of the

Settlement Class. (Id. ¶ 2.14.) Under the Settlement Agreement, Class Members (except any such

Person who has filed a proper any timely request for exclusion from the Class), will agree to

release all claims regarding the labeling, advertising, or formulation of the Products. (Id. ¶ 8.2.)

### 1. Changed Practices

Coke will agree to a Permanent Injunction barring the phrase "Made with Real Ginger" in

any labeling of the Products. (Settlement ¶¶ 3.12-3.16.) Coke shall be permitted, at its option, to

use any of the following phrases in the labeling of the Products: "ginger," "real ginger," or

"natural ginger," in combination with one of the following three words: "taste," "extract," or

---

[2] The class definition in the complaint included consumers who had purchased the product since
December 23, 2012 (four years prior to the filing of the complaint). The Settlement Class period is
approximately 3 months shorter because discovery revealed that Defendant did not add the phrase
"Made with Real Ginger" to the Seagram's label until April 2013. *See*. N.D. Cal Procedural
Guidance for Class Action Settlements ¶ 1(a) ("N.D. Cal Guide").

"flavor." (Id. ¶ 3.13.) For example, the words "taste," "extract," or "flavor" may be used preceding, or following, the words "ginger," "real ginger," or "natural ginger." (Id.)

### 2.    Monetary Relief

Class members can file a claim for a cash payment of up to eighty cents ($0.80) for each Product purchased during the Class Period (i.e., between April 1, 2013 and the date of preliminary approval), with a minimum payment for any class member who submits a Valid Claim of one to five products. (Settlement ¶¶ 3.4 and 3.9.) Class members can file a claim for up to 100 purchases per Household if at least 87 of those purchases are corroborated with Proof of Purchase. (Id. ¶ 3.9.) Class members can file a claim for up to 13 purchases per Household for claimed purchases that are not corroborated by Proof of Purchase. (Id.) "Household" means any number of persons occupying the same dwelling unit. (Id. ¶ 2.18.) "Proof of Purchase" means an itemized retail sales receipt showing, at a minimum, the purchase of a Product, the purchase price, and the date and place of the purchase. (Id. ¶ 2.35.)  Counsel estimate that each claim will be paid at least forty cents ($0.40) per product—that is, at least as much than the amount paid in the Canada Dry settlement—with the possibility of up to $0.80 if the number of claims are lower than expected, and with any remaining funds to be paid *cy pres* to consumer protection entities to be approved by the Court. (Gutride Decl. ¶ 32.)

The claim form is simple. The form can be completed online or downloaded and submitted by mail, and is designed to be completed in minutes. (Settlement ¶¶ 4.1-4.3 and Exh. A.) It requires no purchase details other than the name and number of Products purchased and approximate month(s) and year(s) of purchase. (Id.)

### 3.    Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards

All costs of notice and administration of the settlement will be paid from the settlement fund. (Settlement ¶ 4.7.)

In addition, Plaintiffs will request payment from the settlement fund of incentive awards of $5000 for Plaintiff Fitzhenry-Russell, and $1000 for each of the Plaintiffs-in-Intervention. (Id. ¶ 6.2.) The incentive fees are designed to compensate Plaintiffs for (1) the time and risk they took in prosecuting this action (including the risk of liability for Defendant's costs and for negative

attention from the press and on social media) and (2) agreeing to a release broader than the one that will bind settlement class members. (Id.)

Plaintiffs also will request payment from the settlement fund of their out of pocket expenses (approximately $70,000) plus attorneys' fees equal to 30% of the fund ($735,000). (Id. ¶ 6.1.1) This request is in line with standard awards under other common fund settlements, under which fees are awarded as percentage of the fund, as set out in *Williams v. MGM Pathe Communications Corp.*, 129 F.3d 1026 (9th Cir. 1997). The request also is also reasonable under a lodestar-multiplier cross-check. The reasonableness of this request is discussed in Section G, *infra*.

**D. The Settlement Should Be Approved.**

**1. Legal Framework**

Strong judicial policy favors settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. "The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). A decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp,* 213 F. 3d 454, 458 (9th Cir. 2000). The Court must consider whether the settlement as a whole is reasonable; it stands or falls in its entirety. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. Under Ninth Circuit precedent, the district court must balance a number of factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* Recent amendments to Rule 23 similarly require the district court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i) the costs, risks, and delay of trial and appeal;

   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018).

## 2. Fairness, Adequacy, and Reasonableness of Settlement

### (a) Procedural Concerns

The Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon*, 150 F.3d at 1026.

### i. Adequate Representation of the Class

As discussed more fully in Section E, *supra*, Plaintiffs have no conflicts of interest with the Settlement Class and have invested significant time and resources in this litigation. Class Counsel has successfully represented numerous plaintiff classes, involving a variety of claims, in state and federal courts throughout the country and effectively represented the class interests in this case.

### ii. Arm's Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-

–8–

collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*DIRECTV*"); 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *DIRECTV*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

Before agreeing upon the terms of the settlement, the parties engaged in extensive expert and factual investigation, which included exchange of nine expert reports, three expert depositions, two days of 30(b)(6) testimony from three Coca-Cola designees, service of interrogatories and court-ordered responses to the interrogatories, the production of over 12,000 pages of documents, service of non-party subpoenas and receipt of documents from those non-parties, and the briefing of multiple discovery disputes. Gutride Decl. ¶¶ 9-15. Among other things, Plaintiffs received extensive information relating to the formulation of Seagram's ginger ales and documents relating to Coke's strategy for marketing Seagram's ginger ale. Id. ¶ 12.

Plaintiff Ms. Fitzhenry-Russell and her counsel have experience in other ginger ale litigation, which has further informed their views about the claims in this case. Id. ¶ 35. The record was thus sufficiently developed that the parties were fully informed as to the viability of the claims and able to adequate evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle. Id.

The parties negotiated the proposed settlement in good faith with the assistance of an independent, experienced mediator, the Honorable Wayne R. Andersen (Ret.) of JAMS, who had resolved the Canada Dry case. Id. ¶ 32. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Adams v. Inter-Con Sec. Sys.*

*Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007). The settlement agreement was modeled on the settlement reached in the Canada Dry cases, which two courts have now approved. Gutride Decl. ¶¶ 28, 32. In particular, Coca-Cola agreed to the same injunctive relief (i.e., label changes) that KDP agreed to in the Canada Dry settlements. Id. Further, Coca-Cola agreed to a common fund (instead of the claims made structure in the KDP settlement) and agreed that consumers could receive up to $0.80 per purchase (rather than the fixed $0.40 per purchase in the KDP settlements). Id.

### (b) Substantive Concerns

Rule 23(e)(2)(C) and (D) set forth factors for conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### i. Strength of Plaintiffs' Case and Risk of Continuing Litigation

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial," *Hanlon*, 150 F.3d at 1026. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego*, 213 F.3d at 458-59 (assessing risk of inability to prove fraudulent scheme in affirming settlement); *Linney v. Cellular Alaska Partnership*, 151 F.3d at 1240-1241 (9th Cir. 1998) (assessing risks involving fraudulent concealment and ability to obtain damages in affirming settlement); *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert denied*, 512 U.S. 1220 (1994) (approving settlement based in part on "inherent risks of litigation"); *Class*

*Plaintiffs*, 955 F.2d at 1292 (approving settlement based on uncertainty of claims and avoidance of summary judgment); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982, *cert denied*, 495 U.S. 1217 (1983) (approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).

In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in food labeling litigation, weighed the risks inherent in establishing all the elements of their claims in a jury trial, as well as the expense of trial and likely duration of post-trial motions and appeals. Plaintiffs agreed to settle this litigation on these terms based on their careful investigation and evaluation of the facts and law relating to Plaintiffs' allegations and consideration of the facts and views expressed by the mediator and Coke during the settlement negotiations. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

Plaintiffs and Plaintiffs' Counsel were aware that, in order to prevail at trial, they would have to prove not only that Coke's "Made with Real Ginger" representation was misleading, but that those statements were material; that consumers relied on the misrepresentation; the representation caused injuries; that there were recoverable damages for the Class; and in order to obtain punitive damages, that Coke's conduct constituted fraud, oppression, or malice. Although Plaintiffs believe the evidence obtained in discovery established Coke's liability and damages, Coke vigorously denies those allegations, creating substantial uncertainty of obtaining a successful verdict after trial and appeal. Among other things, Coke disputed that the "Made with Real Ginger" claim was misleading to a reasonable consumer and regardless was not important to consumer decision-making. Further, Coke criticized Plaintiffs' consumer understanding and conjoint surveys as flawed and unreliable. Plaintiffs also faced substantial challenges in establishing the amount of class-wide damages. Coke argued that the conjoint model Plaintiffs used to calculate damages makes unsupportable assumptions that are contradicted by the facts and are not reliable. In particular, Coke asserted that its products are line priced and that the pricing of

Seagram's is unaffected by the "Made with Real Ginger" claim.

While Plaintiffs' Counsel are confident in their positions and believe Plaintiffs' claims are strong, Plaintiffs' Counsel are also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in the trial and appellate process, weighs heavily in favor of settlement, particularly given the above risks, which could easily have impeded Plaintiffs' successful prosecution at trial and in an eventual appeal. Gutride Decl. ¶¶ 34-37. Under the circumstances, Plaintiffs and Plaintiffs' Counsel appropriately determined that the instant settlement outweighs the gamble of continued litigation. *Id.* Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Id.* Thus, even in the best case, it could take years to secure any meaningful relief for class members. *See Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

Further, a comparison of the settlement award to the potential damages that might be recovered for the Settlement Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement. *See* N.D. Cal. Guide ¶1(d) (preliminary approval motion should set forth "potential recovery if plaintiffs were to prevail" and "likely recovery per plaintiff" under the settlement). Plaintiffs believe that their likely "best case" recovery at trial would be approximately $58-62 million, based on the following assumptions. First, it appears that the retail revenues from nationwide sales of the Products during the Class Period were approximately $970 million. Gutride Decl. ¶ 38. Second, Plaintiffs believe that expert analysis would show that the premium attributable to the false "Made with Real Ginger" claim on the Products was 6% or 6.33% (depending on package size), or $58-63 million. Id. Thus, the price premium damages were an average of $0.14 per product purchased. Id.

The settlement amount of $2,450,000, which does not include the value of the changed practices, is approximately 4% of this best-case recovery. Id. ¶ 39. Plaintiffs believe this recovery to be fair in light of the risks discussed above. Id. ¶¶ 39-43. Further, the per-claim amount of $0.80 per product purchased is good result compared to the possible result in a contested proceeding, i.e., $0.14 per product purchased, as discussed above. Moreover, even after trial, class members would

have to make claims because they cannot otherwise be identified. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017) ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."). There is no reason to believe the post-trial claim rate would exceed a settlement claim rate. Further, the case law is unclear as to whether each individual who filed a claim could recover more than the approximately 6% premium per product purchased (i.e., $0.14), and Coke might be able to assert defenses to individual recoveries, as contemplated by *Briseno*. Coke also could likely insist on a more onerous claims process than the one agreed in this settlement, which does not even require proof of purchase for the first 13 products, and which guarantees payment for five products even if fewer than five purchases were made. A large class damage award thus might have resulted in *less* money being paid to individual class members, with the overwhelming majority of class members (the persons who lack proof of purchase) receiving nothing. The bulk of the money would only be awarded cy pres, or under some reading of the case law, might revert to the Defendant. In this settlement, there is no reversion.[3] Additionally, there is some value to Coke's changed practices (i.e. removing the "Made With Real Ginger" phrase from the Seagram's labeling), which could eliminate any price premium the claim commands, or at a minimum, provide better information to Settlement Class Members when they make decisions between Seagram's and other competing products that are actually made with real ginger. Thus, the settlement is a very favorable outcome given the substantial risks of continuing with this complex litigation, and the uncertainty inherent in a jury trial, as well as the advantages of obtaining an immediate cash benefit for Settlement Class Members and avoiding the substantial expenses of further litigation.

---

[3] "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527, *citing Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). *See also e.g., Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) ("Settlement Amount represent[ing] approximately 14 percent of likely recoverable aggregate damages at trial" was "well within the range of percentages approved in other securities-fraud related actions"); *In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement representing "approximately 8% of the maximum recoverable damages … equals or surpasses the recovery in many other securities class actions"); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement representing 9% of maximum damages fair and reasonable and "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

The Settlement release is no broader than a res judicata release that would be obtained after trial. It releases only claims that were or could have been asserted regarding labeling, advertising and product formulation—the very issues in suit. *See Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150, 155 (2005) ("Res judicata serves as a bar to all causes of action that were litigated or that could have been litigated in the first action."); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("the Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'") (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Claims relating to "personal injury or property damage arising out of the use of the Product" are specifically excluded from the release.

### ii.     *Effectiveness of Distribution Method*

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement Class Members who seek benefits under the Settlement must only to submit a relatively simple claim form with basic questions about class membership. As Coke is a wholesaler and has no records of Settlement Class Member purchases, a claim form is required to identify class members and their eligible purchases. The form can be completed online, or class members have the option to print and mail the claim form to the claim administrator. Settlement ¶¶ 4.1-4.3 and Exh. A. Payments will be made either electronically or by check and mailed. *Id.* This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. Pursuant to N.D. Guide ¶1(g), Plaintiffs' Counsel estimate, based on their experiences with recent settlements in other food labeling cases and the input of the claims administrator, that approximately 75,000 to 100,000 class members will submit a claim. Gutride Decl. ¶ 57.

### iii.     *Effectiveness of Distribution Method*

If any balance remains in the settlement fund—after payment of notice, administration, fees, costs, incentives and valid claims—the parties have agreed that the amount may be paid cy pres to two worthy charitable organizations focused on consumer rights. Settlement ¶ 3.5; *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (holding that courts "may employ the

cy pres doctrine to 'put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class'") (citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir.2007)); *see also Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564, *2 (N.D. Cal. June 6, 2013) (in order granting preliminary approval, deferring approval of proposed cy pres recipients until final approval). At the time of final approval, if it appears that there will be a balance remaining in the settlement fund after payment of all claims, Plaintiffs' Counsel will provide additional information about the proposed organizations and the basis for the award.

### iv. Terms of Attorneys' Fees

Class Counsel seeks an award of $735,000 in attorneys' fees and approximately $70,000 in costs. That request is addressed in Section G, *infra*.

### v. Supplemental Agreements

There are no applicable "supplemental agreements" within the meaning of Rule 23(e)(3).

### vi. Equitable Treatment of Class Members

All class members are entitled to the same relief under the Settlement. Even though products may have been sold at different prices based on size or retail location, the alleged premium is always 6% or 6.33%, and uniform relief makes it unnecessary for claimants to testify how much they paid for each purchase and makes the settlement administratively efficient. The Settlement also provides for service awards for the Plaintiffs, which is explained in Section H, *infra*.

### vii. Plaintiffs' Counsel's Experience

Although not articulated as a separate factor in Rule 23(e), courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. *See DIRECTV*, 221 F.R.D. at 528; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 at *4 (N.D. Cal. Dec. 22, 2008); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *6 (N.D. Cal.

Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043 (same). Here, Plaintiffs' Counsel came to recommend this Settlement after over two years of litigation, during which it expended over nearly 900 hours, which includes briefing on a variety of contested legal issues and discovery efforts. Gutride Decl. ¶¶ 46-48. Further, Plaintiffs' counsel separately had worked on the similar Canada Dry case until the eve of trial, so they were very familiar with the issues to be litigated and tried. Id. ¶ 35. Coke is also represented by seasoned, class-action litigators who support the settlement. Id. ¶ 34.

### viii.    *Past Distributions*

The information requested by N.D. Cal. Guide ¶ 11 regarding past distributions in other comparable class settlements is provided in the Gutride Declaration. Gutide Decl. ¶ 57 and Ex. 14.

### E.    The Settlement Class Should Be Conditionally Certified

When a class settlement occurs before class certification has taken place, a court may conditionally certify an action for settlement purposes. *See In re Wireless*, 253 F.R.D. 630, 633 (S.D. Cal. 2008) ("parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). When certification is sought under Rule 23(a) and (b)(3), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3). *Id.* Here, the parties seek approval, for settlement purposes only, of a nationwide Settlement Class so that relief can be afforded to all consumers. All of the class certification elements are met here. Indeed the claims and facts in this case are virtually identical to those in the Canada Dry case, in which the Court certified a class. *Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 606 (N.D. Cal. 2018) (hereafter, "*Canada Dry*").

Numerosity is satisfied because tens of millions of Products were sold to the Settlement Class (Gutride Decl. ¶ 38) and "joinder of all members is impracticable." Rule 23(a)(1); *see Canada Dry*, 326 F.R.D. at 607 ("[I]t is clear that the class is sufficiently numerous. Dr. Pepper sold millions of units of Canada Dry during the class period.").

Typicality under Rule 23(a)(3) is a "permissive" standard that requires only that the

representatives' claims be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In *Canada Dry*, the Court found Fitzhenry-Russell was typical because "she was deceived as a result of Dr. Pepper's ginger claim, meaning that she has suffered the same alleged injury as the rest of the class." 326 F.R.D. at 610. The same holds true here. Plaintiffs' claims regarding the deceptive nature of Coke's "Made with Real Ginger" claim are identical to those of the settlement class members.

Adequacy under Rule 23(a)(4) concerns whether the class representatives will "fairly and adequately protect the interests of the class." This inquiry involves two questions: "(1) do the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named Plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both requirements are met here. All of the Plaintiffs' interests are in line with the interests of the Settlement Class because they seek the same relief as the class, based upon the same claims and uniform business practices. Plaintiffs have also vigorously prosecuted this action, as shown by their retention of experienced, competent counsel; Fitzhenry-Russell's production of documents and appearance for deposition; and Plaintiffs' participation in the negotiation of this settlement. Plaintiffs also assumed the risk of bearing Defendant's costs should the litigation have ultimately been unsuccessful. Gutride Decl. ¶ 55; *see also Canada Dry*, 326 F.R.D. at 611 (finding Fitzhenry-Russell adequate).

Plaintiffs' Counsel is competent and qualified to represent the Class. Plaintiffs' Counsel has extensive experience with complex class actions, having served as class counsel in numerous federal and state court consumer fraud actions that have resulted in millions of dollars being returned to consumers. Gutride Decl. ¶ 33 and Ex. 2. Numerous courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel, including many in this District. Id.; *see also, e.g.*, *Canada Dry*, 326 F.R.D. at 611 (finding GSLLP adequate).

Commonality under Rule 23(a)(2) requires only that "a single significant question of law or fact" be common. *Canada Dry*, 326 F.R.D. at 607. Here, as in *Canada Dry*, that "common question is: was Defendants 'Made [with] Real Ginger' label likely to deceive reasonable

consumers?" *Id.*

Under Rule 23(b)(3), the question becomes whether "common questions predominate over individual ones." *Id.* at 611. Here, there are numerous common questions, all of which predominate over any individualized issues, including: (1) whether Defendant's marketing and advertising materials were likely to deceive reasonable consumers, (2) the amount of the price premium associated with the false advertising; (3) whether class members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and (4) whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon. Coke sold the same products nationwide with the same labelling, using the same manufacturing and distribution practices. Regardless of the state, Plaintiffs allege that the "Made with Real Ginger" statement is false or misleading. Accordingly, this claim will present uniform issues of material fact for class members nationwide, including whether the labelling was likely to deceive, whether it was material to reasonable consumers, and whether a price premium can be demonstrated using the conjoint damages model. *See Canada Dry*, 326 F.R.D. at 611-616 (finding predominance as to the reasonable consumer standard, materiality, and damages based on virtually identical survey and conjoint evidence available in this case).

Further, these common questions of fact and law predominate nationwide. Although a Ninth Circuit panel rejected a national settlement class certification in *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 689 (9th Cir. 2018) ("*Hyundai*"), the panel's decision has been vacated pending en banc review, *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 897 F.3d 1003, 1007, (9th Cir. 2018) and in any event the panel's decision casts no doubt on the viabilty of a nationwide settlement class here. In *Hyundai*, the plaintiffs challenged allegedly fraudulent representations made by hundreds of independent new and used car dealers across the country, in connection with 76 different models of cars. 881 F.3d at 704. The evidence showed wide variations among the statements made by the dealers and among the true features of the car models. Prior to settlement, the plaintiff had moved to certify a nationwide class applying California law to all class members, but the district court tentatively denied certification concluding that California law could not apply nationwide, and that variances in state law undercut

predominance—particularly in light of the wide-ranging representations at issue. *Id.* at 695. Around the same time, numerous other class actions were filed around the country alleging similar misconduct under their own states' laws. *Id* at 697. In response, plaintiffs' counsel in the California action, where certification had been denied, conspired with the Defendant to settle out from under the plaintiffs and counsel from other states, by agreeing to a nationwide settlement class under California law. *Id.* at 697-700. Although the plaintiffs and counsel from the other states objected, the district court certified the nationwide settlement class without making any new findings about commonality or predominance, let alone why California law should apply to class members in all states when it had previously held that it could not even apply uniformly to class members in California. *Id.* at 700. The objector plaintiffs from the other states appealed, and the Ninth Circuit reversed.

Notably, *Hyundai* does not hold that a nationwide class can never be certified. Rather, as the panel explained in its now vacated decision, the district court must consider "whether the consumer-protection laws of the affected States vary in ***material*** ways." *Id.* at 702 (internal citations omitted) (emphasis added). Numerous courts applying *Hyundai* have upheld nationwide class settlements. *See, e.g., Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d 597, 609, (9th Cir. 2018) (approving nationwide settlement where "predominance analysis under Rule 23(b)(3), [was] sufficient under *In re Hyundai*"); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 21990, *43 (N.D. Cal. February 11, 2019) (preliminarily approving nationwide class settlement despite *Hyundai*, because "while there are some variations in state law, Plaintiffs have made at least a fair argument . . . that such variations are not so extensive or complicated that they defeat predominance"); *In re Anthem*, 327 F.R.D. at 315 (approving nationwide settlement despite *Hyundai* because although "[i]t is true that the state consumer-protection statutes at issue here are not identical . . . the Court concludes that this is a case in which 'the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims'"); *Koller v. Med Foods, Inc.*, Case No. 14-cv-2400-RS, ECF No. 169 (N.D. Cal., Aug. 29, 2018) (granting final approval to nationwide

settlement of food labeling class action over objections based on *Hyundai*).

This case presents none of the problems that led the *Hyundai* panel to reject the approval of a nationwide settlement class. Here, unlike *Hyundai*, the Court never issued any ruling indicating that a nationwide class was unlikely, and, in fact, refused to strike Plaintiff's nationwide class allegations despite Defendant's request that the Court do so. *See* Dkt. #48. Accordingly, there *was* a substantial risk of a nationwide class in this case, meaning the settlement negotiations were not tainted unfairly in favor of the defendant. *Cf. id.* at 703 (noting that "there was little risk that they would face a nationwide litigation class action if they did not reach a settlement agreement"). Further, as there were not competing lawsuits filed against Coke over this issue, there was no pressure or incentive to settle this case at a low price. *Cf. id.* at 697 (noting that the settlement was reached one week after the Judicial Panel on Multidistrict Litigation issued its order transferring 56 other actions to the settling plaintiff's district). Finally, Plaintiffs are not seeking to apply California law to class members in all states, but to apply the law of each state to the residents of that state; which is possible because the laws are substantively identical, and to the extent there are differences, the seven named plaintiffs represent various permutations. *Cf. id.* at 692; *accord In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 313 (distinguishing *Hyundai* because "Plaintiffs here do not assert that 'California law . . . appl[ies] to all plaintiffs in the[ir] nationwide class' but instead concede that the laws of the fifty States apply" (alterations in original).[4] Filed herewith as Appendix A and B are, respectively, (1) a summary chart of the elements of the relevant state laws and (2) a more detailed discussion of the same, including statutory and case citations in support thereof. These charts demonstrate predominance of common issues.

Finally, Rule 23(b)(3)'s superiority analysis essentially looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient. *See Valentino v*

---

[4] Nor is certification here inconsistent with the Ninth Circuit's earlier decision in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). That was another case involving myriad car dealers and individualized representataions. The defendant opposed certification and demonstrated material differences of fact and law, particularly regarding scienter, reliance, and the remedial structure. *Id.* at 591. For the reasons above, those differences do not exist here. And even if a defendant *could* assert differing defenses to claims in various states—for example, asserting different limitations periods—Coke decided not to assert such defenses but instead to settle.

*Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir 1996); 2 Newberg at § 4.27. Superiority is satisfied in the present case because: (1) prosecuting or defending separate actions at this stage would be impractical and inefficient; and (2) to the parties' knowledge, there is no other litigation concerning this controversy. *See* Fed. R. Civ. Proc., Rule 23(b)(3). Here, there are a multitude of consumers who were injured in small amounts. This "small individual damages" factor is significant and weighs heavily in favor of class certification, especially given the common scheme at issue. *See Miletak*, 2010 WL 809579 at *13; *see also Canada Dry*, 326 F.R.D. at 616 (finding class action mechanism superior to resolve claims).

### F. Adequacy of Notice

The proposed claim form and notice plan, which are attached to the Settlement as Exhibits A and B comport with the procedural and substantive requirements of Rule 23 and the N.D. Cal. Guide. Under Rule 23, due process requires that class members receive notice of the settlement using the best notice that is "practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, No. CV-06-00430-PJH 2007, 2007 WL 128232 at *5 (N.D. Cal. 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement); N.D. Cal. Guide ¶¶ 3-5 (identifying information to be included in notice). In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). The proposed Notice Plan satisfies these content requirements and is designed to reach a high percentage of the Settlement Class.

Notice of the settlement is to be provided to the Settlement Class as follows: (1) via publication of a one-third page ad in People magazine (circulation of 3,031,829 with approximately 33,926,000 readers of the print edition); (2) online notice targeted at likely class

members served across lifestyle, news, and weather internet websites and via social media platforms (3) online notice served to users conducting internet searches with the Google/Bing website; and (4) a press release through a national wire service. *See* Settlement Exh. B.

The proposed notices inform class members about the proposed settlement; a summary of settlement benefits; their right to opt out and the information required by N.D. Cal. Guide ¶ 4 regarding opt outs; their right to object and the information required by N.D. Cal. Guide ¶ 5 regarding objections; the need to file a claim; and the prospective request for attorneys' fees, costs and representative service awards. The published notices refer class members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, online and printable versions of the claim form and the opt out forms, a fuller discussion of the release, and methods to obtain additional information. In addition, the settlement website will also shall contain a contact information page that will include address and telephone numbers for the claim administrator and Class Counsel, the Settlement Agreement, the date of the final approval hearing, the motions for approval and for attorneys' fees and any other important documents in the case. Further, the administrator will provide a toll-free telephone number at which class members can obtain information.[5]

As explained in the declaration from the claim administrator filed herewith, this multi-communication method is expected to reach at least 80% of the settlement class members an estimated average of 2-2.5 times each, and it is the best notice practicable. *See,* Fite Decl. ¶¶ 15, 24. *See, e.g., In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also In re Tableware*, 484 F. Supp. 2d 1078, 1080 (N.D.Cal. 2007) (approving settlement; holding that where Defendant do not maintain complete lists of all class members, notice via publication is "reasonable").

The Class Action Fairness Act requires that Coke give notice of the proposed class action

---

[5] Direct notice is not possible because Defendant does not maintain records of consumer purchases.

settlement to appropriate state and federal officials and supply all of the information and documents set forth in 28 U.S.C. § 1715 (b)(1)-(8). The Claims Administrator will do so within ten days after the Settlement Agreement is filed with the Court. (Settlement Ex. B-2.)

### G. Approval of the Attorneys' Fees and Expenses.

The Settlement Agreement provides for the payment of attorneys' fees and expenses from the common fund. Having reached a common fund settlement, Plaintiffs' Counsel is entitled to seek an award of fees and expenses from the fund. *See e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Plaintiffs request payment from the common fund of their out of pocket expenses, which are currently $70,805.52, plus attorneys' fees equal to 30% of the fund ($735,000).

#### 1. Plaintiffs' Fee Request is Reasonable Percentage of the Common Fund.

Where a settlement involves a common fund, courts typically award attorneys' fees based on a percentage of the total settlement. *See State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery). When determining the value of the settlement, courts consider both the monetary and non-monetary benefits conferred under the settlement terms. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.,* 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd,* 473 F. App'x. 716 (9th Cir. 2012). The Court should take into account the value of injunctive relief when assessing fees, but need not determine a specific monetary value associated with that relief. *See Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir. 2014) *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014) ("[W]e have never required a district court to assign a monetary value to purely injunctive relief. To the contrary, we have stated that courts cannot 'judge with confidence the value of the terms of a settlement agreement, especially one in which, as here, the settlement provides for injunctive relief.'"); *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) (a district court still "should consider the value of the injunctive relief as a 'relevant circumstance'" in its fee determination). Additionally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

benefits being made available to class members rather than the amount actually claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *23 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (finding "district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)).

In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers*, 904 F.2d at 1311; *see also Staton*, 327 F.3d at 974 ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained . . . courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method . . . ."). The benchmark percentage "can then be adjusted upward or downward to account for any unusual circumstances involved in the case." *Paul, Johnson, Alston & Hunt v. Graulty, 88*6 F.2d 268, 272 (9th Cir. 1989). Many cases have found that a larger percentage of the fund, i.e., between 30% and 50% of the common fund, is appropriate when the settlement fund is less than ten million. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (collecting cases); *see also Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund in a food labeling class action).

Here Plaintiffs' fee request amounts to 30% of the monetary value of the settlement. Although this is a slight increase on the benchmark of 25%, this is reasonable for several reasons. First, the lodestar incurred to date exceeds 25% of the fund, and by the time of the judgment will likely exceed 30% of the fund. (The lodestar would be even higher if it included the work performed in the Canada Dry case that benefited this case but was not compensated in the Canada Dry case; more than $1.69 million of work there was not compensated). Gutride Decl. ¶ 29. Second, the settlement fund is under $10 million so a larger percentage is warranted. *See Van Vranken*, 901 F. Supp. at 297-98; *Johnson*, 2013 WL 3213832, at *6. Third, the "primary form of relief under the UCL" is an injunction, while monetary recovery—i.e., restitution—is only an "ancillary" form of relief. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011). Defendant here is agreeing to a permanent injunction to change its label, which based on

Plaintiffs' expert conclusions about the premium, should save class members money in the future, or at a minimum provide them more accurate information on which to base their purchasing decisions. That is a significant portion of the total relief in the settlement, which is not accounted for in a strict monetary assessment.

### 2. Plaintiff's Fee Request is Reasonable under a Lodestar Cross-Check.

The Court is not obligated to perform a cross-check on Class Counsel's lodestar when evaluating the percentage of the fund to be awarded as fees. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th Cir. 2017) (noting that district court did but was not required to do a lodestar method cross-check); *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) ("[A] cross-check is entirely discretionary . . . ."); *Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *5 (N.D. Cal. Oct. 18, 2013) ("In a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class and can encouraged unjustified work and protracting the litigation."). Indeed, "[i]n a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class and can encouraged unjustified work and protracting the litigation." *Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL 5700403, at *5 (N.D. Cal. Oct. 18, 2013) (citing *In re Activision Securities Litigation,* 723 F.Supp. 1373, 1378 (N.D. Cal. 1989)). Nevertheless, should the Court elect to utilize a lodestar cross-check, Class Counsel's fee here is likewise eminently reasonable.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained and the contingent risk presented." *Id.*; *see also Serrano III*, 20 Cal. 3d at 48-49; *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal. App. 4th 615, 622; *Beasley v. Wells Fargo Bank,* 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to compensate counsel for the risk of loss, and to encourage counsel to undertake actions that

benefit the public interest).

Plaintiffs' Counsel's lodestar through the date of this application is approximately $731,865.00. Gutride Decl. ¶ 46. This includes, without limitation, Plaintiffs' Counsel efforts in:

- Pre-filing investigation and vetting of potential class representatives;

- Drafting and filing a class action complaint and two amended complaints;

- Drafting and filing an opposition to Defendant's motion to dismiss;

- Drafting and filing numerous case management conference statements and case management stipulations;

- Meeting-and-conferring with Defendant's counsel regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, search terms for electronic discovery, the terms and scope of a stipulated protective order, the timing of production, the timing of depositions, and a stay of the case pending trial of a similar matter;

- Briefing multiple discovery disputes on issues relating to Defendant's discovery responses and the scope of discovery;

- Reviewing documents produced by Defendant, in addition to Defendant's written discovery responses;

- Subpoenaing and reviewing documents from third party witnesses;

- Taking depositions of three of Defendants' employees and one of Defendants' expert witnesses;

- Defending the depositions of Plaintiff Fitzhenry-Russell and two of Plaintiff's expert witnesses;

- Working to provide Plaintiffs' survey and damages experts with sufficient data to compile their expert reports, and consulting with additional experts regarding manufacturing and testing ginger ale, as well as the flavor components and health implications thereof;

- Drafting a comprehensive mediation statement, and participating in an all-day mediation before Judge Anderson;

- Negotiating and drafting the Settlement Agreement along with corresponding documents, including claim forms, summary notice, and long-form notice;

- Filing the motion for approval of the Settlement and supporting documents, including a proposed preliminary approval order and a proposed final judgment; and

- Selecting and retaining a Claims Administrator.

Gutride Decl. ¶ 48.

In addition, before the final approval hearing, Plaintiffs' Counsel's efforts will also

include, without limitation:

- Continued correspondence with Settlement Class Members and supervision of the work of the Claims Administrator; and

- Researching and drafting a reply memorandum and opposing objections, if any.

Gutride Decl. ¶ 54.

Of further note, as discussed above, Plaintiffs' Counsel's lodestar does not include activities by Class Counsel from the Canada Dry case, which allowed Counsel to gain expertise and litigate this matter more efficiently and for which Plaintiffs' Counsel recovered less than 60% of their lodestar.

Plaintiffs' Counsel calculated their lodestar using their regular billing rates, which for the attorneys involved range from $550 to $1025 per hour. Gutride Decl., ¶¶ 46-47. Plaintiffs' Counsel are graduates of top law schools (including Yale, Harvard and NYU), and the principal work was performed by lawyers with 10 to 24 years of experience.[6] "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For attorneys and staff at the Gutride Safier firm, these hourly rates are equal to market rates in San Francisco for attorneys of Plaintiffs' Counsel's background and experience. Gutride Decl., ¶¶ 49-52, Exh. 3-12. Additionally, the rates charged by Plaintiffs' Counsel have been deemed reasonable in connection with the approval its fee applications in at least seven recent matters. Id. ¶ 49.  Courts in other cases over the past several years have also approved similar fees charged by other firms. *See In re Optical Disk Drive Prod. Antitrust Litig.,* 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $205 to $950); *Gutierrez v.*

---

[6] The lawyers also previously worked for top defense firms; had they remained at those firms their rates would be even higher than at GSLLP. Gutride Decl., ¶ 51. Furthermore, it is almost certain the rates paid by Defendant to its firms in this case far exceed the rates requested for Class Counsel. *Id.*; *see also Managing Class Action Litigation: A Pocket Guide For Judges* § IV(F) (suggesting an examination of the defendant's attorney fee records as a measure of what might be reasonable.) Finally, the Gutride Safier firm's billing rates were recently approved by other judges in this District as well as those in the Central District of California, Northern District of Illinois, and San Francisco Superior Court. Gutride Decl. ¶ 49.

*Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (approving hourly rates of $475 to $975).

These rates are the current rates charged by Plaintiffs' Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment....") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

Class Counsel's requested $735,000 fee is nearly equivalent to the lodestar and will be less than the lodestar at the time of judgment. Even if some hours were disallowed or some rates were reduced, it would be appropriate to apply a small multiplier and award the full requested fee of $735,000. A law firm that focuses on contingent-fee class action cases does not get paid in every case. Frequently, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked—as in the Canada Dry case where it recovered only 59% of its lodestar. Gutride Decl. ¶ 29. Where a plaintiff's firm does succeed, therefore, a multiplier serves to compensate for the risks the firm regularly undertakes. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (finding 3.65 multiplier to be "within the range of multipliers applied in common fund cases"); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (listing multipliers as high as 5.2 among "the range of acceptable lodestar multipliers"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0."); *Van Vranken*, 901 F. Supp. at 298 ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation.").

This Court has discretion to apply a multiplier to account for various factors, including, *inter alia*, the contingent nature of the fee award (both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award), the novelty and complexity of the questions involved, the value of class benefits obtained, the efficiency and skill

displayed by class counsel, and the importance of other injunctive relief obtained. *See Serrano III*, 20 Cal. 3d at 49; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *City of Oakland*, 203 Cal. App. 3d at 78; *Downey Cares v. Downey Community Dev. Comm'n*, 196 Cal. App. 3d 983 (1987), 995 n11; *see also Maria P. v. Riles*, 43 Cal. 3d 1281, 1294 n8 (1987); *Press v. Lucky Stores, Inc*., 34 Cal. 3d 311, (1983), 322; *Serrano v. Unruh (Serrano IV)*, 32 Cal.3d 621, 625 n6 (1982). Each of these factors exists here.

First, both this litigation and the underlying legal claims and factual issues were complex. For example, Defendant raised standing questions and complex arguments related to the FAL, UCL, and CLRA in its motions to dismiss. In discovery several expert analyses were necessary, including surveys relating to consumer understanding and materiality, as well as an econometric conjoint analysis to determine the price premium associated with the challenged label claim. In addition to the time-consuming research and investigation needed to support Plaintiffs' theories, success on any given motion was far from certain. Nonetheless, Plaintiffs' Counsel presented Settlement Class Members' claims with creativity, skill, and ingenuity.

Second, Plaintiffs' Counsel commenced settlement negotiations immediately following settlement of the similar Canada Dry case without significant additional litigation, and thus should be rewarded for its efficiency (and the concomitant savings to the judicial system). In *Lealao*, the Court explained that, unless multipliers are provided when counsel agree to settle early, there will be "a disincentive to settle promptly inherent in the lodestar methodology. Considering that our Supreme Court has placed an extraordinarily high value on settlement, it would seem counsel should be rewarded, not punished, for helping to achieve that goal, as in federal courts." *Lealao*, 82 Cal. App. 4th at 52 (*citing Merola v. Atlantic Richfield Company*, 515 F.2d 165, 168 (3d Cir. 1975)) (lodestar-multiplier approach "permits the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282-1283 (S.D. Ohio 1996) (case settled "in swift and efficient fashion"); *Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (awarding a fee of four times the normal hourly rate on ground that, if the case had not settled and gone to verdict, "there is no doubt that the number of hours of

lawyer's time expended would be more than quadruple the number of hours expended to date"). Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001), the California Supreme Court noted that "[t]he California cases appear to incorporate the 'results obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less time than would work of average quality, thus justifying a multiplier."

Third, Plaintiffs' Counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. Gutride Decl. ¶ 44. During the pendency of the litigation, Plaintiffs' Counsel turned away other work. *Id.* As the California Supreme Court has explained:

> [a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33; *see also Cazares v. Saenz*, 208 Cal. App. 3d 279, 288 (1989) ("in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case."). Indeed, in *In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1993), a federal appellate court reversed a fee award in a class action for, among other things, the trial court's refusal to enhance class counsel's lodestar for contingency risk, explaining:

> The judge refused to award a risk multiplier—that is, to give the lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking. This was error in a case in which the lawyers had no source of compensation for their services. The failure to make any provision for risk of loss may result in systematic under-compensation of Plaintiff's counsel in a class action case, where as we have said the only fee that counsel can obtain is, in the nature of the case, a contingent one.

*Id.* at 569.

Fourth, as explained above, Plaintiffs' Counsel achieved an excellent settlement in this Litigation.

### 3. Plaintiffs' Counsel Should be Awarded Costs.

Plaintiffs' Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its application for reimbursement of its actual expenses in connection with the prosecution of this Litigation, which to date are $70,805.52. These expenses are itemized in the Gutride Declaration. Gutride Decl., Exh. 13. Plaintiffs' Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

### H. The Incentive Award for The Class Representatives is Reasonable.

This Court should also approve an inventive award of $5,000 for Plaintiff Fitzhenry-Russell, and $1,000 for the remaining named Plaintiffs, for a total of $11,000 in incentives. In deciding whether to approve such an award, the court must evaluate named plaintiffs' awards individually, using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). In particular, a court should consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (of lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken,* 901 F. Supp. at 299; *see also* N.D. Cal. Guide ¶ 7. Further, as a matter of public policy, representative service awards are necessary to encourage consumers to formally challenge perceived false advertising and unfair business practices.

Plaintiffs took on substantial risk, most importantly the risk of bearing Defendant's costs

and of negative public attention. Gutride Decl., ¶ 55. Fitzhenry-Russell also worked with counsel to provide information throughout the litigation, which has now progressed for over two years. *Id.* She answered interrogatories and requests for production. *Id.* She conducted searches of her personal records and sat for a deposition. *Id.* The other named Plaintiffs all provided Class Counsel with sufficient information regarding their experiences and claims to enable them to join this case and represent a nationwide class. *Id.* All Plaintiffs remained actively involved in the litigation after the Settlement was reached. *Id.*

The proposed representative service awards are reasonable in light of the Plaintiffs' efforts and the relief to the Class resulting from this litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also Mego*, 213 F.3d at 463 (awarding the named plaintiff $5,000 involving a class of 5,400 people and a total recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.,* 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within the range awarded in similar cases); *Embry v. Acer America Corp.*, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) (awarding $15,000 incentive award); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co*., 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee).

**I.    Dates for the Final Approval Process**

Plaintiffs request that in connection with preliminary approval, this Court set a date for a final approval hearing; Plaintiffs reserved September 26, 2019 with the clerk. The deadline for objections, claims and opt outs would be 28 days before final approval, or August 29, 2019. Assuming preliminary approval is entered shortly after the June 13 hearing, then notice could initiate in the first or second week of July, allowing seven to eight weeks for the period to make claims, opt out, or object. If objections are filed, the parties would respond to those objections by 14 days prior to final approval (September 14, 2019). On the same date, the parties and claim administrator would report about completion of notice, the number of opt outs, and the number

and estimated value of claims.

**J.    Conclusion**

For the reasons stated above, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed class action settlement.

Dated: May 9, 2019                    **GUTRIDE SAFIER LLP**
                                       /s/ Adam J. Gutride
                                       ADAM J. GUTRIDE (State Bar No. 181446)
                                       SETH A. SAFIER (State Bar No. 197427)
                                       MARIE A. MCCRARY (State Bar No. 262670)
                                       100 Pine Street, Suite 1250
                                       San Francisco, CA 94111
                                       Telephone: (415) 271-6469
                                       Facsimile: (415) 449-6469

                                       MATTHEW T. MCCRARY (admitted *pro hac vice*)
                                       265 Franklin St, Suite 1702
                                       Boston, MA 02110
                                       Telephone: (214) 502-2171

                                       *Counsel for Plaintiffs and Proposed Intervenors*